WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Gregory M. Starner
Kimberly A. Haviv

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
John K. Cunningham
Richard S. Kebrdle (*pro hac vice* pending)

*Attorneys for Renato Fermiano Tavares*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 15-10937 (SMB) |
| OAS S.A., *et. al.*,[1] ) | (Joint Administration Requested) |
| ) | |
| Debtors in Foreign Proceedings ) | Chapter 15 |
| ) | |

**DECLARATION OF EDUARDO SECCHI MUNHOZ PURSUANT TO 28 U.S.C. §
1746 IN SUPPORT OF PETITION FOR RECOGNITION OF BRAZILIAN
BANKRUPTCY PROCEEDINGS AND MOTION FOR ORDER GRANTING
RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 1515, 1517, 1520 AND 1521**

1.      I, Eduardo Secchi Munhoz, pursuant to 28 U.S.C. § 1746, hereby declare under

penalty of perjury under the laws of the United States, as follows:

2.      I submit this declaration in support of the the *Verified Petition for Recognition of*

*Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief pursuant to*

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number,
are: OAS S.A. (01-05), Construtora OAS S.A. (01-08), OAS Investments GmbH (4557), and OAS Finance
Limited (6299).

*11 U.S.C. §§ 1515, 1517, 1520 and 1521* [Docket No. 3] (together with the Forms of Petition in respect of each of the Debtors [Docket No. 1, the "Petition"),[2] which seeks entry of an order (i) recognizing the judicial reorganization proceedings (the "Brazilian Bankruptcy Proceedings") of the above-captioned debtors (the "Debtors") before the Bankruptcy Court of São Paulo (the "Brazilian Bankruptcy Court"), pursuant to Federal Law No. 11,101 of February 9, 2005 (the "Brazilian Bankruptcy Law") of the laws of the Federative Republic of Brazil ("Brazil"), as foreign main proceedings pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), (ii) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Brazilian Bankruptcy Proceedings, (iii) granting the Petitioner authority to examine witnesses, take evidence, and deliver information concerning the Debtors and their businesses, and entrusting the administration, realization and distribution of any and all of the Debtors' assets within the territorial jurisdiction of the United States to the Petitioner; and (iv) granting related relief pursuant to sections 1515, 1517, 1520, and 1521 of the Bankruptcy Code in support of the financial reorganization of the Debtors under Brazilian law.

## BACKGROUND AND QUALIFICATIONS

3. I am a partner in the law firm of Mattos Filho, Veiga Filho, Marrey Junior e Quiroga Advogados ("Mattos Filho"), a full service law firm with offices in Brazil in the cities of São Paulo, Rio de Janeiro and Brasilia and also in the United States, in New York City.

4. Pertinent aspects of my educational background are as follows: In 1993, I obtained a bachelor's degree at the Universidade de São Paulo, USP School of Law, Brazil. Since my graduation, I have focused my practice on corporate and bankruptcy matters, with a particular emphasis on corporate disputes (brought in court and through arbitrations), complex mergers and acquisitions, and large-scale bankruptcies and restructurings. In addition to my

---

[2] Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Petition.

activities at Mattos Filho, I am a full professor of commercial law at the Universidade de São Paulo.  I am also a member of the Instituto Brasileiro de Direito Comercial Brasileiro e Comparado, and a member of the editorial board of Revista de Direito Mercantil, Industrial, Econômico e Financeiro, a law review focusing on Brazilian commercial and business law matters.  In 2004, I served as an advisor to the inter-ministerial group formed by the Ministry of Justice, the Ministry of Finance, and the Central Bank of Brazil commissioned to draft the Brazilian Bankruptcy Law.  I have been recognized as a leader in my practice area by *Chambers Latin America* and other important legal directories.

5. To assist this Court's consideration of the Petition, I submit this declaration to describe for the Court the relevant aspects of the bankruptcy and reorganization process under Brazilian law.

