WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York  10036-2787
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
Gregory M. Starner
Kimberly A. Haviv

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida  33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744
John K. Cunningham
Richard S. Kebrdle (*pro hac vice* pending)

*Attorneys for Renato Fermiano Tavares*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 15-10937 (SMB) |
| OAS S.A., *et al.,*[1] | ) (Joint Administration Requested) |
| | ) |
| Debtors in Foreign Proceedings. | ) Chapter 15 |
| | ) |

**MOTION FOR PROVISIONAL RELIEF PURSUANT**
**TO SECTION 1519 OF THE BANKRUPTCY CODE**

Renato Fermiano Tavares (the "Petitioner"), the duly-authorized foreign representative in

respect of the judicial reorganization proceedings (the "Brazilian Bankruptcy Proceedings")

pending in the First Specialized Bankruptcy Court of São Paulo (the "Brazilian Bankruptcy

Court") pursuant to Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification or corporate registry number, are:  OAS S.A. (01-05), Construtora OAS S.A. (01-08), OAS Investments GmbH (4557), and OAS Finance Limited (6299).

Law") of the laws of the Federative Republic of Brazil ("Brazil") concerning the above-captioned debtors (the "Debtors" and, together with their non-debtor affiliates, the "OAS Group"), having commenced the above-captioned chapter 15 cases in respect of the Debtors by filing forms of petition for recognition (collectively, the "Forms of Petition") together with a *Verified Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521* (the "Verified Petition" and, together with the Forms of Petition, the "Petition") concurrently herewith, by and through his undersigned counsel, respectfully submits this motion (the "Motion") pursuant to section 1519 of title 11 of the United States Code (the "Bankruptcy Code")[2] for an order granting provisional relief (the "Provisional Relief Order")[3] making section 362 of the Bankruptcy Code applicable with respect to the Debtors and their property that is within the territorial jurisdiction of the United States pending chapter 15 recognition of the Brazilian Bankruptcy Proceedings.  In support of the requested relief, the Petitioner respectfully refers the Court to the Petition and the statements contained in (A) the *Declaration of Renato Fermiano Tavares Pursant to 28 U.S.C. § 1746 in Support of the Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521* (the "Petitioner Declaration"), (B) the *Declaration of Eduardo Secchi Munhoz Pursuant to 28 U.S.C. § 1746 in Support of Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521*  (the "Brazilian Counsel Declaration") and (C) the *Declaration of Gregory M. Starner in Support of the Petitioner's Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code*

---

[2] Unless otherwise indicated herein, section and chapter references herein are to the Bankruptcy Code.

[3] A proposed version of the Provisional Relief Order granting the relief requested in this Motion is attached hereto as Exhibit "A."

2

(the "Starner Declaration"), which were filed concurrently herewith and are incorporated herein by reference as if fully set forth herein.  The Petitioner further represents to the Court as follows:

## PRELIMINARY STATEMENT

The Debtors are currently pursuing an organized restructuring in Brazil, and on April 1, 2015, the Brazilian Bankruptcy Court approved the continuation of the Brazilian Bankruptcy Proceedings, which were commenced on March 31, 2015 by the Debtors' joint petition for relief under the Brazilian Bankruptcy Law.  Pursuant to the Brazilian Bankruptcy Law, the Debtors are operating under court supervision with authority similar to that of U.S. chapter 11 debtors in possession.  Debtors have commenced these chapter 15 proceedings to seek recognition of each of the Brazilian Bankruptcy Proceedings as "foreign main proceedings."

By this application, the Petitioner seeks certain provisional relief in order to maintain the status quo pending the Court's recognition of the Brazilian Bankruptcy Proceedings.  The Debtors are exposed to potentially adverse actions by creditors and other parties in the United States that could have a detrimental impact on the Debtors' restructuring.  Already, a number of the Debtors' creditors have initiated actions in the United States that threaten to disrupt the orderly administration of the Debtors' assets and prejudice other creditors.  There is also a risk that other parties may seek to pursue other actions against the Debtors in the United States. Petitioner seeks provisional application of the section 362 stay to protect against these types of actions and preserve the Debtors' ability to pursue an orderly reorganization in a centralized forum.  Absent such relief, the Debtors will experience disruption to their restructuring and operations.  Chapter 15 is intended to prevent precisely these types of negative effects on cross-border restructurings, and to facilitate a centralized process in the country in which the debtor has its center of main interests.

In these circumstances, the immediate application of the section 362 stay is critical. For the reasons set forth herein, and as further described in the Petitioner Declaration, the provisional relief is urgently needed to protect the Debtors and their assets in the United States and to aid the Debtors' global restructuring.

