DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Allan S. Brilliant
Craig P. Druehl
Stephen M. Wolpert

*Attorneys for Aurelius Capital Management, LP
on behalf of entities it manages and Alden
Global Capital LLC on behalf of entities it
manages*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------------------------- X | | |
| | : | |
| In re: | : | Chapter 15 |
| | : | |
| OAS S.A., *et al.*, | : | Case No. 15-10937 (SMB) |
| | : | |
|     Alleged Debtors in Foreign Proceedings. | : | Joint Administration Requested |
| | : | |
| ---------------------------------------------------------- X | | |

**DECLARATION OF ELEANOR CHAN, PURSUANT TO 28 U.S.C. § 1746,**
**IN SUPPORT OF NOTEHOLDERS' OBJECTION TO MOTION FOR PROVISIONAL**
**RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE**

Eleanor Chan, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the

laws of the United States of America as follows:

1.      I am a Managing Director of Aurelius Capital Management, LP.  I submit this

declaration in support of the Noteholders' Objection to the motion [Docket No. 7] of Renato

Fermiano Tavares, as purported foreign representative for the Brazilian bankruptcy proceedings

of OAS S.A., Construtora OAS S.A., OAS Investments GmbH, and OAS Finance Limited

(collectively, the "Debtors") for provisional relief pursuant to Section 1519 of the Bankruptcy

Code.  I am duly authorized by the Noteholders[1] to make this declaration on their behalf.

2.        The contents of this declaration are made from my own knowledge and are true, except where this declaration contains matters that I have indicated are on information or belief, and where I have so indicated I believe those matters to be true.

**OAS Corporate Group**

3.        The Debtors are part of a larger corporate group shown in the summary structure chart set out below (the "OAS Group").  OAS Group is a large Brazilian construction conglomerate that has been implicated by Brazilian authorities in the bribery scandal involving Petróleo Brasileiro S.A.—Petrobras ("Petrobras"), an energy company majority-owned by the Brazilian government.

4.        In November 2014, Brazilian federal prosecutors accused the OAS Group of charging inflated fees on construction contracts with Brazil's state-owned oil company, Petrobras, and of funneling kickbacks to Petrobras executives and high-level Brazilian politicians.

5.        On November 14, 2014, José Aldemário Pinheiro Filho, president of OAS and chief executive of Construtora OAS (as defined below) and OAS Investimentos (as defined below), was arrested in connection with the corruption scheme. Numerous other OAS executives were arrested as well, including Agenor Franklin Magalhães Medeiros, José Ricardo Nogueira Breghirolli, Mateus Coutinho de Sá Oliveira, and Alexandre Portela Barbosa.  According to news reports, prosecutors have formally charged these executives with corruption, money

---

[1]    The Noteholders are Aurelius Investment, LLC and Huxley Capital Corporation, both managed by Aurelius Capital Management, LP; and Alden Global Adfero BPI Fund, Ltd., Alden Global Opportunities Master Fund, L.P., Alden Global Recovery Master Fund, L.P., and Turnpike Limited, all managed or sub-advised by Alden Global Capital LLC.

laundering, and the formation of a criminal organization. On February 20, 2015, the Ministério

Público Federal (the Brazil Federal Prosecutors office) filed a complaint against OAS and

Construtora OAS (among other related parties and executives) alleging improper conduct in

connection with the scandal and seeking fines and penalties of approximately R$1 billion

Brazilian *reais* ("R$")[2] and a ban on government contracting.

6.      The OAS Group is controlled by OAS S.A., a Brazilian company ("OAS").  OAS

is privately held by CMP Participações Ltda., which owns 90% of OAS and is controlled by

Cesar de Araújo Mata Pires, and LP Participações e Engenharia Ltda., which owns 10% of OAS

and is controlled by José Adelmário Pinheiro Filho.

7.      OAS is a holding company and operates through its two principal subsidiaries:

Construtora OAS S.A. ("Construtora OAS") and OAS Investimentos S.A. ("OAS Investimentos"

and, collectively with OAS and Construtora OAS, the "Guarantors").

8.      Construtora OAS operates the heavy engineering division, and OAS

Investimentos is a holding company that owns investments in various real estate and

infrastructure assets including arenas, toll roads, ports, airports and sanitation assets.

