**Hearing Date:  May 19, 2015 at 2:00 p.m. (New York time)**
**Objection Deadline:  May 12, 2015 at 4:00 p.m. (New York time)**

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Allan S. Brilliant
Craig P. Druehl
Stephen M. Wolpert

*Attorneys for Aurelius Capital Management, LP*
*on behalf of entities it manages, including*
*Aurelius Investment, LLC and Huxley Capital*
*Corporation and Alden Global Capital LLC on*
*behalf of entities it manages, including Alden*
*Global Adfero BPI Fund, Ltd., Alden Global*
*Opportunities Master Fund, L.P., Alden Global*
*Value Recovery Master Fund, L.P., and*
*Turnpike Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                                                         :
In re:                                                   :    Chapter 15
                                                         :
OAS S.A., *et al.*,[1]                                   :    Case No. 15-10937 (SMB)
                                                         :
    Alleged Debtors in Foreign Proceedings.              :    Jointly Administered
                                                         :
-------------------------------------------------------- X

**NOTICE OF HEARING ON ALDEN AND AURELIUS'S MOTION TO**
**STRIKE NOTICE OF APPEARANCE OF MORGAN, LEWIS & BOCKIUS LLP**
**AND PRECLUDE MORGAN, LEWIS & BOCKIUS LLP FROM BEING HEARD**

    **PLEASE TAKE NOTICE** that, a hearing on the annexed Alden and Aurelius Motion to

Strike Notice of Appearance of Morgan, Lewis & Bockius LLP and Preclude Morgan, Lewis &

Bockius LLP from Being Heard (the "Motion") will be held before the Honorable Stuart M.

Bernstein, United States Bankruptcy Judge in Room 723 of the United States Bankruptcy Court

---

[1]    The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax
       identification or corporate registry number, are: OAS S.A. (01-05), Construtora OAS S.A. (01-08),
       OAS Investments GmbH (4557), and OAS Finance Limited (6299).

20983680

for the Southern District of New York (the "Court"), One Bowling Green, New York, New York

10004 at **2:00 p.m. (New York time) on May 19, 2015.**

      **PLEASE TAKE FURTHER NOTICE** that any objection or response to the Motion

must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local

Rules for the United States Bankruptcy Court of the Southern District of New York, and (i) shall

be filed with the Court electronically pursuant to the Court's General Order M-399 (which can

be found at www.nysb.uscourts.gov) by registered users of the Court's case filing system and, by

all other parties in interest, on a CD or flash drive, preferably in Portable Document Format

("PDF"), WordPerfect, or any other Windows-based word processing format; and (ii) a hardcopy

of such objection or response shall be served in accordance with General Order M-399, (A) upon

the chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, One

Bowling Green, New York, New York 10004-1408, (B) Dechert LLP, 1095 Avenue of the

Americas, New York, New York 10036 (Attn: Allan S. Brilliant , Esq., Craig P. Druehl and

Stephen M. Wolpert, Esq.), and (C) White & Case LLP, Southeast Financial Center, 200 South

Biscayne Bay Blvd., Suite 4900, Miami, Florida 33131 (Attn: John K. Cunningham, Esq. and

Richard S. Kebrdle, Esq.) so as to be received no later than **4:00 p.m. (New York time),**

**May 12, 2015.**

      **PLEASE TAKE FURTHER NOTICE** that if no response or objection is timely filed

and served as provided above, the Court may grant the relief requested in the Motion without

further notice.

      **PLEASE TAKE FURTHER NOTICE** that the hearing may be adjourned from time to

time without further notice other than an announcement in open court, or a notice of adjournment

filed with the Court, of the adjourned date or dates at the hearing or any other further adjourned

hearing.


Dated:    April 30, 2015
          New York, New York

                                        /s/ Allan S. Brilliant
                                        Allan S. Brilliant
                                        Craig P. Druehl
                                        Stephen M. Wolpert
                                        DECHERT LLP
                                        1095 Avenue of the Americas
                                        New York, New York  10036
                                        Telephone: (212) 698-3500
                                        Facsimile: (212) 698-3599

                                        *Attorneys for Aurelius Capital Management, LP on
                                        behalf of entities it manages, including Aurelius
                                        Investment, LLC and Huxley Capital Corporation
                                        and Alden Global Capital LLC on behalf of entities
                                        it manages, including Alden Global Adfero BPI
                                        Fund, Ltd., Alden Global Opportunities Master
                                        Fund, L.P., Alden Global Value Recovery Master
                                        Fund, L.P., and Turnpike Limited*

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Allan S. Brilliant
Craig P. Druehl
Stephen M. Wolpert

*Attorneys for Aurelius Capital Management, LP
on behalf of entities it manages, including
Aurelius Investment, LLC and Huxley Capital
Corporation and Alden Global Capital LLC on
behalf of entities it manages, including Alden
Global Adfero BPI Fund, Ltd., Alden Global
Opportunities Master Fund, L.P., Alden Global
Value Recovery Master Fund, L.P., and
Turnpike Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X
                                                          :
In re:                                                    :    Chapter 15
                                                          :
OAS S.A., *et al.*,[1]                                     :    Case No. 15-10937 (SMB)
                                                          :
        Alleged Debtors in Foreign Proceedings.   :    Jointly Administered
                                                          :
--------------------------------------------------------- X

## ALDEN AND AURELIUS'S MOTION TO STRIKE NOTICE OF APPEARANCE OF MORGAN, LEWIS & BOCKIUS LLP AND PRECLUDE MORGAN, LEWIS & BOCKIUS LLP FROM BEING HEARD

Aurelius Capital Management, LP on behalf of entities it manages, including Aurelius

Investment, LLC and Huxley Capital Corporation (collectively, "Aurelius") and Alden Global

Capital LLC on behalf of entities it manages, including Alden Global Adfero BPI Fund, Ltd.,

---

[1]    The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax
       identification or corporate registry number, are: OAS S.A. (01-05), Construtora OAS S.A. (01-08),
       OAS Investments GmbH (4557), and OAS Finance Limited (6299).