## BRAZILIAN JUDICIAL REORGANIZATION PROCEEDINGS

6. Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which came into effect on June 9, 2005.[3]  The purpose of the Brazilian Bankruptcy Law is to enable debtors to overcome financial and economic crisis, in order to preserve their productive function, employment and the interests of the creditors, thus promoting the preservation of the debtors.  That is, the Brazilian Bankruptcy Law focuses on encouraging a company's successful reorganization rather than its liquidation.  In addition, there is a general policy of equal treatment of similarly situated creditors in the Brazilian Bankruptcy Law, and secured creditors' security interests (i.e., "in rem guarantees") are protected.  Lastly, the Brazilian Bankruptcy Law focuses on facilitating faster bankruptcy processes and seeks to foster direct collaboration and direct participation of governmental authorities in the company's reorganization.

7. The Brazilian Bankruptcy Law provides for bankruptcy liquidation proceedings as well as two forms of reorganization:  (1) a court-supervised reorganization proceeding known

---

[3] The previous bankruptcy law, which was in force from June 21, 1945 to June 9, 2005, was Decree-Law No. 7,661/45.

as *recuperação judicial* ("judicial reorganization") and (2) an expedited reorganization proceeding known as *recuperação extrajudicial* ("extra-judicial reorganization").  Because the Debtors' Brazilian Bankruptcy Proceedings are court-supervised reorganizations, only the procedures and requirements of this form of reorganization will be discussed herein.

### i.    Requirements for Commencing a Judicial Reorganization

8. Judicial reorganization in Brazil is a bankruptcy arrangement process between the debtor and its creditors, presided over, supervised by and capable of dismissal only by order of the Brazilian Bankruptcy Court, a judicial body of Brazil.  Only a debtor is allowed to file for judicial reorganization.  Although not specifically provided for in the Brazilian Bankruptcy Law, courts in Brazil generally recognize the possibility of including more than one company of the same corporate organization in a single judicial reorganization and, in certain circumstances, will apply a concept similar to substantive consolidation whereby the assets and obligations of related companies that have filed a joint reorganization petition are pooled together for the purposes of such proceeding.  When filing a petition for reorganization, a debtor must include a description of the causes of its financial distress, its financial statements, a listing of its creditors and claims, and any other pertinent information and documents.  The completed petition must then be filed in the appropriate state civil court in the jurisdiction where the debtor's main establishment is located.

9. The commencement of a Brazilian reorganization proceeding occurs upon the filing of a petition for relief, which triggers immediate consequences to the parties involved, including restrictions on the debtor's ability to sell or encumber its fixed assets.  The filing date is also the relevant date for determining which claims may be subject to reorganization.

10. Once a petition has been filed, the court will review the petition and determine whether it is appropriate to process the debtor's judicial reorganization.  In order to obtain relief under the judicial reorganization provisions of the Brazilian Bankruptcy Law, the petitioning

entity must be considered a business company and must be insolvent in the sense of its liabilities exceeding its assets.

11.     If a debtor entity satisfies all the requirements discussed above and certain additional eligibility requirements, the court will issue a decision ordering the judicial reorganization proceeding to be processed. Such decision initiates a 180-day suspension or stay of all collection actions that have been commenced against the debtor(s). The stay also prohibits the commencement of collection actions by creditors who are impaired by the judicial reorganization after the filing date for 180 days.

### ii.     The Debtor's Operations

12.     As a general rule, the debtor, through its board of directors or agents, retains the right to administer its assets and affairs and to operate its business during the reorganization proceeding. A judicial administrator (*administrador judicial*) is appointed by the court and is responsible for, among other things, overseeing the debtor's management of its day-to-day affairs and managing the claims verification process. The judicial administrator, however, does not interfere with or impose its will upon the debtor's operation. However, the judicial administrator is duty-bound to inform the court if the debtor fails to meet its obligations under the plan or otherwise commits malfeasance. Consequently, the officers and directors of the debtor are duly authorized to act on the debtor's behalf (including by appointment of one or more representatives as attorneys-in-fact to act on the corporation's behalf in the Brazilian judicial reorganization proceeding and as foreign representative of the corporation in ancillary foreign insolvency proceedings) in the judicial reorganization in a way similar to the way I understand that officers, directors or authorized representatives of a debtor-in-possession under the Bankruptcy Code are authorized to act.