## BACKGROUND FACTS[4]

### A. The Debtors' U.S. Noteholders and Efforts to Restructure

1.      The Debtors' United States debt instruments consist of approximately US$ 1.78 billion in U.S.-dollar denominated notes governed by New York law indentures. Specifically, OAS Finance Limited issued (i) certain 8.875% perpetual notes (the "Perpetual Notes") in the aggregate principal amount of US$ 500,000,000 and (ii) certain 8.00% Senior Notes due in 2021 (the "2021 Notes") in the aggregate principal amount of US$ 400,000,000. OAS Investments GmbH issued (i) certain 8.25% Senior Notes due in 2019 (the "2019-I Notes") in the aggregate principal amount of US$ 500,000,000 and (ii) certain 8.25% Senior Notes due in 2019 (the "2019-II Notes," and together with the 2019-I Notes, the "2019 Notes," and together with the Perpetual Notes and 2021 Notes, the "Notes" and their holders the "Noteholders") in the aggregate principal amount of US$ 375,000,000. Petitioner Decl. ¶ 22. OAS S.A. and Construtora OAS S.A. guaranteed the Notes.[5] Id. The Notes are general, unsecured obligations of the issuers and each of the guarantors and are <u>pari passu</u> with each obligor's other unsecured obligations. Id.

2.      Since January of 2015, the OAS Group has been working towards proposing a global restructuring plan by engaging with its creditors and other constituencies, seeking to find

---

[4] Petitioner respectfully refers the Court to the Petition and Petitioner Declaration for a full discussion of the Debtors, their operations and debt structure, and the events precipitating these proceedings.

[5] The Notes were also originally also guaranteed by OAS Investimentos S.A. OAS Investimentos S.A. was merged into OAS on December 26, 2014.

solutions to mutually benefit the OAS Group and its employees, creditors and other stakeholders. In particular, an ad hoc group of holders of the Notes (the "Ad Hoc Group") formed and retained separate counsel and an independent financial advisor in January of 2015. Petitioner Decl. ¶ 27. The OAS Group has engaged in frequent and cooperative dialogue with the Ad Hoc Group's advisors, facilitated their requests for due diligence, and explored various avenues for a viable turnaround of OAS's operations. Id. The OAS Group continues to engage with the Ad Hoc Group and its other principal creditors with the aim of reaching a financial and operational restructuring plan satisfactory to its principal creditor constituency. Id.

**B. The Aurelius and Alden State Court Actions**

3.      On February 3, 2015, Aurelius Investment, LLC ("Aurelius"), a creditor claiming to hold 2021 Notes, delivered a "Notice of Acceleration" purporting to declare the full outstanding balance of the 2021 Notes immediately due and payable. Declaration of Gregory M. Starner ("Starner Decl.") at Ex. 1. The next day (February 4, 2015), unbeknownst to OAS or the other Noteholders, Aurelius filed a verified complaint and an ex parte Application for Order of Attachment against OAS Finance, OAS, Construtora OAS, and OAS Investimentos S.A. in New York Supreme Court (Aurelius Inv., LLC v. OAS Fin. Ltd., No. 650312/2015 (Sup. Ct. N.Y. Cnty. filed Feb. 4, 2015), the "Aurelius Litigation"). See Starner Decl. at Ex. 2, 3.

4.      Aurelius sought, on an ex parte basis, prejudgment attachment in the amount of $109,933,802.22, i.e., for its alleged principal and accrued interest under the 2021 Notes. Starner Decl. at Ex. 3. Notably, Aurelius argued that the New York State Court should attach not only the named Debtors' property within the State of New York but also all of the named Debtors' intangible property, wherever located. Id. [6]

---

[6] The Debtors do not believe that the ex parte pre-judgment attachment obtained by Aurelius extends to the Debtors' assets located outside the State of New York and beyond the jurisdiction of the Sheriff of the City of New York, and

5.     On February 9, 2015, the New York State Court issued the requested ex parte

Order of Attachment.  Starner Decl. at Ex. 4.  The Sheriff of the City of New York was ordered

to levy within his jurisdiction any property of any named Debtors to secure and satisfy the sum.

Id.  The named Debtors were also prohibited from "selling, assigning, transferring or paying over

to any person other than the Sheriff" any property or debt covered by the Order.  Id.  Aurelius, in

conjunction with the Sheriff of the City of New York, has since been methodically seizing the

Debtors' assets located in New York.  Just last week, Aurelius filed a turnover action against

BNP Paribas, which led to the seizure of approximately $5.6 million of the Debtors' funds.

Starner Decl. at Ex. 6.  Aurelius and Alden (defined below) have also served subpoenas on two

third-party banks seeking additional discovery regarding the Debtors' potential assets.  Starner

Decl. at Ex. 7-9.

6.     On February 18, 2015, a nearly-identical lawsuit (Alden Global Adfero BPI Fund,

Ltd. v. OAS Fin. Ltd., No. 650480/2015 (Sup. Ct. N.Y. Cnty. filed Feb. 18, 2015), the "Alden

Litigation") was filed against the same Debtors—OAS Finance, OAS, Construtora OAS, and

OAS Investimentos S.A.— by Alden Global Adfero BPI Fund, Ltd., Alden Global Opportunities

Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P., and Turnpike Limited

(together, "Alden"), which also claim to beneficially own 2021 Notes.  Starner Decl. at 10.