9.      OAS Finance Limited ("Finance BVI"), OAS Investments Limited ("Investments

BVI") and OAS Investments GmbH ("Investments GmbH") are special purpose vehicles, the

purposes of which are/were to raise financing in the international capital markets to be on-lent to

the OAS Group.  Finance BVI and Investments BVI are companies incorporated in the British

Virgin Islands.  Investments GmbH is a company incorporated in Austria.  To the best of my

knowledge, Finance BVI, Investments BVI and Investments GmbH have no other function or

business other than to raise financing for the OAS Group.  Having raised and on-lent that

---

[2]      The exchange rate as of April 16, 2015 was US$1 to R$3.02.

financing, Finance BVI, Investments BVI and Investments GmbH have only one business, which

is to collect payments on their respective inter-company loans receivable, and to use those funds

to remit payments on their respective debts.  Directly (in the case of Investments BVI) and

indirectly through Investments BVI (in the case of Finance BVI and Investments GmbH), these

three companies are among the largest creditors of the other members of the OAS Group.

10.    The OAS Group's structure is shown in the organization chart below:



11.    Finance BVI issued two New York law-governed series of notes in 2013 and

2014, raising US$900,000,000 (nine hundred million US dollars) of funding (the "BVI Notes").

The BVI Notes were guaranteed by the Guarantors.[3]

---

[3]    The Noteholders have brought actions in New York state and federal court related to the BVI Notes.

4

12.     The funding raised by these bond issues was on-lent by Finance BVI to Investments BVI, which is therefore a debtor of Finance BVI in the amount of the on-lent funds, plus interest.  As of March 31, 2015, there was US$943,089,583.30 outstanding on this loan.  To the best of my knowledge, this loan is Finance BVI's only material asset, and Investments BVI is Finance BVI's only material debtor.  In addition to the holders of the Notes, Deutsche Bank Trust Company Americas, which is owed US$97,847.72 for indenture trustee fees and expenses, is the only creditor of Finance BVI.

13.     Thereafter, the bond proceeds were on-lent by Investments BVI to the wider OAS Group.  Investments BVI is therefore a creditor of other holding companies and operating companies within the OAS Group for the proceeds of the bond issuance.

14.     Investments GmbH issued one series of New York law-governed notes in two offerings (one in 2012 and a subsequent one in 2013), raising US$875 million of funding (the "GmbH Notes", together with the BVI Notes will be referred to simply as the "Notes").[4]  The GmbH Notes are also guaranteed by the Guarantors.

15.     Finance BVI is the largest creditor of Investments BVI.  Investments GmbH lent the proceeds of the GmbH Notes to Investments BVI and is the second largest creditor of Investments BVI.  As of March 31, 2015, there was US$909,448,958.30 outstanding on this intercompany loan.

**Background to the OAS Group's Recent Financial Difficulties**

16.     The corruption scandal has dramatically impaired the financial position of the OAS Group.  On November 19, 2014, Standard & Poor's downgraded the credit ratings of OAS and OAS Finance from BB- to B+ with a negative outlook, noting the uncertainties created by

---

[4]     One of the Noteholders has brought an action in New York federal court related to the GmbH Notes.

5

the ongoing corruption scandal, including the possibility of business sanctions under Brazil's anti-corruption laws and higher refinancing risks even in the absence of such penalties.

17.    The moment that downgrade occurred, the holders of the 9th Series Convertible Debentures (the "Convertible Debentures") issued by OAS and guaranteed by Construtora OAS were entitled to accelerate those Debentures.  They did so on December 8, 2014, in an amount of approximately R$105.88 million, which may include some accrued interest.  As a result, OAS and Construtora OAS became obligated to pay the accelerated amount on January 5, 2015.

18.    On December 19, 2014, Brazilian newspaper Folha de S.Paulo reported that OAS had been renegotiating debts with creditors and laying off employees, amid the crisis generated by its involvement in the corruption scandal.  It should be noted, however, that the Noteholders were not among the creditors with whom OAS was negotiating.  According to the news report, OAS hired a financial advisor (G5 | Evercore) to help it seek partners and sell stakes it owns in other companies.  The article reported that OAS also had dismissed upwards of "thousands" of workers across Brazil.