20959334

Alden Global Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P., and Turnpike Limited (collectively, "Alden"), as holders or managers of entities that hold beneficial interests in certain 8.00% Senior Notes due 2021 issued by OAS Finance Limited and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A. (the "2021 Notes"), and/or certain 8.25% Senior Notes due 2019 issued by OAS Investments GmbH and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A. (the "2019 Notes"), and/or certain 8.875% Perpetual Notes issued by OAS Finance Limited and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A. (the "Perpetual Notes," and together with the 2019 Notes and the 2021 Notes, the "Notes"),[2] hereby file this motion to strike (the "Motion") the *Notice of Appearance and Request for Service of Papers* [Docket No. 15] (the "Notice of Appearance") of Morgan, Lewis & Bockius LLP ("Morgan Lewis"), as counsel for a purported "Ad-Hoc Group of U.S. Noteholders" (the "Morgan Lewis Noteholder Group") and preclude Morgan Lewis from being heard.  In support of the Motion, Alden and Aurelius respectfully state as follows:

## PRELIMINARY STATEMENT

Morgan, Lewis & Bockius LLP has entered a Notice of Appearance in these chapter 15 proceedings and sought to influence the relief granted by the Court without satisfying the basic prerequisites of such notice of appearance: identification of Morgan Lewis's clients and the clients' interests in the Debtors.  Instead, Morgan Lewis has merely stated in its Notice of Appearance that it represents an "Ad-Hoc Group of U.S. Noteholders."  The group of

---

[2]    Alden and Aurelius hold, in the aggregate, $309,701,000.00 in principal amount of Notes.  Other than the holdings of Notes listed in the immediately preceding sentence, and certain asserted and unasserted causes of action related thereto, Alden and Aurelius hold no other claims or interests in OAS S.A. or any of its subsidiaries, including subsidiaries that have not filed chapter 15 petitions with this Court.

noteholders that Morgan Lewis purports to represent, however, is not a corporation, partnership, limited liability corporation or other legal entity.  Instead, this Morgan Lewis Noteholder Group is, at most, an informal affiliation of creditors sharing counsel.  In and of itself, the Morgan Lewis Noteholder Group is not a creditor or party-in-interest that has the ownership, right to vote a claim, or ability to appear in a chapter 15 case without disclosure of the real parties-in-interest, its members.  Morgan Lewis has steadfastly refused to disclose the names of its clients to the Court and to Alden and Aurelius,[3] violating the rules governing the filing of a notice of appearance and impinging on the integrity of these proceedings.  Thus, the Court should strike Morgan Lewis's Notice of Appearance and preclude Morgan Lewis from appearing and being heard in this case until it, at the very least, identifies the members of the Morgan Lewis Noteholder Group and discloses the aggregate holdings of these creditors in the Notes, as well as any other of the clients' economic interests in OAS S.A. or any of its subsidiaries (the "OAS Entities"), including subsidiaries that have not filed chapter 15 petitions with this Court.

The Debtors have already sought to convince the Court that the voice of the Morgan Lewis Noteholder Group should be favored over the voices of other Noteholders.  Although the aim of Alden and Aurelius is not to prevent the members of Morgan Lewis Noteholder Group from expressing their views in these proceedings, the Court and other parties-in-interest must be provided with basic information regarding the identities of that group's members and their economic interests in the Debtors to be able to determine the weight to place on—and otherwise assess—the group's arguments and assertions.

---

[3]     Alden and Aurelius were among Morgan Lewis's Noteholder-clients until mid- and early February, respectively.  While Alden and Aurelius knew who those other Noteholders were then, that information is quite stale.

3

## FACTUAL BACKGROUND

1.      On April 16, 2015, Morgan, Lewis & Bockius LLP filed the Notice of

Appearance as purported counsel for an "Ad-Hoc Group of U.S. Noteholders."  The Notice of

Appearance did not identify the creditors for whom Morgan Lewis appeared, nor did it disclose

the aggregate amount of Notes and other economic interests in the OAS Entities held by them.

2.      On April 17, 2015, Alden and Aurelius filed the *Objection to Motion for*

*Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 17] (the

"Objection").  In the Objection, Alden and Aurelius disclosed their aggregate holdings of Notes

and represented that they had no other economic interests in the OAS Entities other than certain

asserted and unasserted causes of action related to the Notes.  *See* Objection at 2 fn. 2.  A

corresponding but updated disclosure appears in footnote 2 hereto.

3.      On April 17, 2015, the Court held a hearing on the Debtors' motion for

provisional relief.  At the hearing, Alden and Aurelius requested that the Court ask Morgan

Lewis to disclose the identities of the creditors belonging to the Morgan Lewis Noteholder

Group, as well as the nature and amount of their respective interests in the OAS Debtors.  *See*

Hr'g Tr., Apr. 17, 2015, 43 at ln. 21-22.  The Court agreed and asked, "Who is this ad hoc

group?"  *Id.* at ln. 23.  A copy of the relevant hearing transcript pages is attached hereto as

Exhibit A.

4.      In response to the Court's queries, Timothy DeSieno, a partner at Morgan Lewis,

stated, "It's a group of holders of *eight or nine* holders of the U.S. dollar denominated debt that

holds *roughly* thirty percent, *maybe* a little bit north of that, of the total amount outstanding."

(Emphasis added.)  Hr'g Tr., Apr. 17, 2015, 43 at ln. 24-25, 44 at ln. 1-2.  Mr. DeSieno did not

identify those holders.  While Mr. DeSieno did provide a rough estimate of his clients'

4

Noteholdings, it was unclear how current that rough estimate was, and he provided no information concerning any other economic interests they may have.  Mr. DeSieno then gave a substantive presentation to the Court, expressing his views on the Debtors' motion and the case more generally.  *See* Hr'g Tr., Apr. 17, 2015, 44-49.