13.     The Brazilian Bankruptcy Law also includes mechanisms to obtain rescue financing ("DIP Financing") during the reorganization proceedings by giving debts created by

such DIP Financing priority of payment over pre-existing debts in the event of a future liquidation of the debtor. Post-filing financing is usually secured by collateral to reinforce the lender's priority in the event of default. Encumbering collateral for DIP Financing may require court and/or creditors approval. Essentially, there are two scenarios in which such approvals are required: (1) where a DIP Financing is granted before the approval of the reorganization plan and is secured by a material asset, and (2) where a DIP Financing is listed by the debtor in the restructuring plan as one of the actions for restructuring. Further, if the DIP lender is also a pre-petition creditor, the claims of such lender may be granted privileged status under a reorganization plan, subject to court approval. The Brazilian Bankruptcy Law also provides special treatment to DIP lenders by not subjecting them to the insolvency proceeding.

14. The Brazilian Bankruptcy Law also provides for the possible formation of a committee of creditors which may be composed of: (1) a representative of the labor creditors; (2) a representative of secured creditors and/or creditors entitled to special privilege; (3) a representative of unsecured creditors and those creditors entitled to general privilege; and (4) a representative of small business company creditors. The committee of creditors under the Brazilian Bankruptcy Law serves as an overseeing body that ensures the interests of the creditors are represented throughout the proceedings. The main responsibilities of the committee of creditors are to inspect and monitor compliance with the Brazilian Bankruptcy Law, to inform the judge of any violation, and to issue opinions on interested parties' complaints.

15. Even though the specific make-up of the committee differs from the committee of creditors contemplated under section 1102 of the Bankruptcy Code, the oversight and other functions of the committee of creditors under the Brazilian Bankruptcy Law ensures that the interests of the creditors are represented throughout the proceedings in much the same way that I understand the committee of creditors in a chapter 11 proceeding does.

### iii. Plan of Reorganization and Confirmation Process

16. A reorganization proceeding may be converted into a liquidation proceeding if any of the following events occur: (1) the debtor fails to submit a reorganization plan within the 60-day time period from the decision allowing the reorganization proceeding to be processed; (2) the general meeting of creditors does not approve the reorganization plan by the required majorities; or (3) the debtor fails to fulfill the terms of the approved judicial reorganization plan. After the debtor has been declared bankrupt, officers and directors of the debtor company are no longer authorized to manage its affairs, and its assets are collected and sold by the judicial administrator.

17. After filing a petition for relief under the Brazilian Bankruptcy Law and following the court's decision to allow the reorganization to be processed, the debtor must submit a judicial reorganization plan within 60 days of such decision. This 60-day period is not extendable. As previously mentioned, if the debtor does not comply with this obligation, the debtor will be declared bankrupt. As noted above, with limited exceptions, the debtor's judicial reorganization plan applies to all claims existing on the date of the filing of the petition. The judicial reorganization plan, as contemplated by the Brazilian Bankruptcy Law, is intended to directly or indirectly benefit all creditors collectively rather than to benefit any single creditor alone.

18. During the 30 days following the publication of a notice to the creditors informing them of the presentation of the debtor's plan, any creditor can object to the plan before the court. Should any creditor object to the judicial reorganization plan proposed by the debtor, the court will call a general meeting of creditors (the "General Meeting") to vote on the reorganization plan. In the event that no objections to the plan are raised by any creditor, the court will confirm the plan.

19. At the General Meeting, the debtor's creditors deliberate on the acceptance, refusal, or modification of the judicial reorganization plan. Modification to the plan is possible

only with the consent of the debtor. The deliberations to be held in the General Meeting require approval of all four classes of claims *present* at such meeting. Thus, only those creditors physically present at the General Meeting or who have had delivered a valid proxy to an attendee may vote. If the plan is approved at the General Meeting, complies with the rules provided in the Brazilian law and does not violate any public order, the court will grant the judicial reorganization of the debtor. If the plan is not approved, the court may convert the reorganization proceeding into a liquidation proceeding.