Alden is represented by the same law firm representing Aurelius, relies on the same alleged

default and acceleration as Aurelius, and has moved for an order of attachment identical to that

sought by Aurelius in the amount of $30,523,500.  Starner Decl. at Ex. 11.  The Aurelius

Litigation and the Alden Litigation have both been assigned to Justice Lawrence K. Marks in

New York Supreme Court and are proceeding on the same schedule.  At present, the Court is

---

that Aurelius' effort to reach non-New York intangible property is without merit.  The New York state court has not
squarely addressed the issue.

scheduled to hear Aurelius's motion to confirm its ex parte order of attachment, and Alden's motion for its own attachment, on April 27, 2015. On these motions, Aurelius and Alden take the position that the New York State Court has the jurisdiction to, and should, attach not only the named Debtors' property within the State of New York but also all of the named Debtors' intangible property, wherever located. Starner Decl. at Ex. 3, 7, 13.

7. Aurelius and Alden filed Motions for Summary Judgment on March 30, 2015. Starner Decl. at Ex. 12, 13. The named Debtors must file answering papers and affidavits on or before April 24, 2015.

**C. The Huxley Federal Court Action**

8. On March 5, 2015, Huxley Capital Corporation ("Huxley"), an affiliate of Aurelius,[7] filed a complaint against OAS S.A., Construtora S.A., OAS Investimentos S.A., OAS Infraestrutura S.A., and OAS Engenharia e Construção S.A. in the United States District Court for the Southern District of New York (the "Huxley Litigation" and, together with the Aurelius Litigation and the Alden Litigation, the "Pending New York Actions"). Starner Decl. at Ex. 14. Huxley alleges that it is the beneficial owner of an undisclosed amount of 2021 Notes and 2019 Notes. Id.

9. In its complaint, Huxley seeks to set aside, as allegedly fraudulent conveyances, three corporate transactions: (1) a transfer of assets from Construtora OAS to OAS Engenharia e Construção S.A. on December 1, 2014; (2) a transfer of Invepar shares from OAS Investimentos S.A. to OAS Infraestrutura S.A. on December 26, 2014; and (3) OAS' merger with OAS

---

[7] Huxley's affiliation with Aurelius was not disclosed in Huxley's complaint. The relationship between these entities came to light when Aurelius issued a statement following the commencement of the Brazilian Bankruptcy Proceedings. Boris Korby, *Aurelius Says OAS Defrauds Investors with Brazil Bankruptcy*, BLOOMBERG BUSINESS (Apr. 1, 2015), http://www.bloomberg.com/news/articles/2015-04-01/aurelius-says-oas-seeking-to-defraud-bondholders-in-bankruptcy-i7yygktz (citing statement by Aurelius).

Investimentos S.A. on December 26, 2014.  Id.  Notably, these challenges overlap with relief that

Aurelius is seeking in parallel proceedings in Brazil.  Id.

10.     The Huxley Litigation has been assigned to Judge Gregory H. Woods.  The

named Debtors have until April 20, 2015 to respond or file pre-motion letters regarding motions

to dismiss Huxley's complaint.  An initial pre-trial conference is set for April 28, 2015.

## REQUESTED RELIEF

11.     Pursuant to section 1519 of the Bankruptcy Code, the Debtors respectfully request

that the Court enter the Provisional Relief Order, substantially in the form attached hereto as

Exhibit A, granting the following provisional relief pending recognition of the Brazilian

Bankruptcy Proceedings:

> a.     Section 362 of the Bankruptcy Code shall apply with respect to each of the
> Debtors and the property of each of the Debtors that is within the territorial jurisdiction of
> the United States.  For the avoidance of doubt and without limiting the generality of the
> foregoing, the Provisional Relief Order shall impose a stay within the territorial
> jurisdiction of the United States, applicable to all entities (as such term is defined in
> section 101(15) of the Bankruptcy Code), of:

>> i.     the commencement or continuation, including the issuance or employment of
>> process, of a judicial, administrative, or other action or proceeding against any
>> of the Debtors that was or could have been commenced before the
>> commencement of the Debtors' chapter 15 cases, or to recover a claim against
>> any of the Debtors that arose before the commencement of the Debtors'
>> chapter 15 cases;

>> ii.     the enforcement, against any of the Debtors or against the property of the any
>> of the Debtors, of a judgment obtained before the commencement of the
>> Debtors' chapter 15 cases;

>> iii.     any act to obtain possession of property of any of the Debtors or of property
>> from the any of the Debtors or to exercise control over property of any of the
>> Debtors;

>> iv.     any act to create, perfect, or enforce any lien against property of any of the
>> Debtors;

<ol type="v" start="5">
<li value="5">any act to create, perfect, or enforce against property of the any of the Debtors any lien to the extent that such lien secures a claim that arose before the commencement of the Debtors' chapter 15 cases;</li>

<li value="6">any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' chapter 15 cases; and</li>

<li value="7">the setoff of any debt owing to any of the Debtors that arose before the commencement of the Debtors' chapter 15 cases against any claim against any of the Debtors;</li>
</ol>

b. Notwithstanding any provision in the Bankruptcy Rules to the contrary (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry; (ii) the Petitioner is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order; and (iii) the Petitioner is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order; and

c. such other relief as may be just and proper.