19.    Also in December 2014, OAS drew R$200 million from a R$600 million line of standby credit that it had with a pool of banks.  The OAS Group depended on the availability of this line of credit to meet their debt obligations.  On January 8, 2015, however, Debtwire reported that OAS had lost access to the remaining R$400 million line of credit because of the company's rating downgrades.  According to a source quoted by Debtwire, "[t]he company missed the opportunity to take the [R$400 million] in December and now the funds are not available anymore."  The Debtwire article further reported that, in addition to financial advisor G5 | Evercore, OAS also has hired legal advisors Mattos Filho Advogados and White & Case LLP to help form a restructuring plan.

20.     On December 29, 2014, Petrobras issued a press release stating that, in light of the charges made against OAS in the scandal, OAS has been temporarily banned from contracting with Petrobras and from participating in bids for such contracts.

21.     As of January 2, 2015, Finance BVI and the Guarantors started to default on the bonds issued by Finance BVI.

**Series of Prejudicial Transactions Conducted in Secret**

22.     As noted in paragraph 16 above, the ratings downgrade on November 19 allowed some of the OAS Group's debts to be accelerated.  In the short period of time between then and January 2, 2015, when Finance BVI's bonds went into payment default, the OAS Group engaged in a methodical, brazen series of secret transfers, all of which were designed to be severely prejudicial to the holders of the Notes.

23.     On December 1, 2014—a week before the Convertible Debentures were accelerated—Construtora OAS (a guarantor of the Notes) transferred assets valued at R$301 million to OAS Engenharia e Construção S.A. ("Engenharia"), another subsidiary of OAS. Construtora OAS did not receive any value in return.  Significantly, unlike Construtora OAS, Engenharia is not an obligor or guarantor of the Notes. OAS did not reveal this transfer until it published board of director meeting minutes in the Brazil official gazette on January 20, 2015.

24.     On December 26, 2014—seven days before the first payment default on the Notes—OAS Investimentos was merged into OAS.  OAS Investimentos' guaranty of the Notes was a critical element of credit support for the Notes and made them structurally senior to almost all other creditors of the OAS Group as respects the very substantial assets of OAS Investimentos.  Although Investimentos was itself insolvent, it had a vastly better ability to pay its creditors than did OAS, which had no assets of its own other than its interests in its

subsidiaries.  The merger of OAS Investimentos into OAS eliminated the Notes' structural seniority on the eve of their default.  If allowed to stand, the merger will dramatically reduce the recoveries on the Notes.

25.     Remarkably, although OAS had a statutory obligation in Brazil to disclose the merger, it did not do so for an entire month, even as it issued many other public statements in the interim.  When OAS finally did disclose the merger, on January 29, 2015, the minutes of OAS's board meeting also revealed that OAS changed the newspaper in which it publishes notices.  This change was made on the same day that the illicit merger was also approved.  We understand that this change—which itself was kept secret—violated Brazilian law, which permits such changes to be approved only at an annual general meeting.

26.     On December 26, 2014, OAS Investimentos transferred its ownership stake in Investimentos e Participações em Infraestrutura S.A. ("Invepar") to its subsidiary OAS Infraestrutura S.A. ("OAS Infraestrutura").  OAS Investimentos' 24.44% stake in Invepar had a book value of R$1.46 billion as of September 30, 2014 but is likely worth much more than that. OAS Investimentos did not receive any value in return.  Significantly, unlike OAS Investimentos, OAS Infraestrutura is not an obligor or guarantor of the Notes.  This transfer was kept secret until Invepar (and not OAS Investimentos) published a notice on January 7, 2015.

27.     These transfers were conducted in secret while the companies were plainly insolvent and on the verge of many payment defaults.

**Attachments of Assets**

28.     The Noteholders are not aware of any assets of the Debtors in the United States, other than what has already been attached in the New York state court action brought by Noteholder Aurelius Investment, LLC or disclosed by the Debtors.

8

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Executed on:  April 16, 2015

Respectfully submitted,

By: _____
Eleanor Chan