5.      On April 20, 2015, counsel for Alden and Aurelius sent a letter via e-mail to Mr. DeSieno, attached hereto as Exhibit B (the "April 20 Letter").  The April 20 Letter recounted Mr. DeSieno's lack of response at the April 17 hearing to the Court's question regarding the identities of his clients and their interests.  *See* April 20 letter at 2.  The letter stated, "Given the importance of transparency to this matter and the desirability of Noteholders working constructively together, we request that you immediately identify the clients for whom you have made your appearance, disclose the aggregate amount of the Notes they held as of the close of business on April 16, 2015, and disclose any other claims or interests they may have in any OAS Entities."  The letter also asked that Mr. DeSieno provide the requested information on or before April 22, 2015 so as to avoid burdening the Court with this matter.  *Id.*

6.      On April 24, 2015, counsel for Alden and Aurelius received a letter via e-mail from Mr. DeSieno, attached hereto as Exhibit C (the "Morgan Lewis Letter").  The letter stated, "We know you well understand the importance many note holders ascribe to maintaining the confidentiality of their identity and investments, if that is possible.  Given that the rules applicable in OAS's chapter 15 proceedings do not require our clients to publish the details you outline in your letter, our clients have chosen not to volunteer that information."  Morgan Lewis Letter at 1.

7.      As of the filing of this Motion, Alden and Aurelius have not received any further response to the April 20 Letter.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction to consider this Motion pursuant to sections 157 and

1334 of title 28 of the United States Code, as well as the Amended Standing Order of Reference

dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12

Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

9.     This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United

States Code, and the Court may enter a final order in respect of it under Article III of the United

States Constitution.

10.     Venue is proper in this Court pursuant to section 1409(a) of title 28 of the United

States Code.

11.     The predicates for the requested relief are section 105(a) of the Bankruptcy Code

and Rule 9010 of the Federal Rules of Bankruptcy Procedure.

## ARGUMENT

12.     Morgan Lewis's Notice of Appearance should be stricken from this Court's

record and Morgan Lewis should be precluded from further appearance because the Notice of

Appearance fails to satisfy the basic requirements of a notice of appearance.  Rule 9001 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") makes it clear that the

Bankruptcy Rules generally apply in chapter 15 proceedings ("The definitions of words and

phrases in §§ 101, 902, 1101, and 1502 of the Code… govern their use in these rules.").

Bankruptcy Rule 9010 provides, "A debtor, creditor, equity security holder, indenture trustee,

committee or other party may [] appear in a case under the Code and act either in the entity's

own behalf or by an attorney authorized to practice in the court…"  Fed. R. Bankr. P. 9010(a).

In addition, "[a]n attorney appearing for a party in a case under the [Bankruptcy] Code shall file

6

a notice of appearance…" Fed. R. Bankr. P. 9010(b). Thus, on its face, Bankruptcy Rule 9010 requires that an attorney appearing in a bankruptcy case file a notice of appearance when "appearing for" a "creditor" or "other party."[4]

13.     Morgan Lewis's Notice of Appearance, however, only states that the firm represents "an Ad-Hoc Group of U.S. Noteholders (the 'Ad-Hoc Group'), creditors and parties-in-interest in the above-captioned case." Notice of Appearance at 1. By definition, however, the Morgan Lewis Noteholder Group is not itself "creditors and parties-in-interest" in the proceedings before this Court. Rather, the Morgan Lewis Noteholder Group has a membership that consists of institutions that may be such creditors and parties-in-interest. Notably, ad hoc groups, like this one, are not formal legal entities with the ability to bind its members as to what positions to take in the case, whether to vote for or against a plan, or to accept treatment under a plan. Instead, they are merely informal affiliations of creditors acting collectively and sharing counsel, with membership that is at-will. *See, e.g., Premier Intern. Holdings, Inc.* 423 B.R. 58, 75-76 (Bankr. D. Del. 2010) ("There is nothing formal in a legal sense in an *ad hoc* or informal committee … a formal committee requires the consent of the governed either by contract or operation of law."). The Notice of Appearance therefore did not identify any "creditor" on whose behalf the law firm was appearing. As a consequence, Morgan Lewis's Notice failed to show that it represents any party in these chapter 15 cases, as required under Bankruptcy Rule 9010.

---

[4]     The U.S. Bankruptcy Court for the Southern District of New York has no official form for notices of appearance. However, the Appearance of Counsel Form used in the U.S. District Court for the Southern District of New York requires that an attorney completing the form state that "[he or she] appear[s] in this case as counsel for:" a client. *See* S.D.N.Y. Form AO 458 (Rev. 06/09). The U.S. Bankruptcy Court for the Southern District of New York also requires that when an attorney advocates for his client's interests by filing a proof of claim with the Court, he provide the name of his client. The Bankruptcy Court's Proof of Claim Form requires that counsel disclose the "Name of Creditor." *See* Official Form 10 (04/13).

14.      Bankruptcy Rule 9010's requirement that an attorney "appear[] for" a "creditor" or "other party" is based on the constitutional requirement that a party have standing to sue or be heard in the federal courts, and the need for the information in order for the Court and other parties in interest to fulfill their obligations.  Rule 17 of the Federal Rules of Civil Procedure, made applicable in chapter 15 cases by Bankruptcy Rules 7017 and 9014, states, "An action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  A party not possessing a substantive legal right is not the real party in interest with respect to that right.  4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 17.10[1] (3d ed. 2004); *see also United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 609 (S.D.N.Y. 2012) (distinguishing between the trustee, the real party in interest, and the trustee's representative, which lacked "its own stake in the litigation"); *Alaska Russia Salmon Caviar Co. v. M/V "Marit Maersk"*, Case No. 98 Civ. 7685 (DLC), 2000 U.S. Dist. LEXIS 905, at *20 (S.D.N.Y. Feb. 2, 2000) (granting summary judgment against plaintiff who was not real party in interest).  Plainly, an ad hoc group per se, as opposed to its members individually, is not a real party in interest, and hence cannot participate in adversary proceedings or contested matters.