20. A plan of reorganization must contain: (1) a thorough description of the measures to be taken to successfully reorganize the debtor; (2) a demonstration of the economic feasibility of the plan of reorganization; and (3) a financial expert's assessment of the debtor's assets. In addition, the plan of reorganization must provide for the payment of the affected claims.

21. For purposes of voting on a debtor's plan of reorganization, creditors are divided into four classes as follows: (1) holders of labor-related claims ("Class I"); (2) holders of secured claims ("Class II"); (3) holders of unsecured claims, claims entitled to general and special privilege and subordinated claims ("Class III"); and (4) holders of unsecured claims and which are classified under Brazilian law as "small businesses companies" ("Class IV"). Equity holders' acceptance of the plan is not required for its approval. Claims not subject to the reorganization proceeding (such as those secured by chattel mortgages, also known as fiduciary assignments and called *cessão* or *alienação fiduciária* in Portugeuse and those arising from leasing transactions) are not affected by the plan and do not entitle their holders to vote. Each impaired creditor holds the right to vote on the plan unless such creditor is a partner or shareholder of the debtor company or of a party related to the debtor company. Creditors who are absent from the meeting or who abstain from voting, even if impaired under the plan, are not counted for the purposes of approval or rejection of the plan.

22. Approval of a plan may be obtained in one of two ways: (1) through a "regular

creditor majorities" procedure or (2) through a "cram down" procedure. Approval of a plan through the regular creditor majorities procedure requires that the plan be approved in each class of claims. Specifically, in Classes I and IV, the requirement for approval of the plan is a simple majority (more than 50%) of creditors, in number, present at the meeting of creditors, regardless of the value of the claims held. In Classes II and III, however, the plan must be approved by (i) more than 50% in number of the creditors present at the creditors' meeting in each class and (ii) creditors that hold more than fifty percent (50%) in amount of the allowed claims whose holders are present at the creditors' meeting in each class.

23. If the required majorities are not obtained for a class of claims, the plan may still be approved via a "cram down" of the rejecting class. Approval of a plan through the cram down procedure requires the court to approve the plan if the following cumulative requisites are met: (1) holders of a simple majority (more than 50%) of the total allowed claims present at the General Meeting vote for approval of the plan; (2) the required majorities are met in two of the four classes of claims (if there are four classes of claims), or in one class of claims (if there are only two classes of claims); and (3) (a) if the required majorities are not met in Classes I and/or IV, more than one third (1/3) of the creditors, in number, present at the General Meeting of creditors, regardless of the value of the claims held, must have voted in favor of the plan, or (b) if the required majorities are not met in Class II and/or in Class III, more than one third (1/3) of the creditors present at the General Meeting, in number, in such classes, must have voted in favor of the plan and, cumulatively, creditors that hold more than one third (1/3) in amount of the allowed claims present at the General Meeting, in such classes, must have voted in favor of the plan. In addition, cram down confirmation of the plan is possible only if the plan does not entail different treatment among the creditors of the class that rejected it.

24. The Brazilian Bankruptcy Court's approval is necessary for the restructuring plan to become effective. The Brazilian Bankruptcy Law provides that the plan of reorganization

confirmed by the court represents a renegotiation of the pre-filing claims and binds the debtor and all the impaired creditors.  If the debtor breaches any obligation assumed under the plan of reorganization which is due within two (2) years from the date such plan is confirmed by court, the Brazilian Bankruptcy Law provides that the debtor must be declared bankrupt by the court.  If the reorganization plan is confirmed, the debtor continues under judicial reorganization proceedings until all obligations established in the plan and due within two (2) years from court confirmation have been satisfied.  After the debtor emerges from reorganization, if the debtor fails to perform any obligation in the judicial reorganization plan, any creditor may file a motion with the Brazilian Bankruptcy Court for specific performance or the debtor's liquidation.

25. If a person or entity acquires a branch or an isolated production unit from the debtor under the plan of reorganization, and provided that such sale is executed under the Brazilian Bankruptcy Law, such person or entity will not succeed to the debtor's liabilities, regardless of such liabilities' nature (e.g., labor, tax, product liability, etc.).

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on this 15th day of April in São Paulo, State of São Paulo, Brazil.

_____
Eduardo Secchi Munhoz

Americas 90429493