<u>**JURISDICTION AND VENUE**</u>

12. This Court has jurisdiction to consider this Motion pursuant to sections 157, 1334 of title 28 of the United States Code, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, <u>In re Standing Order of Reference Re:  Title 11</u>, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

13. This is core proceedings pursuant to section 157(b)(2)(P) of title 28 of the United States Code, and the Court may enter a final order in respect of it under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to section 1409(a) of title 28 of the United States Code.

15. The statutory predicate for the requested relief is section 1519 of the Code.

## ARGUMENT

**A.** **Governing Law**

16. Section 1519 permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). The Petitioner seeks imposition of the automatic stay under section 362 of the Bankruptcy Code for the purpose of maintaining the status quo until the Court rules on the Petition. Upon recognition of the Brazilian Bankruptcy Proceedings as foreign main proceedings, the section 362 stay will automatically take effect in respect of the Debtors and their property within the United States pursuant to section 1520(a)(1).[8]

17. The provisional relief requested here is an "effective mechanism" to implement the chapter 15 policies of promoting cooperation between courts of the United States and courts "of foreign countries involved in cross-border insolvency cases," the "fair and efficient administration of cross border insolvencies that protects the interests of all creditors, and other interested entities, including" the Debtors, the "protection and maximalization of the value of the [Debtors'] assets," and the "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment." 11 U.S.C. § 1501(a).

18. U.S. bankruptcy courts have routinely imposed the section 362 stay or ordered similar relief to maintain the status quo pending recognition or disposition of foreign proceedings in ancillary cases under both chapter 15 and former section 304. See, e.g., In re Compania Mexicana de Aviacion, S.A. de C.V., No. 10-14182 (MG) (Bankr. S.D.N.Y. Aug. 5, 2010)

---

[8] To the extent the Court grants foreign non-main recognition with regard to any of the Debtors, the Petitioner intends to seek continuation of the stay via section 1521(a)(1).

(same); In re Japan Airlines Corp., No. 10-10198 (JMP), 2010 WL 1050075 (Bankr. S.D.N.Y. Jan. 28, 2010) (same); In re Alitalia Linee Aeree Italiane S.p.A., No. 08-14321 (BRL) (Bankr. S.D.N.Y. Nov. 5, 2008) (same); In re Pro-Fit Int'l Ltd., 391 B.R. 850, 864-65 (Bankr. C.D. Cal. 2008) (provisionally imposing section 362 stay); In re Mt.Gox Co., Ltd. a/k/a K.K. MtGox, No. 14-31229 (SGJ) (Bankr. N.D. Tex. Mar. 10, 2014) (same); In re SIVEC SRL, No. 11-80799-TRC, 2011 WL 2445754 (Bankr. E.D. Okla. Jun. 15, 2011) (same); In re Innua Can. Ltd., No. 09-16362 (DHS), 2009 WL 1025088 (Bankr. D. N.J. Mar. 25, 2009) (same); see also STX Pan Ocean Co., No. 13-12046 (SCC) (Bankr. S.D.N.Y. July 1, 2013) (granting provisional injunction that tracked language of section 362); In re PT Berlian Laju Tanker TBK, No. 13-10901 (SMB), (Bankr. S.D.N.Y. March 29, 2013) (same); In re SIFCO S.A., No. 14-11179 (REG) (Bankr. S.D.N.Y. May 7, 2014) (granting preliminary injunction); In re Syncapse Corp., No. 13-12410 (SMB) (Bankr. S.D.N.Y. July 25, 2013) (same); In re John Forsyth Shirt Co., No. 13-10526 (SCC) (Bankr. S.D.N.Y. Feb. 2, 2013) (same); In re Baronet U.S.A., Inc., No. 07-13821 (JMP) (Bankr. S.D.N.Y. Dec. 4, 2007) (same); In re Afinsa Bienes Tangibles S.A., No. 07-10675 (JMP) (Bankr. S.D.N.Y. Mar. 15, 2007) (same); cf. In re Muscletech Research & Dev. Inc., Nos. 06 CIV 538 and 539 (JSR) (S.D.N.Y. Feb. 7, 2006) (continuing stay originally issued by Bankruptcy Court and extending such stay to enjoin temporarily the commencement or continuation of actions against foreign debtors and non-debtor third parties to allow a breathing spell); In re Chemokine Therapeutics Corp., No. 09-11189 (PJW) (Bankr. D. Del. Apr. 6, 2009) (granting stay on proceedings or enforcement processes pending hearing on a motion to sell certain assets of the foreign debtor seeking foreign non-main recognition); In re Destinar Tech. Inc., No. 08-11003 (CSS) (Bankr. D. Del. May 23, 2008) (enjoining the commencement or

continuation of actions or enforcement proceedings against foreign debtor and its property in the United States to the same extent enjoined in the Canadian foreign proceeding).