15.      Similarly, in the context of class actions, courts likewise require that plaintiffs identify a specific constituent who is being harmed by the defendant's actions in order to demonstrate the concrete and particularized injury required for standing.  *See, e.g.,  Pa. Prot. & Advocacy v. Houston*, 136 F. Supp. 2d 353, 365-66 (E.D. Pa. 2001); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) ("a plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under… the substantive law") (internal citation omitted); *Cent. States Se. & Sw. Areas Health & Welfare*

8

*Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) ("a person cannot predicate standing on injury which he does not share") (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)).  The same result applies here:  Morgan Lewis cannot obfuscate the basic details of its representation of creditors behind the "Group" label.  In declining to identify any clients or their interests, Morgan Lewis has failed to demonstrate that any member of the Morgan Lewis Noteholder Group possesses the requisite standing to argue in front of this Court.

16.    Further, Morgan Lewis's refusal to make basic disclosures regarding the Morgan Lewis Noteholder Group also damages these chapter 15 proceedings because it deprives the Court and other parties in interest of the information needed to determine whether members of the Morgan Lewis Noteholder Group are affiliated with the OAS Debtors, whether the Court has an affiliation with any members of the Morgan Lewis Noteholder Group warranting disclosure by the Court, and whether counsel to other parties in interest have a conflict preventing them from litigating against them.

17.    At the April 17 hearing, the Court directly put the question to Morgan Lewis:  "Who is this ad hoc group?"  Hr'g Tr., Apr. 17, 2015, 43 at ln. 23.  Morgan Lewis provided the vague response that it represented "eight or nine" funds, but did not identify any of them.  Further, although Morgan Lewis stated that its clients held roughly 30 percent of the outstanding Notes, it did not provide a precise or up-to-date dollar amount of the holdings.  *See* Hr'g Tr., Apr. 17, 2015, 43 at ln. 24-25, 44 at ln. 1-2.  Morgan Lewis also did not disclose other economic interests, if any, held by creditors in the Morgan Lewis Noteholder Group in the OAS Entities.  Morgan Lewis then proceeded to participate in the contested matter relating to provisional relief under section 1519 of the Bankruptcy Code sought by the Debtors, and outline its views of the case more generally.  *See* Hr'g Tr., Apr. 17, 2015, 44-49.

9

18.     Subsequent to the Court hearing, counsel to Alden and Aurelius followed up with the April 20 Letter.  Morgan Lewis's response to the April 20 Letter was similarly inadequate.  The Morgan Lewis Letter again refused to provide the requested information, and merely referenced "the importance many note holders ascribe to maintaining the confidentiality of their identity and investments."  Morgan Lewis Letter at 1.  Whatever their preferences, Morgan Lewis's clients cannot take positions in court without letting the Court and parties-in-interest know who they are.  They cannot hide behind the label "Ad-Hoc Group of Noteholders."

19.     As for disclosing their economic interests, any pretense of confidentiality is belied by Mr. DeSieno's representation on the record that his clients own approximately 30 percent of the Notes.  Either that representation was (and remains) correct or not.  If that representation was not correct, surely it should be corrected now.  And if it was correct, there should be no reluctance to confirm that fact (with greater precision) now.  In any event, it is difficult to imagine any legitimate reason for Morgan Lewis's clients not to disclose their *aggregate* holdings, which is far less intrusive than the creditor-by-creditor information that Bankruptcy Rule 2019 would require in a chapter 11 case.

20.     Even if there were a legitimate basis to keep the requested information confidential, the solution would be for Morgan Lewis to seek permission to file that information under seal pursuant to 11 U.S.C. § 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure.

21.     At root, Morgan Lewis's clients want to have their cake and eat it too.  They want to (and plainly the OAS Entities want them to) participate prominently in the chapter 15 cases and hold themselves out to the Court as being intimately involved in the restructuring process, yet keep their identities and economic interests secret.  This would be peculiar in any event, but

10

all the more so given that the OAS Entities are paying for the Morgan Lewis Noteholder Group's advisors but not the advisors to the Noteholders' indenture trustees.

22.     It is well settled that the Court possesses the inherent authority to supervise and control its own proceedings, *see, e.g., In re Spectee Grp.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995); *United States v. International Bd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991) (courts "need to be able to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases'"), and to manage its cases and courtroom and to maintain the integrity of judicial proceedings. *See, e.g., In re Brooks-Hamilton*, 400 B.R. 238, 246 (B.A.P. 9th Cir. 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)).  Moreover, 11 U.S.C. § 105(a) and Bankruptcy Rule 9011 give the Court the power to regulate attorneys who appear before it and to impose sanctions when necessary. *In re Thao Tran Nguyen*, 447 B.R. 268, 280-82 (B.A.P. 9th Cir. 2011).  Therefore, it is undoubtedly within the Court's discretion to preclude parties such as Morgan Lewis from being heard.[5]

23.     Thus, the Court has many compelling reasons to exercise its discretion to preclude Morgan Lewis from further argument unless and until it makes (and thereafter keeps current) the basic disclosure requested by this Motion.  Without having access to the identities and holdings of creditors in the Morgan Lewis Noteholder Group, this Court cannot determine how to weigh and assess arguments made by Morgan Lewis.  Further, the power exercised by a collective group of creditors in bankruptcy proceedings, supposedly speaking for multiple parties-in-interest, weighs in favor of disclosure.

---

[5]     Although Bankruptcy Rule 2019 does not apply in chapter 15 cases, its absence does not undermine Morgan Lewis's responsibility to provide basic disclosures under other applicable Rules and federal standing requirements.  Nor does the inapplicability of Bankruptcy Rule 2019 affect the Court's independent authority to require basic disclosures.

24.    Of course, Alden and Aurelius do not seek to silence Morgan Lewis's clients. Rather, they seek to ensure that when the Morgan Lewis Noteholder Group's voice is heard in these cases, and when they are touted by the Debtors, the Court and other parties-in-interest will know who those parties are and what economic interests they are protecting.

## NOTICE OF MOTION

25.    Notice of the Motion has been provided by email and overnight courier service to counsel for the Morgan Lewis Noteholder Group; co-counsel for the Debtors; counsel for the Indenture Trustees under the U.S. dollar-denominated notes; and the U.S. Trustee as listed in Exhibit D annexed hereto.

26.    Alden and Aurelius have exercised reasonable diligence in providing notice to affected parties-in-interest and believe that no further notice is necessary.