**B.    The Requested Relief Is Urgently Needed to Protect the Debtors' Assets And The Interests of All Creditors**

19.    The application of section 362 is urgently needed here to protect the Debtors' assets and to protect the interests of creditors as a whole. See 11 U.S.C. § 1519(a). The Debtors have outstanding approximately $1.78 billion of U.S. dollar-denominated debt issued under New York law indentures. Petitioner Decl. ¶ 21. Absent the requested stay, creditors could pursue individual actions against the Debtors (as some have done already), and disrupt the orderly restructuring proceedings underway in the Brazilian Bankruptcy Court. In re Gercke, 122 B.R. 621, 626 (Bankr. D.D.C. 1991) (finding in a former section 304 case that expending available resources on litigation outside the bankruptcy process "would constitute diversion of funds neeeded for the purpose of maximizing value"); In re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (noting that "forc[ing a foreign representative] to participate in expensive litigation that threatens to drain the assets of the estate or open the floodgates to similar litigation" causes irreparable harm (internal citation omitted)).

20.    Through the Pending New York Actions, meanwhile, the creditor-plaintiffs seek to secure their claims at the expense and to the detriment of similarly-situated creditors. Such a result is inimical to the fundamental policies of the Brazilian Bankruptcy Law and chapter 15 of the Bankruptcy Code, the purpose of which is to incorporate the UNCITRAL Model Law on Cross-Border Insolvency (the "Model Law") into U.S. law, including the legislatively-mandated goals of international cooperation, equity in distribution, asset protection, value maximization and corporate rescue as noted above. See 11 U.S.C. § 1501(a).

21.     The Pending New York Actions are also a major distraction to the Debtors and

the rest of the OAS Group, diverting the much needed attention of the Debtors' officers and

directors (as well as their financial resources) toward ancillary disputes.  See Gercke, 122 B.R. at

626; MMG LLC, 256 B.R. at 555.  The provisional application of the section 362 stay would

permit the OAS Group to remain focused on preservation of enterprise value, consensus-building

and the development of a viable turnaround plan within the context of the orderly,

comprehensive reorganization process underway in the Brazilian Bankruptcy Proceedings.[9]

22.     Finally, OAS and its subsidiaries are essential contributors to the Brazilian

economy and that of many other countries, providing not only vital infrastructural improvements

to developing economies but also employment for its approximately 110,000 direct and indirect

employees.  See Petitioner Declaration ¶ 10.  The OAS Group's reorganization should not be

held hostage to individual creditors' attempts to use international boundaries to seek to evade the

orderly and centralized reorganization of the OAS Group as an integrated going concern in

Brazil.

23.     Without the protections of section 362, piecemeal litigation and other potential

actions brought by creditors or other parties would threaten to destroy the Debtors' enterprise

value and interfere with the orderly administration of the Debtors' affairs.  In re Petition of

Garcia Avila, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (former section 304 case finding that

irreparable harm would exist by "permitting the [creditors] to execute their judgments against the

bond proceeds[, which would] diminish the recovery available to other creditors and possibly

wreck the reorganization efforts").  It would also put at risk the chance for successful

---

[9] The Brazilian Bankruptcy Law requires that the members of the OAS Group that are debtors in the Brazilian Bankruptcy Proceedings submit a plan of reorganization within 60 days of the decision by the Brazilian Bankruptcy Court to allow the judicial reorganization to be processed.  Brazilian Counsel Decl. ¶ 17.  The Brazilian Bankruptcy court issued such decision in respect of the Brazilian Bankruptcy Proceedings on April 1, 2015.  Petitioner Decl. ¶ 43.

reorganization, imperiling the livelihoods of the OAS Group's labor force and its provision of essential services to the people of Brazil and other countries. The snowball effect of the pressure to join in the "race to the courthouse" further demonstrates the urgency of the requested relief. This is exactly what provisional relief under section 1519 is intended to address.

C.      **The Requested Relief Also Meets The Standards For A Preliminary Injunction**

24.      As the Petitioner seeks only provisional imposition of the stay under section 362 (and only in respect of the Debtors), the standards for injunctive relief are arguably not applicable in this case. See In re Pro-Fit Int'l Ltd., 391 B.R. 850, 864-65 (Bankr. C.D. Cal. 2008) (satisfaction of the requirements for an injunction unnecessary for section 1519 imposition of section 362 stay because in rem nature of stay differentiates it from injunctive relief, placing it outside the scope of Federal Rule of Civil Procedure 65). Even if injunction standards applied to the relief requested in this Motion, however, the circumstances here amply satisfy those standards.