## CONCLUSION

WHEREFORE, Alden and Aurelius respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit E striking the Morgan Lewis Notice of Appearance from the record and directing that the Notice of Appearance be expunged from the Electronic Case Filing docket herein, and precluding Morgan Lewis from appearing or being heard on behalf of the Morgan Lewis Noteholder Group in any matter unless and until Morgan Lewis discloses (1) the names of the creditors in the Morgan Lewis Noteholder Group, (2) the dollar amount of aggregate holdings in the Notes held by creditors in the Morgan Lewis Noteholder Group, and (3) the quantity and nature of the other economic interests in the OAS Entities, if any, held by creditors in the Morgan Lewis Noteholder Group, and grant such other and further relief as this Court deems just and proper.

12

Dated:    April 30, 2015
       New York, New York

                          /s/ Allan S. Brilliant

                          Allan S. Brilliant
                          Craig P. Druehl
                          Stephen M. Wolpert
                          DECHERT LLP
                          1095 Avenue of the Americas
                          New York, New York  10036
                          Telephone: (212) 698-3500
                          Facsimile: (212) 698-3599

*Attorneys for Aurelius Capital Management, LP on behalf of entities it manages, including Aurelius Investment, LLC and Huxley Capital Corporation and Alden Global Capital LLC on behalf of entities it manages, including Alden Global Adfero BPI Fund, Ltd., Alden Global Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P., and Turnpike Limited*

13

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | . | Chapter 15 |
| | . | |
| OAS, S.A., em repurercao | . | Case No. 15-10937 (SMB) |
| judicial and RENATO | . | |
| FERMIANO TAVARES, | . | |
| | . | One Bowling Green |
| Debtors. | . | New York, New York 10004 |
| | . | |
| | . | Friday, April 17, 2015 |
| . . . . . . . . . . . . . | . | 10:05 a.m. |

TRANSCRIPT OF HEARING TO CONSIDER PETITIONER'S
MOTION FOR PROVISIONAL RELIEF PURSUANT TO
SECTION  1519 OF THE BANKRUPTCY CODE
BEFORE THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Foreign
Representative:                    John K. Cunningham, Esq.
                                   WHITE & CASE, LLP
                                   200 South Biscayne Boulevard
                                   Suite 4900
                                   Miami, Florida 33131

                                   Gregory M. Starner, Esq.
                                   WHITE & CASE, LLP
                                   1155 Avenue of the Americas
                                   New York, New York 10036

For Aurelius and Alden Note
Holders:                           Edward A. Friedman, Esq.
                                   FRIEDMAN, KAPLAN, SEILER &
                                    ADELMAN, LLP
                                   7 Times Square
                                   New York, NY 10036-6516

(Continued)


ECRO:                              K. Harris

Transcription Company:             Ad Hoc Transcription, LLC
                                   241 Sussex Avenue
                                   Newton, New Jersey 07860
                                   (888) 516-5553
                                   www.adhoctranscription.com


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

43

1  activity.

2          My last point, Your Honor, is that Your Honor has the

3  power to fix this under 1522(b).  Your Honor has the power to

4  condition relief granted in this case to impose conditions that

5  you believe are appropriate, and one of those conditions may

6  well be to have that fraudulent conveyance litigation heard

7  right here or heard in the District Court.

8          We think it's a very serious transaction that just

9  cannot be allowed to be explained away as cost-saving or

10  corporate housecleaning.  And those are the points I wanted to

11  make, Your Honor.  Thank you very much.

12          THE COURT:  Thank you.  Anyone else?

13          MR. DE SIENO:  Good morning, Your Honor.

14          THE COURT:  Good morning.

15          MR. DE SIENO:  Tim DeSieno from Morgan Lewis on

16  behalf of an ad hoc committee of note holders as you will have

17  read about in the filings.

18          MR. BRILLIANT:  Your Honor, it may be helpful to the

19  Court if -- and I know it would be helpful to me and my client

20  so we can assess the -- you know, the weight of these arguments

21  if Mr. DeSieno tells us, you know, who his clients are and how

22  much are the notes they hold.

23          THE COURT:  Well, yeah.  Who is this ad hoc group?

24          MR. DE SIENO:  It's a group of holders of eight or

25  nine holders of the U.S. dollar denominated debt that holds

1  roughly thirty percent, maybe a little bit north of that, of

2  the total amount outstanding.  And I would say that that amount

3  has frankly more than double, almost triple of the amount of

4  the objectors' holdings today.

5         MR. BRILLIANT:  Your Honor, we say in our papers we

6  have 266 million so I don't understand his math but that's --

7         MR. DE SIENO:  Thank you for that.

8         I stand up only to offer some context that I think

9  may be instructive in the decision on how to proceed on the

10 limited request today before us for the interim relief, and of

11 course, we'll come on to 1507 and the plan recognition

12 enforcement some day but this is a group that organized quickly

13 in the wake of the default and the news flow around the company

14 with a view to protecting creditors' rights as that group saw

15 best, and that included an assessment of very -- on the very

16 same kinds of concerns that we've heard from the objectors

17 today with respect to the transactions in question and under

18 litigation.  It also included an assessment of the value of a

19 consensual negotiation process and due diligence process with

20 the Brazilian debtors.

21        And on balance the group has concluded that the

22 latter course is what makes the most sense and is very happy to

23 report that the OAS debtors have in fact engaged in our

24 assessment so far in an attempt and a good faith due diligence

25 process in driving toward that good faith negotiation effort in

1  what we would characterize so far as a robust use of the

2  Brazilian reorganization statute.

3          THE COURT:  My understanding is they have a very

4  short period of time to propose a plan.

5          MR. DE SIENO:  Sixty days from the date the case is

6  commenced and is published and then 180 days only in total to

7  negotiate that plan and have it submitted to a creditor vote.