25.      A preliminary injunction should be issued where, as here, the following elements are satisfied: (1) there is a likelihood of successful reorganization, (2) there is an imminent irreparable harm to the debtors' assets in the absence of an injunction, (3) the balance of harms tips in favor of the moving party, and (4) the public interest weighs in favor of an injunction. See In re Lyondell Chem. Co., 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) (citing Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.), 354 B.R. 45 (Bankr. S.D.N.Y. 2006), aff'd 365 B.R. 401 (S.D.N.Y. 2007). In evaluating these factors, courts take a "flexible approach and no one factor is determinative." In re Calpine Corp., 365 B.R. 401, 409 (S.D.N.Y. 2007) (certain internal citations omitted) (citing Haw. Structural Ironworkers Pension Trust Fund v. Calpine

Corp., No. 06 CIV. 5358 (PKC), 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006)). All four elements are satisfied here.

### 1. The Petitioner Is Likely To Succeed On The Merits

26. The Petitioner is likely to succeed on the merits and to obtain recognition of the Brazilian Bankruptcy Proceedings as foreign main proceedings. For the reasons set forth in the Petition, the Petitioner has demonstrated that the Brazilian Bankruptcy Proceedings are foreign main proceedings as defined in section 1502(4) of the Bankruptcy Code and that the Petitioner is the proper foreign representative in respect of the Brazilian Bankruptcy Proceedings as defined in section 101(24) of the Bankruptcy Code. See Petition ¶¶ 44-68. Indeed, this Court routinely recognizes proceedings under the Brazilian Bankruptcy Law, like the Brazilian Bankruptcy Proceedings here, as foreign main proceedings under chapter 15. See, e.g., In re SIFCO S.A., No. 11179 (REG) [Docket No. 38] (Bankr. S.D.N.Y. Oct. 23, 2014) (recognizing case filed pursuant to the in-court reorganization section of the Brazilian Bankruptcy Law as a foreign main proceeding); In re Rede Energia S.A., No. 14-10078 (SCC) [Docket No. 18] (Bankr. S.D.N.Y. March 6, 2014) (same); In re Centrais Elétricas Do Pará S.A., No. 12-14568 (SCC) [Docket No. 19] (Bankr. S.D.N.Y. Dec. 12, 2012) (same). The Petitioner is therefore likely to succeed on the merits.

### 2. The Debtors Will Suffer Irreparable Harm if an Injunction Is Not Issued

27. In the absence of the requested injunctive relief, the Debtors will suffer immediate and irreparable harm. Reorganization is a collective remedy for the mutual benefit of all parties in interest. It requires that claim resolution and treatment be centralized in a single forum, ideally under a single insolvency law, and that potentially inconsistent individual remedies be stayed until they can be resolved in accordance with applicable insolvency law principles.

Accordingly, in the bankruptcy reorganization context, irreparable harm exists where the conduct to be enjoined would, if not stayed, interfere with the reorganization process. In re Calpine Corp., 365 B.R. at 409 (a court may issue a "preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process"); see also In re Lyondell Chem. Co., 402 B.R. at 590; Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B., et al., 825 F.2d 709, 713-14 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."); In re Nw. Airlines Corp., No. 05-17930 (ALG), 2008 WL 630449, at *6 (Bankr. S.D.N.Y. Mar. 5, 2008). Courts have routinely found irreparable harm to be present when the failure to enjoin local actions would potentially disrupt the orderly restructuring of a foreign debtor and undermine the fair distribution of assets. See, e.g., Garcia Avila, 296 B.R. at 114 (recognizing irreparable harm if creditors were permitted pursue their individual remedies and thereby "diminish the recovery available to other creditors and possibly wreck the [foreign debtor's] reorganization efforts").

28.     The irreparable injury element is plainly satisfied where, as here, the foreign debtors seek to enjoin proceedings in which creditors or others seek to enforce rights against the assets of the foreign debtors in the United States. See In re Netia Holdings S.A., 278 B.R. 344, 352-53 (Bankr. S.D.N.Y. 2002) (finding irreparable injury in the "dissipation of the finite resources of an insolvent estate"); In re Petition of Caldas, 274 B.R. 583, 598 (Bankr. S.D.N.Y. 2002) (same); MMG LLC, 256 B.R. at 555 ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors."); In re Rubin, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ("[T]here appears to be little dispute regarding the notion that the premature piecing out of property involved in a

foreign liquidation proceeding constitutes irreparable injury"); <u>In re Petition of Brierley</u>, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from the failure to grant injunctive relief in the form of disruption of an orderly determination of claims and the fair distribution in a single case.") (internal quotation marks and citation omitted)); <u>Gercke</u>, 122 B.R. at 626 ("Harm to the estate also exists in the form of disruption of an orderly determination of claims and the fair distribution in a single case," citing <u>Victrix Steamship Co., S.A.</u>, 825 F.2d at 713-14); <u>In re Lines</u>, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