8          THE COURT:  And then what happens?  It goes into a

9  liquidation if it can't --

10          MR. DE SIENO:  Right.

11          THE COURT:  -- confirm a plan?

12          MR. DE SIENO:  In theory.  In practice, it tends not

13  to -- there can be brief extensions but that is in fact a

14  theory.  But the hope, Your Honor, is that well, with a

15  significant constituency of creditors that we would work toward

16  a negotiated outcome that could be submitted to such a

17  creditors meeting and one would hope voted on favorably, and

18  the plan that would respect the principal in the U.S. and in

19  Brazil more importantly, peri passu treatment for all unsecured

20  creditors as foreseen in the law.

21          It's our client's assessment that the notes here, the

22  U.S. Dollar denominated notes making up such a significant

23  percentage of the debt owed by the OAS entities, the notes hold

24  a rather powerful sting in light of that dynamic you just

25  pointed out.  If we vote this plan up, then the company is

1   restructured.  If we vote this plan down, the company suffers a

2   likely liquidation in fairly short order.  And our clients have

3   assessed as I mentioned earlier the concerns that are rightly

4   brought to your attention in the objections today and the

5   comments from counsel to HSBC but it is at the moment our

6   client's assessment on the basis of advice from their financial

7   advisors which are subject to confidentiality but our client's

8   assessment that in fact the efforts of litigation that are

9   propounded by the objectors here and in Brazil are very likely

10  to damage the interests of creditors, and frankly quite

11  significantly, and as a consequence, we have not opted to

12  proceed in that pathway.

13        A couple of the dynamics that are relevant in our

14  client's assessment of the importance of preservation of the

15  group company and the construction business in particular and

16  that as a company that is known to need financial support that

17  it have access to that and that a feature of Brazilian law

18  which would if you will tag on a veil-piercing kind of basis

19  all group companies with consequential labor liabilities in

20  liquidation might very well erode and maybe even eliminate all

21  recoveries for unsecured creditors in the event of the

22  unwinding of the transactions.  I'm not certain of this.

23  That's our assessment. Due diligence efforts continue.

24        And the specific litigation before us today with

25  respect to these requests for the stay to be entered on an

47

1   interim basis makes a ton of sense to our clients for the two

2   reasons that the debtors have -- the OAS entities have put

3   before you, and that is number one, to respect the rights

4   protected in the Brazilian law and in the U.S. law that not

5   just the subset of objectors/creditors' rights are protected,

6   but that in fact all creditors' rights are protected and that

7   the importance of creditors being treated on a pari passu basis

8   is an important policy here that would be undermined if we were

9   to permit creditor litigation to proceed.

10          And we keep hearing that the six million attachment

11  is the focus today and I'm no expert and I have no opinion on

12  how enforceable and powerful that attachment is already.  It's

13  a matter of New York law but it's my understanding having read

14  the filings in the New York proceedings that the target of

15  attachment is actually much broader than the six million, that

16  there are assertions of theories that many, many other assets

17  may be subject to attachment which if true and if successful

18  might in fact further remove the principal of pari passu

19  treatment.

20          And, of course, we would not wish to see our good

21  faith efforts and the apparent good faith efforts of OAS to

22  negotiate a plan of reorganization under the Brazilian law

23  thwarted or frustrated by the efforts of some creditors to

24  prefer themselves at the expense of others.

25          I'll stop only after I reserve rights on the entirety

48

1    of the subject.  We are in the middle of a process and Brazil

2    can be a fought jurisdiction in which to engage in

3    reorganization proceedings.  That's --

4              THE COURT:  It can do what jurisdiction?

5              MR. DE SIENO:  Brazil can be a fought, a difficult --

6              THE COURT:  Oh.

7              MR. DE SIENO:  -- a difficult jurisdiction in which

8    to negotiate restructuring.  We had direct experience of that.

9    And so these things that are motivating our clients now may

10   very well change and may very well change dramatically, and

11   when they do, we will be the first to notify Your Honor of that

12   in connection with this 15 proceeding and to reassess what

13   steps may make sense but what's clear to us now is that the

14   permission for some creditors to proceed and prefer themselves

15   at the expense of all other creditors should be forestalled.

16             And I would pick up on Your Honor's remarks with

17   respect to the JPL's request that the status quo be preserved.

18   We're really hard pressed to see how the imposition of 362 in

19   the interim basis wouldn't do anything but exactly that.  We're

20   not clear why not entering the stay would somehow preserve the

21   status quo better than entering the stay that's been requested.

22   In fact, quite the opposite.  Actions will likely continue that

23   might in fact be to the detriment of the unsecured creditors

24   whom the JPL say they are acting for.  So we're not persuaded

25   that that request makes any sense but thank you very much for

49

1  your time and attention.

2         THE COURT:  Thank you.  Anyone else?

3         MR. BRILLIANT:  Your Honor, can I respond to Mr.

4  DeSieno's remarks since he's in support of the motion I take

5  it?

6         MR. STARNER:  I have a few comments in response to --

7         THE COURT:  I'll give you the last word.

8         MR. STARNER:  Thank you, Your Honor.

9         THE COURT:  Go ahead, Mr. Brilliant.

10        MR. BRILLIANT:  Thank you, Your Honor.  I guess --

11 you know, the first thing, Your Honor, is I think you should,

12 you know, take all the comments from Mr. DeSieno with a -- you

13 know, with a grain of salt --

14        THE COURT:  Well, I take yours with a grain of salt

15 also.

16        MR. BRILLIANT:  You should do that as well, Your

17 Honor.

18        THE COURT:  Everybody here represents a client.

19        MR. BRILLIANT:  Absolutely, Your Honor.  But --

20 absolutely.  But the difference here is, you know, I've exposed

21 who my clients are and how much they're owed and that they

22 don't own anything else other than, you know, the bonds.  We

23 don't have --

24        THE COURT:  How did your clients acquire their

25 interest?

**<u>EXHIBIT B</u>**



1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**ALLAN S. BRILLIANT**

allan.brilliant@dechert.com
+1 212 698 3600 Direct
+1 212 698 0612 Fax

April 20, 2015

**VIA E-MAIL**

Timothy B. DeSieno
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060

Re: *In re OAS S.A., et al.*, No. 15-10937-SMB (Bankr. S.D.N.Y.)