29.     Absent imposition of the section 362 stay, other creditors may follow the lead of the creditors that are pursing the Pending New York Actions and commence their own actions in the U.S. against the Debtors, further undermining the Brazilian restructuring process before this Court has determined the recognition of the Brazilian Bankruptcy Proceedings under chapter 15. Indeed, the Debtor's chapter 15 filing could result in an escalated "race to the courthouse," as other creditors may conclude that it is in their best interests to assert their claims against the Debtors prior to the recognition of these cases as foreign main proceedings, at which point the protections of the section 362 stay will automatically take effect.  <u>See</u> 11 U.S.C. §1520(a)(1). Aurelius, Alden and Huxley, for their part, will certainly continue to aggressively pursue their actions in New York and make every effort to improve their positions at the expense of other similarly-situated creditors.

30.     Furthermore, allowing the Pending New York Actions to continue would likely threaten the Debtors' reorganization prospects in Brazil.  <u>See</u> <u>In re Calpine Corp.</u>, 365 B.R. at 409 (recognizing that a court may issue a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process).  Allowing individual

creditors to attack a debtor in a foreign proceeding in a piecemeal fashion poses the real risk of interfering with and potentially "wreck[ing] the reorganization efforts" of the debtor. <u>Garcia Avila</u>, 296 B.R. at 114 (enjoining individual bondholders from execution against the assets of a foreign debtor). The continuation of the Pending New York Actions, which would likely include further enforcement actions in addition to the <u>ex parte</u> attachment order that Aurelius already obtained, and keeping the courthouse doors open for other similar actions by other creditors would only further undermine the Debtors' reorganization process in Brazil. Defending themselves and their assets in litigation in numerous forums will also deplete the Debtors' resources available for distribution to creditors as a whole, violate the principle of equal treatment of creditors with similar claims, and distract the Debtors and their officers and directors from the true task at hand: the development, procurement of approval and implementation of a plan of reorganization in the Brazilian Bankruptcy Proceedings. <u>See</u> <u>In re Gercke</u>, 122 B.R. at 626 (finding in a former section 304 case that expending available resources on litigation outside the bankruptcy process "would constitute a diversion of funds needed for the purpose of maximizing value[,]" which "would constitute irreparable harm"); <u>In re MMG LLC</u>, 256 B.R. at 555 (noting that "[i]rreparable harm may result if the foreign representative is forced to participate in expensive litigation that threatens to drain the assets of the estate"); <u>cf.</u> <u>In re Alert Holdings, Inc.</u>, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) (holding in a chapter 11 case that "[w]here there is a showing that the action sought to be enjoined would . . . delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects, the Bankruptcy Court may issue injunctive relief"). This further demonstrates the immediate and irreparable harm that would result absent the section 362 stay.

### 3. The Balance of Harms Weighs In Favor of The Debtor

31.     The balance of harms also weighs in favor of granting the provisional relief and imposing the stay provided under section 362.  The provisional application of section 362 will preserve the assets of the Debtors pending a determination by this Court of whether the Brazilian Bankruptcy Proceedings should be recognized.  See In re Innua Canada Ltd., No. 09-16362, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) (finding that the temporary maintaining of the status quo pending recognition of the foreign proceedings actually served to benefit creditors "by allowing for an orderly administration of the Foreign Debtors' financial affairs under the Canadian Proceeding," tipping the balance of harms in favor of the foreign representative).  At this stage and even after recognition of the Brazilian Bankruptcy Proceedings as foreign main proceedings all the parties (including creditors currently seeking independent remedies) have an opportunity to participate in the Brazilian Bankruptcy Proceedings, which are designed to take account of and balance the needs of the many against those of the individual in a collective, centralized process.  Indeed, Aurelius is already participating in the Brazilian Bankruptcy Proceedings and has filed papers in those proceedings seeking relief.  Petitioner Decl. ¶ 32.

32.     Section 362 also has its own built-in set of limitations, qualifications, and procedures that are designed to take account of and balance the needs of the many against the needs of individual creditors while also permitting creditors to seek relief from the stay upon a showing of cause, as well as a well-developed body of case law with which this Court is well familiar.  See generally 11 U.S.C. § 362.

33.     Further, the issuance of the requested provisional relief would cause little if any harm to creditors.  The provisional relief would be temporary, pending the hearing on recognition.  The OAS Group will continue to operate as a going concern and, as such, its assets–

–including all revenues derived from its operations—will be available for the purpose of making equitable distributions to all creditors in the Brazilian Bankruptcy Proceedings as provided under an approved plan of reorganization in Brazil. Imposition of the section 362 stay will not affect the ability of creditors to assert their claims in the Brazilian Bankruptcy Proceedings. In any event, that certain creditors "may be denied an advantage over the debtor's other . . . creditors is not a valid reason to deny relief to the foreign representative." In re Atlas Shipping A/S, 404 B.R. 726, 742 (Bankr. S.D.N.Y. 2009). The clear harm to the Debtors and their assets that would occur absent the provisional relief would far be greater than any potential prejudice to certain individual creditors that might wish to pursue their individual remedies in the United States in disregard of the Brazilian Bankruptcy Proceedings.