Dear Tim:

As you know, we are counsel for Aurelius Capital Management, LP on behalf of entities it manages including Aurelius Investment, LLC and Huxley Capital Corporation (collectively, "Aurelius"), and Alden Global Capital LLC on behalf of entities it manages including Alden Global Adfero BPI Fund, Ltd., Alden Global Opportunities Master Fund, L.P., Alden Global Recovery Master Fund, L.P., and Turnpike Limited (collectively, "Alden") in connection with the above-referenced chapter 15 cases.

The Objection we filed with the Bankruptcy Court last Friday disclosed that Aurelius and Alden hold, in the aggregate, $266,168,000.00 in principal amount of Notes[1]. The Objection also stated that, other than those Notes and asserted and unasserted causes of action related thereto, Aurelius and Alden hold no other claims or interests in OAS S.A. or any of its subsidiaries (the "OAS Entities"), including subsidiaries that are not the subject of any bankruptcy case .

On April 17 you filed in the chapter 15 cases a notice that you are appearing on behalf of an "Ad-Hoc Group of U.S. Noteholders" (the "Ad-Hoc Group"). Your notice referred to that group as "creditors and parties-in-interest" in the chapter 15 cases. Plainly the Ad-Hoc Group is not itself "creditors and parties-in-interest" in the cases. Rather, the Ad-Hoc Group has a membership that consists of the institutions that are such creditors and parties-in-interest. Your notice of

---

[1]    "Notes" means the 8.00% Senior Notes due 2021 issued by OAS Finance Limited and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A., the 8.25% Senior Notes due 2019 issued by OAS Investments GmbH and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A., and the 8.875% Perpetual Notes issued by OAS Finance Limited and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A.



appearance fails to disclose who the creditors are on whose behalf you are making your appearance. Your notice also fails to disclose the nature and amount of your clients' respective interests in the OAS Entities.

When you spoke at the April 17 hearing, we requested that you disclose at the hearing the same kind of information regarding your clients that we had already done for ours. Your reponse was insufficient in three respects. <u>First</u>, you stated that your clients were "eight or nine" funds, but you declined to identify them. <u>Second</u>, you stated that your clients held roughly 30% of the outstanding Notes, but you did not provide a dollar amount, let alone a precise or up-to-date one. Since your fees are not being allocated among your clients for payment (but are instead being paid by OAS Entities), we are concerned that your 30% estimate may be stale. <u>Third</u>, you declined to indicate what other interests, if any, your clients have in the OAS Entities.

Given the importance of transparency to this matter and the desirability of Noteholders working constructively together, we request that you immediately identify the clients for whom you have made your appearance, disclose the aggregate amount of the Notes they held as of the close of business on April 16, 2015, and disclose any other claims or interests they may have in any OAS Entities.

Please provide us with the foregoing information on or before April 22, 2015, so that we do not have to further burden the Court with this request.

Very truly yours,

Allan S. Brilliant

## **EXHIBIT C**

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0600
Tel.  +1.212.309.6000
Fax:  +1.212.309.6001
www.morganlewis.com

**Morgan Lewis**

**Timothy B. DeSieno**
Partner
+1.212.309.6600
tim.desieno@morganlewis.com

April 24, 2015

Allan S. Brilliant, Esq.
Dechert LLP
1095 Avenue of the Americas
New York NY 10036

Re:  In re OAS S.A., et al., 15-10937 (Bankr S.D.N.Y.)

Dear Allan,

Thank you for your letter of April 20, 2015.  Our clients remain more than happy to collaborate
with your clients on the subject of maximizing the recovery for holders of the USD-denominated
notes issued by the OAS entities, albeit for all USD-denominated notes.  We believe our
respective client groups share this common objective.  They also share common concerns about
significant transactions undertaken by OAS and its management, even if our respective client
groups have selected differing approaches to these items.

Our clients consider the best strategy at this time - which may well change as the process unfolds
- is to seek to engage OAS in a good faith effort at a consensual negotiation.  Our clients'
approach is borne of their views about Brazilian debt restructuring and insolvency proceedings
and the Brazilian legal tools available to OAS and its shareholders, as well as of our clients'
desire that no note holders obtain any preference over others.  The first stage of the attempted
good faith effort has been a diligence exercise, in which OAS appears to have been unusually
cooperative in the Brazilian context.  Our respective client groups have exchanged on these
topics in detail before, but our clients and we remain happy to continue that dialog, including the
best possible means to mesh with the pathway your clients have selected.  We understand your
clients will also be meeting OAS next week, and a discussion after our respective OAS meetings
could be fruitful.

We know you well understand the importance many note holders ascribe to maintaining the
confidentiality of their identity and investments, if that is possible.  Given that the rules
applicable in OAS's chapter 15 proceedings do not require our clients to publish the details you
outline in your letter, our clients have chosen not to volunteer that information.  Fortunately,
however, your clients have at their disposal the information they should require.  In fact, your
clients were once part of our client group, and they have all contact information, and a sense of
aggregate holdings size, from that recent time (further, at Aurelius' helpful suggestion, each of

Almaty  Astana  Beijing  Boston  Brussels  Chicago  Dallas  Dubai  Frankfurt  Harrisburg  Hartford  Houston  London  Los Angeles  Miami  Moscow
New York  Orange County  Paris  Philadelphia  Pittsburgh  Princeton  San Francisco  Santa Monica  Silicon Valley  Tokyo  Washington  Wilmington

Allan S. Brilliant, Esq.
April 24, 2015
Page 2

our clients has confirmed it holds no interest in the OAS group other than their USD-denominated note holdings).  Indeed, as you know, Aurelius recently wrote to all our clients, and followed up with phone calls to many of them, offering Aurelius' criticism of our clients' approach to this matter, and seemingly offering to purchase our clients' claims.  So we do not think that your letter's primary point about the desirability of constructive collaboration among USD-denominated note holders will be impeded by any inability to connect.

I suggest you and I speak soon to discuss best next steps.