**4. The Public Interest Favors Granting the Requested Injunctive Relief**

34. Granting the requested provisional relief would also effectuate the public policy considerations underpinning chapter 15 and serve the public interest. Imposing the stay would further the Bankruptcy Code's general goal of avoiding piecemeal distribution and depletion of a debtor's estate and the attendant inequitable distribution of property among claimholders. See Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 459 (2d Cir. 1985) (noting in case under former section 304 the strong "public interest in the fair and efficient distribution of assets in a bankruptcy"). Moreover, granting the relief requested herein would promote the congressionally stated purposes of chapter 15, among which are to (i) foster fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor; (ii) protect and maximize the value of the debtor's assets; (iii) facilitate the rescue of financially troubled businesses, thereby protecting investment and preserving employment; and (iv) promote the cooperation between the courts and court-

appointed administrators in the United States with those in competent foreign jurisdictions involved in cross-border insolvency cases.  See 11 U.S.C. §§ 1501(a), 1525.

### 5. No Security Is Required

35.     No security is required for the provisional relief requested here.  First, the standards for preliminary injunctive relief do not apply to this Motion.  (Supra at ¶ 24)  Second, under the Bankruptcy Rules, security is not a prerequisite for the Debtors to obtain injunctive relief.  See Fed. R. Bankr. P. 7065.  In any event, security would be unwarranted under the circumstances here, where the Debtors' assets are under the jurisdiction of the Brazilian Bankruptcy Court and where the provisional relief would last only until the Court rules on the Petition and the section 362 stay would automatically take effect.

### D. All Parties are Sufficiently Protected

36.     As required under section 1522(a) of the Bankruptcy Code, all parties are "sufficiently protected" in connection with the requested provisional relief.  Relief under section 1519 should only be denied due to a lack of sufficient protection "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors."  H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005).  A determination of sufficient protection requires a balancing of the respective parties' interests.  CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V., 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); see In re Toft, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief.").  The discretion granted under this provision "typically points in favor of granting relief to section 304 petitioners."  In re Artimm, 278 B.R. 832, 837 (Bankr. C.D. Cal. 2002) (discussing discretion to afford similar relief under chapter 15's predecessor).

37.     Here, all parties are "sufficiently protected," and their interests balanced, for the reasons articulated in paragraphs 30-32, <u>supra</u>.  The requested relief will preserve the Debtors' assets pending the Court's determination on recognition, while any prejudice to creditors is extremely limited.  Furthermore, the Debtors' assets are already under the jurisdiction of the Brazilian Bankruptcy Court, and the section 362 stay comes with its own protections and framework for modification.  Accordingly, the temporary relief sought here should be granted as all creditors, including Aurelius, Alden and Huxley, will be sufficiently protected.

**E.     <u>Notice Has Been Provided to Known Persons That Would Be Restricted by the Requested Relief</u>**

38.     Notice of the Motion, the Petition, the Petitioner Declaration, the Brazilian Counsel Declaration and the Starner Declaration has been provided (i) by email and, except in the cases of co-counsel to each of the Debtors, overnight courier service to counsel for the Indenture Trustees under the U.S. dollar-denominated notes; counsel for the ad hoc group of holders of these notes; counsel for the plaintiffs in the pending civil actions; co-counsels for the Debtors; and the U.S. Trustee as listed in Exhibit B annexed hereto and (ii) by international courier service or U.S. Mail upon co-counsel to each of the Debtors, and the Debtors' major financial creditors listed in Exhibit C annexed hereto.

39.     The Petitioner has exercised reasonable diligence in providing notice to the Debtors' creditors and believes that no further notice is necessary.

**F.     <u>No Prior Request</u>**

40.     No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

41.     Based on the foregoing, the Petitioner respectfully requests that the Court enter the Provisional Relief Order granting the relief requested herein, and such other relief that the Court deems just and appropriate.

Dated:   New York, New York
         April 15, 2015

                              WHITE & CASE LLP


                              By:  ____/s/ Gregory M. Starner _____
                                   Gregory M. Starner
                                   Kimberly A. Haviv


                                   1155 Avenue of the Americas
                                   New York, New York 10036-2787
                                   Telephone: (212) 819-8200
                                   Facsimile:  (212) 354-8113
                                   Gregory M. Starner
                                   Kimberly A. Haviv


                                   – and –


                                   Southeast Financial Center
                                   200 South Biscayne Blvd., Suite 4900
                                   Miami, Florida 33131
                                   Telephone:  (305) 371-2700
                                   Facsimile:   (305) 358-5744
                                   John K. Cunningham
                                   Richard S. Kebrdle

                                   *Attorneys for Renato Fermiano Tavares as*
                                   *Petitioner and Foreign Representative*