Sincerely,

/s/ Timothy B. DeSieno

Timothy B. DeSieno

## **EXHIBIT D**

**Notice Parties to be Served by Overnight Courier and/or Electronic Mail**

| Name | Mailing Address and Email Address | Role |
|------|-----------------------------------|------|
| PETER A. BAUMGAERTNER, ESQ.<br><br>PILLSBURY WINTHROP SHAW PITTMAN LLP | PETER A. BAUMGAERTNER, ESQ.<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1540 BROADWAY<br>NEW YORK, NEW YORK 10036<br>peter.baumgaertner@pillsburylaw.com | COUNSEL TO THE INDENTURE TRUSTEES |
| GREGORY M. STARNER, ESQ.<br>KIMBERLY A. HAVIV, ESQ.<br>JOHN K. CUNNINGHAM, ESQ.<br><br>WHITE & CASE LLP | GREGORY M. STARNER, ESQ.<br>WHITE & CASE LLP<br>1155 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10036<br>gstarner@whitecase.com<br><br>JOHN K. CUNNINGHAM<br>WHITE & CASE LLP<br>200 SOUTH BISCAYNE BOULEVARD<br>SUITE 4900<br>MIAMI, FL 33131<br>jcunningham@whitecase.com | COUNSEL TO THE PETITIONER |
| TIMOTHY DESIENO, ESQ.<br><br>MORGAN LEWIS & BOCKIUS LLP | TIMOTHY DESIENO, ESQ.<br>MORGAN LEWIS & BOCKIUS LLP<br>399 PARK AVENUE<br>NEW YORK, NEW YORK 10022<br>tim.desieno@morganlewis.com | COUNSEL TO THE MORGAN LEWIS NOTEHOLDER GROUP |
| OFFICE OF THE UNITED STATES TRUSTEE | THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK<br>201 VARICK STREET, SUITE 1006<br>NEW YORK, NEW YORK 10014<br>USTP.Region02@usdoj.gov | UNITED STATES TRUSTEE |
| EDUARDO SECCHI MUNHOZ<br>MATTOS FILHO, VEIGA FILHO, MARREY JR E QUIROGA ADVOGADOS | emunhoz@mattosfilho.com.br | CO-COUNSEL TO EACH OF THE DEBTORS |
| JOEL LUIS THOMAZ BASTOS,<br>DIAS CARNEIRO ARYSTÓBULO FLORES SANCHES THOMAZ BASTOS ADVOGADOS | joel.bastos@dcadv.com.br | CO-COUNSEL TO EACH OF THE DEBTORS |

# **EXHIBIT E**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                                                          :
In re:                                                    :    Chapter 15
                                                          :
OAS S.A., *et al.*,[1]                                     :    Case No. 15-10937 (SMB)
                                                          :
        Alleged Debtors in Foreign Proceedings.           :    Jointly Administered
                                                          :
--------------------------------------------------------- X

### ORDER GRANTING MOTION TO STRIKE NOTICE OF APPEARANCE OF MORGAN, LEWIS & BOCKIUS LLP AND PRECLUDE <u>MORGAN, LEWIS & BOCKIUS LLP FROM BEING HEARD</u>

Upon *Alden and Aurelius's Motion to Strike Notice of Appearance of Morgan, Lewis & Bockius LLP and Preclude Morgan, Lewis & Bockius LLP From Being Heard* (the "<u>Motion</u>"), seeking entry of an Order (this "<u>Order</u>") striking the Notice of Appearance ("<u>Notice of Appearance</u>") of Morgan, Lewis & Bockius LLP ("<u>Morgan Lewis</u>") on behalf of a purported "Ad-Hoc Group of U.S. Noteholders" (the "<u>Morgan Lewis Noteholder Group</u>") and precluding Morgan Lewis from being heard, and other such relief as may be just and proper; and it appearing that this Court has jurisdiction to consider the Motion pursuant to sections 157 and 1334 of title 28 of the United States Code, and the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.) (the "<u>Amended Standing Order</u>"); and this Court having considered (i) the Motion, along with the exhibits annexed thereto, and (ii) the statements of counsel in support of the Motion at a hearing before this court on May 19, 2015 (the "<u>Hearing</u>"); and appropriate and timely notice of the filing of the Motion and the Hearing having

---

[1]     The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification or corporate registry number, are: OAS S.A. (01-05), Construtora OAS S.A. (01-08), OAS Investments GmbH (4557), and OAS Finance Limited (6299).

been given; and no other or further notice being necessary or required; and after due deliberation

and sufficient cause appearing therefor;

## THIS COURT HEREBY FINDS AND DETERMINES THAT:

A.        The findings and conclusions set forth herein constitute this Court's findings of

fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

To the extent any of the following findings of fact constitute conclusions of law, they are

adopted as such.  To the extent any of the following conclusions of law constitute findings of

fact, they are adopted as such.

B.        The Motion is granted as provided herein and any objections thereto are

overruled.

C.        The Court has jurisdiction over this matter pursuant to sections 157 and 1334 of

title 28 of the United States Code and the Amended Standing Order.  This is a core proceeding

pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

D.        Venue is proper in this district pursuant to section 1409(a) and 1410 of title 28 of

the United States Code.

E.        The bases for the relief requested are section 105(a) of the Bankruptcy Code and

Rule 9010 of the Federal Rules of Bankruptcy Procedure.

F.        Appropriate notice of the filing of, and the Hearing on, the Motion was given,

which notice is deemed adequate for all purposes, and no other or further notice need be given.

## NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.        Morgan Lewis' Notice of Appearance shall be stricken from the record and the

Notice of Appearance shall be expunged from the Electronic Case Filing docket herein, and

Morgan Lewis shall be precluded from appearing or being heard in any matter in this case unless and until Morgan Lewis discloses (1) the names of the creditors in the Morgan Lewis Noteholder Group, (2) the dollar amount of aggregate holdings in the Notes held by creditors in the Morgan Lewis Noteholder Group, and (3) the quantity and nature of the other economic interests, if any, held by creditors in the Morgan Lewis Noteholder Group in the OAS Entities.  Such information shall be current as of the date hereof.

2.      Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon entry; (b) Alden and Aurelius are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) Alden and Aurelius are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

3.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order.

Dated: _____, 2015
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE