

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

ALLAN S. BRILLIANT

allan.brilliant @dechert.com
+1 212 698 3600 Direct
+1 212 698 0612 Fax

May 6, 2015

**VIA EMAIL AND ECF**

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 723
New York, New York 10004-1408

Re: <u>In re OAS S.A., et al., Case No. 15-10937 (SMB) – May 7, 2015 Discovery Conference</u>

Dear Judge Bernstein:

We are counsel to Aurelius Capital Management, LP on behalf of entities it manages (collectively, "<u>Aurelius</u>") and Alden Global Capital LLC on behalf of entities it manages (collectively, "<u>Alden</u>"), as holders or managers of entities that hold beneficial interests in certain notes (the "<u>Notes</u>"), in connection with the above-captioned Chapter 15 proceedings (the "<u>Chapter 15 Cases</u>"). We write pursuant to Local Rule 7007-1 in response to the letter dated May 4, 2015 (the "<u>May 4 Letter</u>") to the Court from Quinn Emanuel Urquhart & Sullivan LLP ("<u>Quinn Emanuel</u>"), purportedly as new litigation counsel to Renato Fermiano Tavares (the Debtors' "<u>Purported Foreign Representative</u>").[1]

Having come to the United States and sought Chapter 15 recognition, a sweeping injunction, and other relief at the outset of this case, the Debtors now seek to backtrack to avoid scrutiny and refuse to provide the discovery to which Alden and Aurelius are entitled.[2] The Court should not tolerate such gamesmanship.

---

[1] The Purported Foreign Representative is the OAS in-house lawyer appointed by the debtors herein (the "<u>Debtors</u>") as purported foreign representative of the Brazilian bankruptcy proceedings (the "<u>Brazilian Proceedings</u>"). OAS Finance Limited has been under the control of joint provisional liquidators (the "<u>JPLs</u>") appointed by the Eastern Caribbean Supreme Court in the British Virgin Islands ("<u>BVI</u>") since April 16, 2015. The Court has noted that the JPLs could now "withdraw the proceeding as to that [BVI] entity if they think it's appropriate." Tr. H'rg. April 17, 2015 at 65-66. Only the JPLs may act as foreign representative for OAS Finance, and neither the Purported Foreign Representative nor the directors of OAS Finance Limited had any authority to hire Quinn Emanuel as counsel in connection with these Chapter 15 Cases.

[2] On day one of the Chapter 15 Cases, the Debtors—through their motion for a provisional imposition of the automatic stay [Docket No. 7] (the "<u>Provisional Relief Motion</u>") and verified petition for recognition of the Brazilian bankruptcy proceedings [Docket No. 3] (the "<u>Verified Petition</u>")—requested various forms of relief from this Court, including discretionary and equitable relief pursuant to sections 1519, 1520, and 1521 of the Bankruptcy Code. The Provisional Relief Motion and Verified Petition included selected factual allegations regarding the events leading up to the Debtors'

US Austin Boston Charlotte Hartford Los Angeles New York Orange County Philadelphia Princeton San Francisco Silicon Valley
Washington DC EUROPE Brussels Dublin Frankfurt London Luxembourg Moscow Munich Paris ASIA Beijing Hong Kong



All of the discovery sought by Alden and Aurelius is directly relevant to recognition and the Debtors' other requests for relief currently pending before the Court. Contrary to the Debtors' assertions, the possibility that the discovery herein could be relevant in connection with other proceedings does not affect the relevance, and therefore the discoverability, of the same information in these proceedings. Bifurcating discovery in the manner suggested by the Debtors would be inefficient for the parties and the Court and manifestly unfair to Alden and Aurelius who would be required to duplicate efforts including retaking depositions following additional document discovery. Indeed, the Debtors' refusal to provide discovery here evinces a plan to avoid disclosure of the details of transfers made on the eve of bankruptcy—no doubt done with the expectation that they would never be vetted in a Brazilian proceeding where discovery is not permitted and there is no effective means to avoid fraudulent conveyances. Moreover, as the Court is aware, the top five executives of the Debtors were arrested and placed under house arrest prior to the filing of these cases. If these companies were in Chapter 11, a Chapter 11 Trustee would surely be appointed to administer them. Given that there were a number of highly suspicious transfers that took place in the months prior to the filing, there is little question that discovery of these transactions is relevant to the relief sought by the Debtors from this Court.

Moreover, pursuant to the schedule originally set by the Court, the Debtors were required to prove up on May 1st their case for the equitable relief of a preliminary injunction, with a subsequent hearing on May 19th for the relief requested in the Verified Petition. Thus, having obtained a TRO, Debtors cannot shirk their obligation to proceed on the application for a preliminary injunction. The mere fact that the preliminary injunction and recognition issues are currently scheduled for the same hearing on May 19th, cannot be deemed to relieve the Debtors of their discovery obligations. As this Court observed, there certainly is no assurance that the hearing will proceed on May 19th, or that a final determination will be made on that day.

It is a fundamental principle of injunctive relief that a party who obtains a TRO "must proceed with the motion [for preliminary injunction at the scheduled hearing]; if the party does not, the court must dissolve the order." Fed. R. Civ. P. 65(b)(3).[3] The May 4 Letter suggests that the Debtors do not intend to pursue a preliminary injunction but nevertheless maintain that the TRO should remain in place as "an appropriate bridge" to the Recognition and 1521 Relief Hearing. May 4 Letter at 3. The Debtors should not be permitted to (i) seek and obtain a TRO with a scheduled preliminary injunction hearing that would obligate them to produce discovery, (ii) evade those discovery obligations on the theory that a preliminary injunction may no longer be necessary as of the date of the preliminary injunction hearing, and (iii) accept the benefits of the TRO until expiration with no intent to obtain a preliminary injunction. This position defies fairness and due process, and the Court should not countenance such a strategy. If the Debtors continue to refuse to produce discovery relevant to their motion for a preliminary injunction, the Court should immediately enter an order dissolving the TRO.

---

bankruptcy proceedings. The Debtors also submitted several declarations (the "Declarations") and documentary exhibits. Finally, the Debtors requested that the Court set a hearing on all of the relief sought in the Verified Petition for May 19, 2015 (the "Recognition and 1521 Relief Hearing"), which the Court granted by order [Docket No. 24] (the "Scheduling Order") entered on April 17, 2015.

[3]  Civil Rule 65 is made applicable to adversary proceedings through Bankruptcy Rule 7065 (entitled "Injunctions"). Although Bankruptcy Rule 7065 does not normally apply to contested matters pursuant to Bankruptcy Rule 9014, Rule 7065 clearly sets out the "procedures … applicable to an injunction" that must be applied pursuant to Section 1519(e).



Discovery Relevant to Recognition

Recognition requires a fact-intensive inquiry. *See, e.g., In re Ashapura Menachem Ltd.*, 480 B.R. 129, 135 (S.D.N.Y. 2010) ("Recognition [under section 1517] is *not a rubber stamp exercise*, and any such presumption is rebuttable upon the Court's examination of any and all relevant facts.") (quotation and citation omitted); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008) (denying summary judgment on COMI determination). As one court ruled in denying a motion to quash discovery in another chapter 15 case, the right to due process "includes the right to an adversary system *and discovery*," and bankruptcy courts therefore have "a right, and really *an obligation*, to allow discovery in contested issues it has before it." *In re Elpida Memory, Inc.*, No. 12-10947 (Bankr. D. Del. 2012) (Hr'g Tr. at 40:1-2, 39:1-2, [Docket No. 122] Sept. 6, 2012 (emphasis added)).

As the Debtors recognize in the May 4 Letter, whether the Debtors have their "center of main interests" ("COMI") in Brazil, and whether the foreign representative has been "authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding," will be at issue at the Recognition and 1521 Relief Hearing. All of Alden and Aurelius's discovery requests concerning the nature of the Brazilian Proceedings, the COMI, and the circumstances of the Purported Foreign Representative's appointment are thus relevant and appropriate.

The discovery requests also are directly relevant to the other recognition requirements—which the Debtors conveniently ignore—including whether recognition of the Brazilian proceeding would be manifestly contrary to the public policy of the United States (*see* 11 U.S.C. § 1517 (subjecting recognition to the public policy exception of section 1506)) and to whether the creditors can be sufficiently protected in these proceedings under section 1522(b). The Debtors are urging each United States court to defer to the Brazilian proceedings, but those proceedings may fail to withstand basic due process scrutiny as there will be no effective means there to avoid fraudulent conveyances, no discovery, and no evidentiary hearings. Indeed, we understand from Brazilian counsel that the Brazilian Court has already determined, without a meaningful opportunity for creditor objection, that it will treat the Debtors as a single enterprise for all purposes. *See also Report of the Joint Provisional Liquidators* in the BVI liquidation proceedings (April 30, 2015) (attached hereto as Exhibit A) (the "JPL Report") at ¶ 7. Accordingly, the Brazilian proceeding appears not to satisfy even the most basic due process requirements and would be in violation of public policy. Alden and Aurelius are entitled to depose the Debtors' Brazilian law expert and to review the supporting documents in connection with these serious issues.

Further, the OAS enterprise was, a mere six months ago, controlled by executives involved in well-documented financial criminal activity and, even after those executives were arrested, the Debtors engaged in conduct apparently designed to disadvantage Noteholders. The Purported Foreign Representative, an in-house lawyer, was an employee of the OAS enterprise at all relevant times, and was appointed as foreign representative presumably by some of the same board members who approved the pre-bankruptcy transfers. Under these circumstances, the appointment by such board members is inappropriate and does not satisfy the requirements for recognition. If the Purported Foreign Representative was, in fact, involved in such activities, his appointment would violate U.S. public policy. The discovery sought with respect to the



fraudulent transfers and corporate merger, the criminal activities, the Notes, the payment defaults, and the insolvency negotiations are all directly relevant to these inquiries.

The Debtors ask the Court to accept at face value the various factual allegations in the Verified Petition and to admit the Declarations supporting those allegations into evidence at the Recognition and 1521 Relief Hearing. Those submissions include allegations regarding the Debtors' businesses, corporate structure, capital structure, and events leading to the Debtors' bankruptcy cases. The Debtors now object to Alden and Aurelius taking any discovery on these issues—which they themselves deemed relevant to the petition—to test their veracity and to put before the Court a fuller and more accurate picture of the events leading up to the Debtors' Chapter 15 filing. Given that the Debtors have opened the door on these issues, Alden and Aurelius must be afforded discovery to test the Debtors' allegations.

<ins>Discovery Relevant to Additional Discretionary Relief</ins>

The Verified Petition contains further requests for relief beyond recognition of the Brazilian Proceedings and the Purported Foreign Representative. Through the Verified Petition, the Debtors ask the Court to grant discretionary relief pursuant to section 1521 (the "1521 Relief"), including entrusting the administration, realization and distribution of any and all of the Debtors' assets within the territorial jurisdiction of the United States to the Purported Foreign Representative pursuant to section 1521(a)(5).

Whether to grant the Debtors the 1521 Relief—particularly to entrust U.S. assets to the Purported Foreign Representative—necessarily requires consideration whether the Debtors are likely to abuse that relief and whether creditors' interests are being protected as required by section 1522. The Court should not exercise its discretion to entrust assets to the appointed representative of an enterprise that is prone to transferring assets out of creditor reach. Similarly, the discretionary relief authorized, but not required, by section 1520 would be unwarranted. For the same reasons discussed below regarding the Debtors' unclean hands and lack of entitlement to equitable relief, Alden and Aurelius are entitled to related discovery. These concerns are echoed by the JPLs who state in their Report that efforts to get the books and records of the companies have been stonewalled and that "there seems no willingness to provide [requested financial information] to us," that "OAS SA predicts virtually no recovery for Finance and Investments while offering **no explanation for why value to the tune of approximately US$2 billion has been dissipated**" and "[t]he information we do have tends towards supporting the concerns expressed in the [Affidavit of Eleanor Chan, dated April 15, 2015, submitted in the BVI proceedings, describing the debtors transfers], however the lack of information means we cannot form a definitive opinion." JPL Report at ¶¶ 31, 33, 36 (emphasis added).

If the Debtors do not want to provide discovery with respect to the 1521 Relief, the Court should require that they withdraw the request for that relief with prejudice. If the Debtors do want to pursue that relief, they should be required to proceed in one hearing as the Scheduling Order contemplates.



<u>Discovery Relevant to the TRO/PI Motion</u>

The statutory basis for the relief requested in the Provisional Relief Motion is section 1519 of the Bankruptcy Code, to which the standards, procedures, and limitations applicable to an injunction apply. 11 U.S.C. § 1519(e). The Court held a preliminary hearing on the Provisional Relief Motion on April 17, 2015, and, in accordance with section 1519(e), considered whether (i) the Debtors were likely to succeed on recognition, (ii) the Debtors would suffer imminent irreparable harm in the absence of an injunction, (iii) the balance of harm favors the Debtors, and (iv) the injunction serves the public interest. *See* Tr. H'rg. April 17, 2015 at 64:12-25. Further, the Court considered the Debtors' request for relief at the April 17, 2015 hearing to be a request for a TRO and at the conclusion of that hearing, initially scheduled a preliminary injunction hearing (the "<u>PI Hearing</u>"), which the Court described as an "evidentiary hearing," for May 1, 2015. *See id.* at 70:12-17.

In denying the Debtors' request for provisional imposition of the automatic stay, the Court found that the Debtors had not made a sufficient showing of imminent irreparable harm. *See* Tr. H'rg. April 17, 2015 at 66:14-68:14. The Court did, however, find that harm would result from the actual seizure of assets within the territorial U.S. and granted a limited TRO to prevent such seizure. *See id.* at 66:3-19.

The Court's grant of a limited TRO was necessarily based on a partial record. "[A] TRO is a provisional remedy imposed to maintain the status quo *until a full review of the facts and legal arguments is available.*" *Pro-Choice Network of W. New York v. Schenck*, 67 F.3d 377, 388-89 (2d Cir. 1995) *aff'd in part, rev'd in part on other grounds*, 519 U.S. 357, 117 S. Ct. 855, 137 L. Ed. 2d 1 (1997) (emphasis added). At the preliminary injunction hearing, objectors, in accordance with due process, must be afforded an opportunity to cross-examine the Debtors' witnesses, supplement the record with evidence to rebut Debtors' claims, and obtain a full review of the facts and legal arguments. To ensure objectors have that opportunity, Rule 26(b)(1) of the Federal Rules of Civil Procedure (the "<u>Civil Rules</u>")—made applicable in contested matters through Rules 9014 and 7026 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>")—provides that objectors "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

To meet their burden of establishing an entitlement to a preliminary injunction, the Debtors must show, *inter alia*, that the harm to the Debtors in the absence of an injunction outweighs the harm to creditors resulting from enjoining the exercise of their rights. Further, "[a] court may deny injunctive relief based on the defense of unclean hands where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue [and] to the detriment of the other party." *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293-94 (S.D.N.Y. 1996) (quotations omitted). *Thus, by requesting equitable relief, the Debtors put their conduct, credibility and trustworthiness squarely at issue.*

Here, that the Debtors may abuse the protection of any injunctive relief is not based on mere conjecture. Rather, Alden and Aurelius rely on certain verified facts, including:

    (i)      certain of the Debtors' top-level executives, were arrested in November 2014 on racketeering, corruption, money laundering, and other charges,



(ii)      after the arrests of the senior officers and as soon as imminent payment defaults became apparent, certain OAS entities engaged in intercompany transactions, including the transfer of stock worth more than $1 billion from a guarantor to a non-guarantor for no value or grossly inadequate value[4],

(iii)     the Debtors performed these major intercompany transactions in secret, failed to disclose them until weeks later, and, without notice to parties in interest, changed the newspaper in which it publishes its notices, and

(iv)     the Debtors failed to disclose the senior officers' arrests or offer any explanation of the fraudulent transfers in their filings with this Court.

*See Declaration of Eleanor Chan, Pursuant to 28 U.S.C. § 1746, in Support of Noteholders' Objection to Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 18].

As noted above, while their investigation has been frustrated by the Debtors lack of cooperation, according to the JPL Report, the JPLs' independent investigations to date have resulted in significant concerns regarding the intercompany transactions.[5]

The Court should not delay the discovery to which Alden and Aurelius are entitled. In fact, courts regularly authorize expedited discovery in connection with a request for injunctive relief where, as here, there is a substantiated concern that a party is or has engaged in fraud, or might otherwise seek to obstruct justice. *See, e.g., Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005); *Stern v. Cosby*, 246 F.R.D. 453, 457-58 (S.D.N.Y. 2007).

The discovery requests served by Alden and Aurelius that the Debtors argue exceed the scope of Chapter 15 relief are, in fact, reasonably targeted to obtaining information that could bear on the issue of the Debtors' conduct both prior to and in connection with the Debtors' bankruptcy proceedings. For example, all documents requested relating to pre-bankruptcy transactions, including the merger of OAS Investimentos SA with OAS SA are clearly relevant to whether the Debtors have engaged in inequitable conduct. The documents requested relating to the Notes, payment defaults on the Notes, intercompany claims, and negotiations regarding its insolvency are also likely to lead to information relevant to equitable relief. Finally, documents regarding allegedly criminal activities of high-ranking executives clearly relate to equitable considerations and the unclean hands analysis involved in a preliminary injunction analysis.

The Debtors cannot seek to evade their discovery obligations and prevent damaging information from coming to light, while still maintaining all the benefits of the TRO. The Debtors now argue that discovery related to their request for a preliminary injunction is unnecessary because (i) Alden and Aurelius agreed to a form of order that provides for the TRO to extend to May 19,

---

[4]    According to reports in the financial press and a presentation released by the Company on April 22, 2015, OAS is seeking, or already has obtained, financing secured by the transferred stock. The lender providing that new financing would presumably assert a claim to the stock superior to Noteholders' claims, severely compromising Noteholders' ability to recover from that asset.

[5]    See JPL Report ¶ 31 ("there seems no willingness to provide [requested financial information] to us"); ¶ 34 (the liquidators "have been frustrated in [their] efforts" to determine whether "there are undisclosed losses or other leakage that will dilute returns to creditors").



2015 and (ii) the Recognition and 1521 Relief Hearing is scheduled for the same date, at which the Court may grant recognition and automatically impose the automatic stay. This argument is flawed for several reasons.

**First**, by agreeing to extend the TRO through the date of the Recognition and 1521 Relief Hearing, Alden and Aurelius were merely responding to the Court's suggestion. In no way was that scheduling change intended to relieve the Debtors of their burden of showing entitlement to a preliminary injunction on May 19, 2015, or the obligation to produce discovery in connection with that PI Hearing which was served prior to the entry of the TRO.

**Second**, although the Debtors conflate the provisional injunction available under section 1519 with the automatic stay that is imposed upon recognition pursuant to 1520, neither the relief itself nor the requirements to obtain it are the same. Thus, the Debtors' argument that the Recognition and 1521 Relief Hearing is tantamount to a PI Hearing is overly simplistic and wrong. A TRO under section 1519 is not automatic but rather is expressly subject to federal equitable injunctive standards and procedures.

**Third**, as the Court noted at the April 17, 2015, "there is no guarantee obviously that the recognition will be resolved on May 19[th]." Tr. H'rg. April 17, 2015 at 70:2-3. Thus even if the Recognition and 1521 Relief Hearing commences on May 19, 2015, that hearing may extend beyond that date and/or the Court may need to take contested issues under advisement. In that instance, the TRO would expire by its terms absent the Debtors' proof of entitlement to a preliminary injunction. That proof must be subject to rebuttal and cross-examination which requires discovery.[6]

<u>The Debtors' Discovery Responses</u>

The Debtors' recent discovery objections illustrate the point that they have no intention of cooperating in a fair process. The Debtors have made no attempt to confer and negotiate with respect to the individual document requests. On May 5, 2015, the Debtors served the Foreign Representative's Responses and Objections to Noteholders' First Set of Document Requests (the "Debtor Objections") (attached hereto as <u>Exhibit B</u>), which state that all responses are subject to the Debtors' General Objections. Those General Objections make clear that the Debtors do not intend to provide any meaningful discovery. For example, the Debtors state that they object "to the Requests as improper, unreasonably duplicative and/or cumulative, overly broad, unduly burdensome, vague, ambiguous, and seeking information that is not relevant to the Petition or any appropriate objection of the Noteholders." Pursuant to this objection, the Debtors will apparently produce only documents that fit their own definition of relevance. The Debtors have asserted that no documents other than the information submitted with the Verified Petition is relevant to an "appropriate objection of the Noteholders," and thus they will no doubt take a very narrow view of what must be produced. To take just one example, the Debtors refuse to produce any

---

[6]     If the PI Hearing had gone forward on May 1, 2015 as originally scheduled, the Debtors would have had the burden to satisfy the Civil Rule 65 standard. Aurelius and Alden would have had the right to reasonable discovery in connection with that hearing. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005). The adjournment of the PI Hearing to be coincident with the Recognition and 1521 Relief Hearing cannot reduce the scope of discovery.



documents concerning the appointment of the foreign representative other than the authorization itself. Debtor Objections at 17, Para. 28. Further, the Debtors state that they will not prepare a privilege log, a disturbing position particularly since the foreign representative is an attorney.

*     *     *

Alden and Aurelius recognize that time is growing short before May 19, 2015, and that a properly-conducted discovery process would likely extend beyond that date. The Debtors were well aware that there would likely be discovery and that the May 19 hearing on recognition would have to be continued if they did not timely fulfill their discovery obligations. Although Alden and Aurelius served their discovery almost two weeks ago, the Debtors have yet to produce any documents. The discovery requested by Alden and Aurelius is relevant, warranted and is necessary before Alden and Aurelius can file an objection and properly prepare their case for the hearing.

Respectfully Submitted,

Allan S. Brilliant

cc:     Susheel Kirpalani, Esq.
        Michael Carlinksy, Esq.
        Benjamin Finestone, Esq.
        John K. Cunningham, Esq.
        Gregory M. Starner, Esq.
        Edward A. Friedman, Esq.
        Lawrence S. Robbins, Esq.
        Andrew Rosenblatt, Esq.
        Ken Coleman, Esq.

**Exhibit A**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION



CLAIM NO: BVIHC (COM) 0034 OF 2105

CLAIM NO: BVIHC (COM) 0035 OF 2015



IN THE MATTER OF OAS FINANCE LIMITED

AND IN THE MATTER OF OAS INVESTMENTS LIMITED

---

### REPORT OF THE JOINT PROVISIONAL LIQUIDATORS

---

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION


CLAIM NO: BVIHC (COM) 0035 OF 2105

IN THE MATTER OF OAS FINANCE LIMITED AND THE MATTER OF THE INSOLVENCY ACT 2003

BETWEEN:                    1. AURELIUS INVESTMENT, LLC

                           2. HUXLEY CAPITAL CORPORATION

                         3. ALDEN GLOBAL ADFEO BPI FUND, LTD

                       4. ALDEN GLOBAL OPPORTUNITIES MASTER FUND, L.P.

                     5. ALDEN GLOBAL VALUE RECOVERY MASTER FUND, L.P.

                           6. TURNPIKE LIMITED

                                                        Applicants

                    and


                    OAS FINANCE LIMITED

                                                        Respondent

---

## REPORT OF THE JOINT PROVISIONAL LIQUIDATORS

1.  By Order of this Honourable Court Marcus Wide and Mark McDonald were appointed Joint Provisional Liquidators of OAS Finance Limited ("Finance") on 16 April 2015.  A copy of the Order is attached as Appendix A.

2.  Since then we have sought to comply with section 4 of the Order parts (a) to (l) principally directed at protecting the assets of Finance to the exclusion of the powers of the Directors, pending the return of the petition for winding up on 26 May 2015.

3.  A further Order of this Honourable Court was made appointing Marcus Wide and Mark McDonald, Joint Provisional Liquidators of OAS Investments Limited ("Investments"), immediately following the hearing with respect to Finance. A copy of the Order is attached as Appendix B.  The affairs of the two companies are inextricably intertwined as Investments acted as the conduit into the OAS group of companies for the funds raised in Finance. This report covers both Provisional Liquidations. It is our intention to also file a copy of this report in the Investment proceeding.

4.  By paragraph 7 of the each Order Finance and Investments had sanction to apply to vary or discharge the relevant Order appointing the Joint Provisional Liquidators on 48 hours notice, and such applications have been made. This report is to advise the Court of the steps taken by the Joint Provisional Liquidators and any findings that may be relevant to the current position of Finance.

5.  Our initial information with respect to the standing of Finance was taken from the affidavit of Eleanor Chan, Managing Director of Aurelius Investments, LLC one of the petitioners. We subsequently made further enquiries as set out in our report below.

BRAZILIAN PROCEEDINGS

6.  From the Chan affidavit we were alerted to the fact that Finance and Investments had been included as a part of a consolidated application for reorganisation under Brazilian insolvency law as part of the OAS group of companies based in Brazil.  As a result we retained Mr. Henrique Forssell of the firm KKDF, a specialist insolvency and asset recovery firm of lawyers in Sao Paulo, Brazil, to review the Court record, determine the position of Finance and Investments in the restructuring and make recommendations as to actions required in the short term to protect the interests and assets of Finance and Investments

7.  Mr.Forssell has reported to us as follows;

a.  As asserted in the Chan affidavit, he confirmed there has been a merger of OAS SA, the parent company of the Group and OAS Investimentos SA, and that his review of the record did not reveal any of the statutory documentation required to legally achieve a merger.

b.  That both Finance and Investments were listed as part of the consolidated entities and that the claims of the individual note holders were being treated in the restructuring filing as claims in the consolidated restructuring process, which simply amalgamated the assets and liabilities of nine companies of the OAS Group, with the result that the rights of Finance and Investments as creditors that might have accrued against individual companies and assets within them, were now simply part of a single pot, regardless of prior rights.

c.  That the original Order granted on the filing of application for restructuring which called for the filing of *"the balance sheets, statement of accumulated accounts, statement of results since the last fiscal year and managerial report on cash flow and its projections for the companies"* including Finance and Investments had not been complied with, and that OAS SA, the parent company of the OAS Group, had simply indicated that this information was included in the consolidated accounts.  Thus there is no separate reporting in the restructuring filing that allows us to assess the true picture of the companies over which we are appointed as Joint Provisional Liquidators.

d.  He also recommended that given the urgent need to protect the position of Finance and Investments as independent parties to the restructuring, an application be made to advise the Brazilian Court that the Court of the domestic jurisdiction of the two companies had appointed Provisional Liquidators, and requesting that the Brazilian Court respect this appointment understanding that neither company has employees to be protected and need not be restructured themselves , and  allow the Joint Provisional Liquidators to represent Finance and Investments in the restructuring as arms-length creditors, given that neither company requires to be restructured.

8.  We have also been advised by Mr. Forssell that Article 47 of the Brazilian Bankruptcy code which provides the criteria under which entities can be restructured, cannot apply to the BVI entities, and they are improperly included.

9.  We have therefore instructed him to  make the aforementioned application in order to protect the interests of Finance and Investments in the restructuring and are advised that this filing was done in the afternoon of Tuesday 28 April, 2015. Mr. Forssell also advised  that Judge Daniel has been made aware of the filing and its purpose, and particularly that it is not intended in any way to interfere with the

ability of OAS Group to bring forward a plan for the restructuring of the operating entities.

10. Mr. Forsell also adviseD that there are a number of procedural matters under which there are deadline which could be detrimental to the position of Finance and Investments if missed;  Given our recent entry to the process we may have some leeway but the rules provide:

   i.   Five days for filing motions for clarification on any matter in the current Court filings from the date of issue. Specifically the BVI issued notes are listed  as intercompany debt with no direction as to how these will be treated in the context of the reorganisation.
   ii.  There is a 10 day notice for appeals of the initial interlocutory  Order under which the BVI entities are brought in as parties to the reorganisation.
   iii. There is a 15 day deadline for challenging the list of creditors  from the date of publication in the Gazzette should Finance and Investments not be listed. While this has not yet been published it could be done at any time.


NOTICES TO DIRECTORS AND REQUESTS FOR FINANCIAL INFORMATION

11. At the outset of our appointment we obtained the registers of Directors and former Directors of Investments and Finance from the BVI registered agent for the companies and have caused them all to be served with notice of our appointment, the suspension of their powers, and requested any books and records in their possession that might explain the affairs of the companies. We are advised by Mr. Forsell that the lawyer from his firm that went to serve these notices was turned away from the OAS SA premises.

12. Subsequently Mr. Forssell was approached by a former Director who indicated he had been consulted by the other Directors and former Directors to explore our position.  He affirmed our request for books and records and in return was advised the Directors would consider our position. There has been no further response to this request.

APPLICATION UNDER CHAPTER 15 OF THE US BANKRUPTCY CODE

13. Also at the time of our appointment we were advised that there was an application due to be heard in Bankruptcy Court in New York seeking protection under Chapter 15 of the US Bankruptcy code for five companies including Finance, brought  by the Foreign Representative of OAS SA.  We retained the firm of Chadbourne and Park to attend the hearing on our behalf and advise the US Court

of our appointment. We also wrote to White and Class, acting for OAS SA, to advise them of our appointment, that we replaced the Directors and that they had no standing to proceed with the Chapter 15 application without instruction from us, and until after we had determined what is the proper course of action.  We have also asked them to provide any material in their possession that would help us assess the affairs of Finance and Investments.

14. While the Order coming out of the US Court is still not settled as there is disagreement as to what the Court directed, it is clear from the transcript of the hearing that the effect of the Order is to maintain the status quo until further hearings.  By that time we expect that our application for standing to participate in the Brazilian restructuring as an arms-length creditor will be before the Court, and if that application is granted clearly the Chapter 15 application for Finance cannot proceed in its current form.  It is not clear at this stage what position the JPL's will need to take in the US.

OTHER POTENTIAL REPRESENTATIVES OF NOTEHOLDERS

15. We have also spoken with the Trustee for the Note issued by Finance and Investments GmbH, Deutsche Bank Trust Company Americas.  They have indicated that  they do not know who all the current Noteholders are.   They further advised that they would not take any steps in the reorganisation process absent support from Noteholders.  Therefore it is unclear at this stage what steps, if any, Deutsche Bank will be taking to protect the position of the Noteholders.

16. We were advised from a review of the record that a Mr. Tim DeSieno  had been appointed the Ad Hoc representative of the Noteholders. It is not clear to what extent he acts for any of the individual Noteholders and of the extent to which he speaks for any of them. We are advised by Aurelius that he does not speak for them. Further investigation disclosed that he is a lawyer with the firm of Morgan Lewis, and his fees are being paid by OAS SA. It also appears that he has retained the firm of  FTI Canada, to review the affairs of OAS SA and prepare a report for presentation to Noteholders.

17. We received a copy of this report dated 27 April 2015.  A copy is attached to this report as Appendix C. This report is subject to a variety of limitations including the heading page which states: *"Note that this Report presents an abridged version of FTI's Full Diligence Report, which was based on confidential, non-public information on the Company's Business Plan. The Condensed Report includes information the Company is publicly disclosing to creditors and, as such, does not represent the entire scope of work performed by FTI."*

18. Either way this is clearly a prospective look at the prospects of OAS SA which appears to assume its restructuring plan is successful. It does not in any way address the concerns with respect to the restructuring process itself nor any of the issues raised in the Chan affidavit which underpinned the application for Provisional Liquidators.

19. We have confirmed that on Monday 27 April, 2015 that Mr. Desieno, together with FTI have had a meeting with some Noteholders to deliver this report, and despite knowing of our appointment and standing did not advise us this was taking place nor invite us to participate. We do not know what was accomplished at this meeting. We understand that further meetings with the remaining Noteholders have been scheduled.

REVIEW OF OTHER PUBLICLY AVAILABLE INFORMATION

20. Given the lack of financial information with respect to Finance and Investments coming from OAS Group we looked to other publicly available information that might assist us. In that regard we were provided with a copy of a "Presentation to OAS Creditors" dated simply April 2015. This is a detailed over view of the issues facing OAS SA, a brief explanation of the judicial process and timelines, discussion of the consequences of liquidation, and a next steps section. This report is attached as Appendix D. Again this does not deal with the issues of the forced amalgamation, the consolidation of select companies in the group nor the losses incurred by the Group which based on the Chapter 15 filings are at least R$6billion as set out below.

21. Based on the Chapter 15 filings signed completed and filed by the OAS SA group, Finance and OAS Investments GmbH ("Investments GmbH") issued US dollar denominated notes totalling US$1.78 billion. Investments GmbH is an Austrian incorporated company that also acted as a financing vehicle for the OAS Group. The proceeds from these note issues flowed to Investments for onward lending to the OAS Group.

22. Thus Finance and Investments GmbH are both creditors of Investments for approximately R$3billion each, and in turn Investments is a creditor of OAS Group for the combined amount of approximately R$6billion. OAS S.A. and Constructora OAS S.A. have guaranteed all of the notes.

23. This is confirmed in a report issued by OAS Group to creditors dated April 2015, which provides some background information and an overview of the structure

going forward,  does detail the group liabilities in summary form on page 82, which shows Finance and Investments GmbH as creditors of R$3.025 billion and R$2.911 billion respectively, as part of the  total obligations of the entities being restructured in the total  of R$8.103 billion.  Given these amounts flowed through Investments the total amount of the debt represented by Investments in the restructuring will be in excess of R$6 billion on the basis of the information presented in this report.  On this basis Investments represents approximately 75% of the total debt of the OAS restructuring.  The amounts owing to Finance and Investments GmbH appear consistent with our current understanding of the amounts owing to these companies from Investments.

24.  We also note from another schedule of creditors of Investments filed in the reorganisation proceedings (attached as Appendix E) that Finance and Investments GmbH are recorded as creditors of those entities in the amount of US$909 million and US$943 million respectively.  Even on the basis of this information the two companies in provisional liquidation represent a very significant part of the total debt owing by the OAS Group and are presently submerged in the consolidated proceeding in Brazil without the right of independent investigation and analysis of the allegations set out in the Chan affidavit.

25.  We have determined the following with respect to the financial position of Investments is as follows:

    i.  The proceeds of funds raised from the issue of notes in Finance and Investments GmbH totalling approximately US$1.78billion were received by Investments for onward lending.
    ii.  The list of creditors filed in the Brazilian reorganisation proceedings records that creditors of Investments are owed in excess of US$2 billion or approximately R$6billion.  This amount includes the claims from Finance and Investments GmbH.
    iii.  Other creditor lists filed in the reorganisation proceedings  (Appendix F) show that OAS S.A. and Constructora OAS owe Investments US$357 million and US$60 million respectively being approximately R$1.25billion in total. This does not fully account for the advances from Investments and is contradictory to the other information also provided by OAS which, as discussed above, discloses debts of approximately  US$2billion or R$6 billion. There is clearly a "mis-match" between these two separate disclosures by OAS Group for which we presently have no explanation.
    iv.  Also based on our analysis of the estimated asset values provided by OAS group its Chapter 15 filings and further discussed below, Investments is massively

insolvent and likely to receive less than 0.01% of the funds invested in OAS Group.

26. We have no information about the what result the plan or reorganisation will aim to achieve and in turn what payment the creditors of the BVI entities could expect to receive if the BVI companies participated in the reorganisation.  None of the reports or information we have reviewed provide any clarity on this point.

27.   We note from filings made in the US Chapter 15 proceedings that whilst Finance's liabilities are stated to be between US$500,000,001 and US$1 billion (Appendix G), the higher end being consistent with the table of liabilities on page 82 of the OAS SA report,   its assets are only stated as being between US$100,001 and US$500,000.  This indicates that Finance is insolvent to the extent of US$1 billion and that there will be virtually no funds flowing down to its Noteholders if that is correct.

28. The same filing in the Chapter 15 by Investments GmbH  (Appendix H) lists the financial position also as having debts due to it of U$500million to US$1billion and assets with a value between US$500,000 and US$1million.

29. We have no further information as to how these estimated values have been arrived at but they are the determination of the OAS Group.  We have not seen a corresponding estimate for the value of the Investments assets but given that the sole assets of Finance and Investments GmbH are their claims against Investments this must mean that Investments is also massively insolvent on the basis of these filings by the OAS Group.


SUMMARY

30. In summary the Provisional Liquidation has been in place for only eleven days at this point, but there has been considerable activity on the part of all the participants to moving this restructuring forwards and around and without apparent regard to the Provisional Liquidation and the role of the Joint Provisional Liquidators.

31. We have been frustrated by the lack of financial detail available with respect to Finance and Investments, and there seems no willingness to provide this to us.

32. The information filed by OAS as reviewed by our Brazilian lawyers and the publicly available documentation is not helpful in assessing the position of Finance and Investments before and after the effective consolidation to determine if they are being treated consistently and fairly, nor does it answer other concerns expressed in the Chan affidavit.

33. The information we do have tends towards supporting the concerns expressed in the Chan affidavit, however the lack of information means we cannot form a definitive opinion.

34. We do not know what the assets are of Finance and Investments, but the rough accounting for monies flowing through them and the statements of the funds owing to them by the consolidated restructuring entities suggests that there may be investments in other parts of the group that we should be aware of and taking steps to protect, or there are undisclosed losses or other leakage that will dilute returns to creditors, including Finance and Investments. Again we have been frustrated in our efforts to make a proper determination.

35. In the alternative as demonstrated by OAS's own declarations filings in the US Chapter 15 proceeding, Finance and Investments GmbH are massively insolvent, which can only be true if Investments itself is also massively insolvent, with returns forecast at less than 0.01%. In this case there has been a massive dissipation in value of the underlying assets and operating entities to at least the extent of the Investments lending of funds raised in Finance and Investments GmbH Based on the review of the little historical information available, this has not been previously reported via the annual financial statements of OAS Group.

36. Put another way OAS SA predicts virtually no recovery for Finance and Investments while offering no explanation for why value to the tune of approximately US$2 billion has been dissipated.

37. There are grounds based on the opinion of our Brazilian counsel to believe that the BVI companies were improperly included in the restructuring outside the permissions in the Brazilian Bankruptcy Code, likely as result of lack of representation at the time.

38. Our Brazilian counsel advise there are a number of procedural deadlines that will or can occur in the Brazilian proceeding that require constant monitoring and potentially action on an urgent basis if the rights of the Investments and Finance as creditors are to be preserved.

39. In view of this we are satisfied that our instruction to our Brazilian lawyers to make application for standing of Finance and Investments in the restructuring is paramount in protecting their interests.

respectfully submitted

Marcus Wide
Joint Provisional Liquidator

Mark McDonald
Joint Provisional Liquidator

**Exhibit B**

QUINN EMANUEL URQUHART
 & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
Susheel Kirpalani
Benjamin I. Finestone
Michael B. Carlinsky

*Co-Counsel for Renato Fermiano Tavares*
*as Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | )  Case No. 15-10937 (SMB) |
| OAS S.A., *et al.,*[1] | )  (Jointly Administered) |
| | ) |
| Debtors in Foreign Proceedings. | )  Chapter 15 |
| | ) |

### FOREIGN REPRESENTATIVE'S RESPONSES AND OBJECTIONS TO NOTEHOLDERS' FIRST SET OF DOCUMENT REQUESTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable herein by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Renato Fermiano Tavares, in his capacity as foreign representative (the "Foreign Representative") of OAS S.A., Construtora OAS S.A.,

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification or corporate registry number, are:  OAS S.A. (01-05), Construtora OAS S.A. (01-08), OAS Investments GmbH (4557), and OAS Finance Limited (6299).

06516.00001/6745921.1

OAS Investments GmbH, and OAS Finance Limited (collectively, the "Debtors"),[2] by and through his undersigned attorneys, hereby submits his responses and objections to the First Set of Document Requests (the "Requests") dated April 24, 2015 directed to the Foreign Representative in the above-captioned matter by Aurelius Capital Management, LP on behalf of entities it manages, including Aurelius Investment, LLC and Huxley Capital Corporation and Alden Global Capital LLC on behalf of entities it manages, including Alden Global Adfero BPI Fund, Ltd., Alden Global Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P., and Turnpike Limited (collectively, the "Noteholders") as follows:

## RESERVATION OF RIGHTS

This response is made solely for purposes of the above-referenced matter. The Foreign Representative reserves his right to amend, supplement or withdraw his responses and objections to the Requests.

The Foreign Representative responds to the Requests pursuant to, subject to, and without waiving the General Objections, which are hereby incorporated into each of the individual responses and objections, and therefore need not be specifically repeated in such response or objection. No specific response or objection to any individual Request is a waiver of any of the General Objections, nor does any specific objection to a particular Request in any way limit the application of the General Objections to that particular Request.

The Foreign Representative also submits these responses and objections subject to, without waiving, and expressly preserving: (1) any and all objections as to the propriety of the Requests or the competence, relevance, materiality, privilege, work product and admissibility

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Requests.

into evidence of any response or document produced in response to the Requests; (2) the right to object to other discovery procedures involving or relating to the subject matters of the Requests, or responses or documents produced in response to the Requests; and (3) the right to review, revise, amend, correct, supplement, add to, or clarify any of the responses or objections herein at any time.

The inadvertent production of any privileged or otherwise exempted or protected documents or information shall not be deemed to be a waiver of any applicable privilege, immunity, or other protection from discovery with respect to such document or information, or the subject matter thereof.  The Foreign Representative hereby claims such privilege, exemption, and protection insofar as implicated in the Requests, and excludes privileged and otherwise exempted or protected information from his responses to the Requests.  Moreover, in the event that the Foreign Representative claims that there was an inadvertent production of information in response to the Requests, the Noteholders must promptly return any such inadvertently produced information to the Foreign Representative and may not use the information for any purpose.

Neither the Foreign Representative's objection to any Request nor his response to produce any category of documents or information called for by a Request shall be interpreted to mean (nor does it mean) that any such category of documents or information in fact exists, and any such production will only consist of information that exists, is non-privileged, is in the exclusive possession, custody and control of the Foreign Representative, and can be found based on a reasonable, good faith search.  This response is based on documents and information in the possession, custody and control of the Foreign Representative as of the date hereof.

06516.00001/6745921.1

3

## GENERAL OBJECTIONS

The Foreign Representative objects to each of the Requests for the reasons set forth below and incorporates each of these objections into each individual response to the Requests below.

1.      The Foreign Representative objects to any Request to the extent that it calls for the Foreign Representative to produce documents or disclose information that the Foreign Representative has already provided to the Noteholders, that is already in the possession, custody or control of the Noteholders and/or may be more readily available through public sources, sources that are more readily available to the Noteholders than the Foreign Representative, or sources that are more convenient, less burdensome or less expensive to the Foreign Representative.  Insofar as the Requests calls for the Foreign Representative to produce information or documents in the possession of the Noteholders or readily available through other sources, the Requests impose undue burden and expense on the Foreign Representative.

2.      The Foreign Representative objects to the Requests as improper, unreasonably duplicative and/or cumulative, overly broad, unduly burdensome, vague, ambiguous, and seeking information that is not relevant to the Petition or any appropriate objection of the Noteholders. The Foreign Representative further objects to the extent the Requests would require the Foreign Representative to speculate as to the nature and/or scope of the information sought thereby and insofar as they fail to provide information sufficient to allow the Foreign Representative to determine if it has responsive information or documents.

3.      The Foreign Representative objects to each Request for "All Documents" as overly broad and unduly burdensome.

4.      The Foreign Representative objects to the Requests to the extent that they call for the productions of documents from any non-Debtor company.

5.      The Foreign Representative objects to the Requests to the extent that they call for the production of documents outside the scope of the matters at issue in the chapter 15 proceeding.

6.      The Foreign Representative objects to the Requests to the extent that they purport to require the Foreign Representative to disclose information outside of his possession, custody, or control.  The Foreign Representative will not produce any documents or information in the possession, custody or control of any third party, including any agent, outside attorney or affiliate of the Foreign Representative.   Specifically, the Foreign Representative objects to Instruction A of the Requests, to the extent that it purports to impose an obligation to produce documents in the possession of third parties including attorneys and agents.

7.      The Foreign Representative objects to the Requests to the extent they require the Foreign Representative to divulge information subject to the attorney-client privilege or the work product doctrine, prepared in anticipation of litigation or for trial, or otherwise subject to any privilege, immunity or other protection against disclosure.  Nothing contained in these objections or responses is intended as, or shall in any way be deemed, a waiver of any attorney-client, work product or any other applicable privilege or doctrine.

8.      By responding and objecting to the Requests, the Foreign Representative does not waive or intend to waive any objections that it may have regarding the use of any document or of any information contained in any document.

06516.00001/6745921.1

5

9.      The Foreign Representative objects to the Requests to the extent that they call for the production of information or documents that relate to or contain proprietary or confidential, personal, private, or sensitive business information, trade secrets, competitively sensitive information, or private consumer financial information belonging to the Foreign Representative and/or his clients, or to the extent that the Foreign Representative is prohibited from disclosing such documents or information pursuant to contract or applicable law.

10.     The Foreign Representative objects to each Definition, Instruction and Request to the extent that it seeks to impose any obligations or responsibilities beyond those mandated by the Federal Rules, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of New York, or any applicable court order.

11.     The Foreign Representative objects to the definitions of "OAS," "Debtors," "you" and "your" in Definition N, which include "their Agents, including the Foreign Representative, their Affiliates and each of their Agents."   Such definitions are overly broad and unduly burdensome.   The Foreign Representative will interpret all of the foregoing to refer to the Debtors only.

12.     The Foreign Representative objects to Instruction F of the Requests, which directs the Foreign Representative to prepare a privilege log.   The Foreign Representative will not prepare the log described in Instruction F.

13.     The Foreign Representative objects to Instruction G of the Requests, which directs the Foreign Representative to prepare a written statement identifying any lost or destroyed documents on the grounds that such Request is unduly burdensome and imposes obligations beyond those required under applicable rules.

14.     The Foreign Representative objects to Instruction I of the Requests to the extent the issuer of the Requests maintains that the Foreign Representative is under a continuing obligation to respond to the Requests.  The Foreign Representative's response to the Requests does not impose any continuing obligation to provide further responses.

15.     The Foreign Representative objects to Instructions P and O of the Requests, to the extent they indicate a time period starting beyond six months prior to April 15, 2015 (the "Petition Date"), *i.e.* October 15, 2014 to the present, as being overly broad and unduly burdensome.

16.     Any production that may be made by the Foreign Representative in response to the Requests is made subject to receipt of reimbursement for costs associated with searching for, copying, and producing the information and documents requested.

**SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS**

Subject to and without waiving the foregoing General Objections, which are hereby expressly incorporated into each of the following specific objections and responses as if fully set forth therein, the Foreign Representative responds to the Requests as follows:

**REQUEST NO. 1:**

Documents sufficient to show any and all locations of the registered offices of each of the Debtors.

**RESPONSE TO REQUEST 1:**  <u>See</u> General Objections.  The Foreign Representative objects to this Request as overly broad and unduly burdensome to the extent it calls for the production of all relevant documents created or modified since the beginning of time.  Subject to the General Objections and the Specific Objection, the Foreign Representative will produce documents, from October 15, 2014 (six months prior to the Petition Date) to the present, sufficient to show any

and all locations of the registered offices of each of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 2:**

Documents sufficient to show any and all locations of facilities owned, leased, or operated by any of the Debtors or any and all facilities in which any of the Debtors conduct any operations.

**RESPONSE TO REQUEST 2:**  <u>See</u> General Objections.  Subject to the General Objections, the Foreign Representative will produce documents sufficient to show any and all locations of facilities owned, leased, or operated by any of the Debtors or any and all facilities in which any of the Debtors conduct any operations, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 3:**

Documents sufficient to show any and all locations of all board of directors' meetings for each of the Debtors.

**RESPONSE TO REQUEST 3:**  <u>See</u> General Objections.  Subject to the General Objections, the Foreign Representative will produce documents sufficient to show sufficient to show any and all locations of all board of directors' meetings for each of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 4:**

Documents sufficient to show the identities, and all locations of the residences and ordinary places of business, of all executive-level employees of each of the Debtors.

**RESPONSE TO REQUEST 4:**  <u>See</u> General Objections.  Subject to the General Objections, the Foreign Representative will produce documents sufficient to show the identities, and all

locations of the residences and ordinary places of business, of all executive-level employees of each of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 5:**

Documents sufficient to show the identities, and all locations of the residences and ordinary places of business, of all directors sitting on boards of directors, or any equivalent bodies of each of the Debtors.

**RESPONSE TO REQUEST 5:** <u>See</u> General Objections.  Subject to the General Objections, the Foreign Representative will produce documents sufficient to show the identities, and all locations of the residences and ordinary places of business, of all directors sitting on boards of directors, or any equivalent bodies of each of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 6:**

Documents sufficient to identify and describe the locations of all assets of each of the Debtors.

**RESPONSE TO REQUEST 6:**  <u>See</u> General Objections.  Subject to the General Objections, the Foreign Representative will produce documents sufficient to identify and describe the locations of all material assets of each of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 7:**

Documents sufficient to show all locations in which each Debtor pays taxes.

**RESPONSE TO REQUEST 7:** <u>See</u> General Objections.  Subject to the General Objections, the Foreign Representative will produce documents sufficient to show all locations in which each Debtor pays taxes, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 8:**

Documents sufficient to show all locations in which each Debtor files tax returns.

**RESPONSE TO REQUEST 8:**  See General Objections.  Subject to the General Objections, the

Foreign Representative will produce documents sufficient to show all locations in which each

Debtor files tax returns, to the extent that such documents can be located after a reasonable

search.

**REQUEST NO. 9:**

Documents sufficient to show the identities and locations of all creditors of each of the
Debtors.

**RESPONSE TO REQUEST 9:**  See General Objections.  Subject to the General Objections, the

Foreign Representative will produce documents sufficient to show the identities and locations of

all creditors of each of the Debtors, to the extent that such documents can be located after a

reasonable search.

**REQUEST NO. 10:**

Documents sufficient to show the identities and locations of all customers of each of the
Debtors.

**RESPONSE TO REQUEST 10:**  See General Objections.  The Foreign Representative further

objects to this Request on the grounds that it is overly broad and unduly burdensome.

**REQUEST NO. 11:**

Documents sufficient to show the identities and locations of all obligors with respect to
each of the Debtors' accounts receivables.

**RESPONSE TO REQUEST 11:**  See General Objections.  The Foreign Representative further

objects to this Request on the grounds that it is overly broad and unduly burdensome.

06516.00001/6745921.1

10

**REQUEST NO. 12:**

Documents sufficient to show the identities and locations of all suppliers of each of the Debtors.

**RESPONSE TO REQUEST 12:**  <u>See</u> General Objections.  The Petition further objects to this Request on the grounds that it is overly broad and unduly burdensome.

**REQUEST NO. 13:**

Documents sufficient to show the number, identities, citizenship and residency of all employees of the Debtors.

**RESPONSE TO REQUEST 13:**  <u>See</u> General Objections.  The Foreign Representative objects to this Request as overly broad and unduly burdensome to the extent it calls for the production of all relevant documents created or modified since the beginning of time.  Subject to the General Objections and the Specific Objection, the Foreign Representative will produce documents, from October 15, 2014 (six months prior to the Petition Date) to the present, sufficient to show the number, identities, citizenship and residency of all employees of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 14:**

Documents sufficient to show the identities, citizenship and locations of all employees of each of the Debtors who are responsible for making management and/or operating decisions.

**RESPONSE TO REQUEST 14:**  <u>See</u> General Objections.  The Foreign Representative objects to this Request as overly broad and unduly burdensome to the extent it calls for the production of all relevant documents created or modified since the beginning of time.   The Foreign Representative also objects to this Request as vague and ambiguous on the grounds that it fails to identify with sufficient particularity employees "responsible for making management and/or

06516.00001/6745921.1

11

operating decisions." The Foreign Representative further objects to this Request to the extent it

is cumulative and duplicative of Request No. 13.

**REQUEST NO. 15:**

Documents sufficient to show all jurisdictions whose law would apply to disputes of each
of the Debtors.

**RESPONSE TO REQUEST 15:** <u>See</u> General Objections. The Foreign Representative objects

to this Request as overly broad and unduly burdensome. The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.

**REQUEST NO. 16:**

Documents sufficient to show any and all jurisdictions in which each of the Debtors is
qualified to do business.

**RESPONSE TO REQUEST 16:** <u>See</u> General Objections. The Foreign Representative objects

to this Request as overly broad and unduly burdensome to the extent it calls for the production of

all relevant documents created or modified since the beginning of time. Subject to the General

Objections and the Specific Objection, the Foreign Representative will produce documents, from

October 15, 2014 (six months prior to the Petition Date) to the present, sufficient to show any

and all jurisdictions in which each of the Debtors is qualified to do business, to the extent that

such documents can be located after a reasonable search.

**REQUEST NO. 17:**

All documents concerning communications with respect to any and all negotiations and
decisions regarding functions of and payment on the Notes.

**RESPONSE TO REQUEST 17:** <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 18:**

> All documents concerning communications with respect to any and all negotiations and decisions regarding the insolvency, potential insolvency, or potential inability to meet obligations as they came due, of any member of the OAS Group.

**RESPONSE TO REQUEST 18:** <u>See</u> General Objections.  The Foreign Representative objects to this Request on the grounds that it is overly broad and unduly burdensome.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  The Foreign Representative also objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 19:**

> All documents concerning communications with respect to any and all negotiations and decisions regarding the Brazilian Bankruptcy Proceeding.

**RESPONSE TO REQUEST 19:** <u>See</u> General Objections.  The Foreign Representative objects to this Request on the grounds that it is overly broad and unduly burdensome.  The Foreign Representative also objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 20:**

All documents relating to discussions between any member of the OAS Group and any third party regarding fee arrangements in connection with any financial restructuring or insolvency proceeding of any member of the OAS Group.

**RESPONSE TO REQUEST 20:**  <u>See</u> General Objections.  The Foreign Representative objects to this Request on the grounds that it is overly broad and unduly burdensome.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  The Foreign Representative also objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 21:**

All documents showing any and all transfers of any of the Debtors' assets to or from a jurisdiction, and the circumstances of such transfers.

**RESPONSE TO REQUEST 21:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 22:**

All documents concerning the nature of services provided by any and all contractors working for OAS Finance or OAS Investments as mentioned in ¶ 18 of the Tavares Declaration in the British Virgin Islands and Austria, respectively.

**RESPONSE TO REQUEST 22:**  <u>See</u> General Objections.  The Foreign Representative objects to this Request on the grounds that this Request is overly broad and unduly burdensome.  Subject

to the General Objections and the Specific Objections, the Foreign Representative will produce

documents sufficient to show the nature of services provided by any and all contractors working

for OAS Finance or OAS Investments as mentioned in ¶ 18 of the Tavares Declaration in the

British Virgin Islands and Austria, respectively, to the extent that such documents can be located

after a reasonable search.

**REQUEST NO. 23:**

> All documents concerning any and all obligations owed by Notes issuers to creditors in
> the British Virgin Islands and/or Austria.

**RESPONSE TO REQUEST 23:**  <u>See</u> General Objections.  The Foreign Representative objects

to this Request on the grounds that this Request is overly broad and unduly burdensome.  Subject

to the General Objections and the Specific Objections, the Foreign Representative will produce

documents sufficient to show any and all obligations owed by OAS Finance Limited and OAS

Investments GmbH, as Notes issuers, to creditors in the British Virgin Islands and/or Austria, to

the extent that such documents can be located after a reasonable search.

**REQUEST NO. 24:**

> All documents showing the locations of any and all expenditures and policy decisions
> regarding OAS Finance or OAS Investments.

**RESPONSE TO REQUEST 24:**  <u>See</u> General Objections.  The Foreign Representative objects

to this Request on the grounds that this Request is overly broad, unduly burdensome, vague and

ambiguous.  Foreign Representative further objects to this Request on the grounds that it fails to

identify with sufficient particularity the undefined phrase "locations of any and all expenditures

and policy decisions."

06516.00001/6745921.1

15

**REQUEST NO. 25:**

All documents showing the locations of any and all decisions regarding the control and management of OAS Finance or OAS Investments.

**RESPONSE TO REQUEST 25:**  See General Objections.  The Foreign Representative objects to this Request on the grounds that this Request is overly broad, unduly burdensome, vague and ambiguous.

**REQUEST NO. 26:**

All documents concerning any and all communications with the Debtors' customers or suppliers about the address to which they should direct payment.

**RESPONSE TO REQUEST 26:**  See General Objections.  The Foreign Representative objects to this Request on the grounds that this Request is overly broad and unduly burdensome.  The Foreign Representative further objects to this Request to the extent it is cumulative and duplicative of Requests 1 and 2.

**REQUEST NO. 27:**

All documents relating to the Brazilian Bankruptcy Court's appointment of Alvarez & Marsal Empresarial Do Brasil as judicial receiver in the Brazilian Bankruptcy Proceedings.

**RESPONSE TO REQUEST 27:**  See General Objections.  The Foreign Representative objects to this Request on the grounds that this Request is overly broad and unduly burdensome.  Subject to the General Objections and the Specific Objections, the Foreign Representative will produce documents sufficient to show the Brazilian Bankruptcy Court's appointment of Alvarez & Marsal Empresarial Do Brasil as judicial administrator in the Brazilian Bankruptcy Proceedings, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 28:**

All documents relating to the decision to grant Renato Fermiano Tavares authority under the Resolutions of Appointment.

**RESPONSE TO REQUEST 28:** <u>See</u> General Objections. The Foreign Representative objects to this Request on the grounds that this Request is overly broad and unduly burdensome. Subject to the General Objections and the Specific Objections, the Foreign Representative will produce all documents authorizing Mr. Tavares to act as foreign representative, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 29:**

All documents relating to Renato Fermiano Tavares' scope of authority and responsibilities under the Resolutions of Appointment, including his ability to administer the reorganization of the Debtors' assets and/or affairs.

**RESPONSE TO REQUEST 29:** <u>See</u> General Objections. The Foreign Representative objects to this Request on the grounds that this Request is overly broad and unduly burdensome. Subject to the General Objections and the Specific Objections, the Foreign Representative will produce all documents authorizing Mr. Tavares to act as foreign representative, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 30:**

All documents relating to actions and obligations actually undertaken by Renato Fermiano Tavares pursuant to the Resolutions of Appointment, including actions undertaken in administering the reorganization of the Debtors' assets and/or affairs.

**RESPONSE TO REQUEST 30:** <u>See</u> General Objections. The Foreign Representative objects to this Request on the grounds that it is overly broad and unduly burdensome. The Foreign Representative further objects to this Request on the grounds that it seeks the production of

06516.00001/6745921.1

documents not reasonably calculated to lead to discovery of documents relevant to the matters at

issue in the chapter 15 proceeding.

**REQUEST NO. 31:**

> All documents containing notes, reflections and/or analyses by OAS employees on the Resolutions of Appointment and Mr. Tavares' responsibilities and actual actions undertaken pursuant to the Resolutions.

**RESPONSE TO REQUEST 31:**  <u>See</u> General Objections.  The Foreign Representative objects

to this Request on the grounds that it is overly broad and unduly burdensome.    The Foreign

Representative further objects to this Request on the grounds that it seeks the production of

documents not reasonably calculated to lead to discovery of documents relevant to the matters at

issue in the chapter 15 proceeding.

**REQUEST NO. 32:**

> All documents concerning deliberations of the Debtors regarding a decision to seek a certificate or other document from a Brazilian court in order to designate an individual as a foreign representative.

**RESPONSE TO REQUEST 32:**  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.

**REQUEST NO. 33:**

> All documents relating to potential and actual corporate resolutions and powers of attorney granting authority to individuals besides Mr. Tavares in the Brazilian Bankruptcy Proceedings.

**RESPONSE TO REQUEST 33:**  <u>See</u> General Objections.  The Foreign Representative objects

to this Request on the grounds that it is overly broad and unduly burdensome.    The Foreign

06516.00001/6745921.1

18

Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.

**REQUEST NO. 34:**

Documents sufficient to show the identities, citizenship and locations of any and all individuals who have been granted powers of attorney to act on behalf of the Debtors.

**RESPONSE TO REQUEST 34:** <u>See</u> General Objections. The Foreign Representative objects to this Request on the grounds that it is overly broad and unduly burdensome. The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.

**REQUEST NO. 35:**

All documents relating to the potential designation of individuals besides Mr. Tavares as the "foreign representative" in OAS's chapter 15 proceedings.

**RESPONSE TO REQUEST 35:** <u>See</u> General Objections. The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.

**REQUEST NO. 36:**

All documents relating to individuals besides Mr. Tavares acting as a representative in the Brazilian Bankruptcy Proceedings with the ability to administer the Debtors' reorganization.

**RESPONSE TO REQUEST 36:** <u>See</u> General Objections. The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.

**REQUEST NO. 37:**

All documents relating to changes in, and displacement of, management of OAS Finance pursuant to the commencement of liquidation proceedings before the Eastern Caribbean Supreme Court, High Court of Justice- Commercial Division in the British Virgin Islands on April 16, 2015.

**RESPONSE TO REQUEST 37:**  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it is overly broad and unduly burdensome.

**REQUEST NO. 38:**

Documents sufficient to show the corporate structure of the Debtors, OAS Investimentos, OAS Engineering and Construction, and OAS Infrastructure.

**RESPONSE TO REQUEST 38:**  <u>See</u> General Objections.  The Foreign Representative objects

to this Request to the extent that it calls for the production of documents from and concerning

OAS Investimentos, OAS Infrastructure, and OAS Engineering and Construction, who are not

parties to this proceeding.   Subject to the General Objections and the Specific Objections, the

Foreign Representative will produce documents sufficient to show the corporate structure of the

Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 39:**

All documents concerning Operation Car Wash, including: documents concerning the arrest(s) of any directors, executives, or other employees of the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure in connection with Operation Car Wash; documents concerning the anticipated or actual impact of Operation Car Wash on the finances and credit ratings of the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure; and documents related to the anticipated or actual impact of Operation Car Wash on the ability of the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure, to bid for or otherwise participate in government contracts, including with Petrobras.

06516.00001/6745921.1

20

**RESPONSE TO REQUEST 39**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  The Foreign Representative also objects to this Request to the extent it calls for the production of documents from and concerning non-Debtor companies, who are not parties to this proceeding.

**REQUEST NO. 40:**

> All documents concerning failure of the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure to make any scheduled principal or interest payments on outstanding debts during the specified time frame, including without limitations payments due on the 2021 Notes, payments due on any outstanding debentures issued by the Debtors, and payments due on the Perpetual Notes.

**RESPONSE TO REQUEST 40**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.  The Foreign Representative also objects to this Request to the extent it calls for the production of documents from and concerning non-Debtor companies, who are not parties to this proceeding.

**REQUEST NO. 41:**

> All documents concerning changes in the credit ratings or financial positions of the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure during the specified time frame.

**RESPONSE TO REQUEST 41**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  The Foreign Representative also objects to this Request to the extent that it calls for

the production of documents from and concerning non-Debtor companies, who are not parties to

this proceeding.

**REQUEST NO. 42:**

> All documents concerning any restructuring or bankruptcy proceedings involving the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure whether in Brazil or elsewhere, to the extent not already produced in response to another Document Request.

**RESPONSE TO REQUEST 42**:  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it is overly broad and unduly burdensome.   The

Foreign Representative further objects to this Request on the grounds that it seeks the production

of documents not reasonably calculated to lead to discovery of documents relevant to the matters

at issue in the chapter 15 proceeding.  The Foreign Representative also objects to this Request to

the extent that it calls for the production of documents from and concerning non-Debtor

companies, who are not parties to this proceeding.

**REQUEST NO. 43:**

> All documents concerning the decision to include only certain members of the OAS Group, and not others in the Brazilian Bankruptcy Proceedings.

**RESPONSE TO REQUEST 43**:  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.   The Foreign Representative objects to the extent this Request calls for the

production of documents from non-Debtor members of the OAS Group, who are not party to this

proceeding.

**REQUEST NO. 44:**

All documents concerning the OAS Construction Asset Transfer, including without limitation documents concerning the reason(s) for that asset transfer, the timing of that asset transfer, the goals and/or purpose of that asset transfer, the decision whether or when to publically disclose that asset transfer, and what if any financial or other consideration was given by OAS Engineering and Construction to Construtora OAS in exchange for the transferred assets.

**RESPONSE TO REQUEST 44**:  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and

claims not before this Court.  The Foreign Representative objects to the extent this Request calls

for the production of documents from non-Debtor members of the OAS Group, who are not party

to this proceeding.

**REQUEST NO. 45:**

All documents concerning the value, whether monetary or otherwise, of the assets transferred by Construtora OAS to OAS Engineering and Construction on December 1, 2014, including without limitations documents sufficient to show the value of any such assets on that date.

**RESPONSE TO REQUEST 45**:  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and

claims not before this Court.  The Foreign Representative objects to the extent this Request calls

for the production of documents from non-Debtor members of the OAS Group, who are not party

to this proceeding.

**REQUEST NO. 46:**

> Documents sufficient to show all assets and liabilities of Construtora OAS at the time of the OAS Construction Asset Transfer.

**RESPONSE TO REQUEST 46**:  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and

claims not before this Court.

**REQUEST NO. 47:**

> Documents sufficient to show all assets and liabilities of OAS Engineering and Construction at the time of the OAS Construction Asset Transfer.

**RESPONSE TO REQUEST 47**:  <u>See</u> General Objections.  The Foreign Representative further

objects to this Request on the grounds that it seeks the production of documents not reasonably

calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and

claims not before this Court.  The Foreign Representative also objects to the extent this Request

calls for the production of documents from non-Debtor members of the OAS Group, who are not

party to this proceeding.

**REQUEST NO. 48:**

> Documents sufficient to show all assets and liabilities of Construtora OAS after the OAS Construction Asset Transfer.

**RESPONSE TO REQUEST 48**: <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 49:**

>   All documents discussing the actual or anticipated effect of the OAS Construction Asset Transfer on the creditors of the Debtors, OAS Investimentos, OAS Engineering and Construction, or OAS Infrastructure or their subsidiaries, including without limitation on the holders of the Notes.

**RESPONSE TO REQUEST 49**: <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.  The Foreign Representative also objects to this Request to the extent that it calls for the production of documents from and concerning non-Debtor companies, who are not parties to this proceeding.

**REQUEST NO. 50:**

>   All documents concerning any valuation report(s) prepared in connection with the OAS Construction Asset Transfer, including all draft and final copies of any such report(s).

**RESPONSE TO REQUEST 50**: <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 51:**

> All documents concerning the Invepar Share Transfer, including without limitation documents concerning the reason(s) for that asset transfer, the timing of that asset transfer, the goals and/or purpose of that asset transfer, the decision whether or when to publically disclose that asset transfer, and what if any financial or other consideration was given by OAS Infrastructure and to OAS Investimentos in exchange for the transferred Invepar shares.

**RESPONSE TO REQUEST 51**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.  The Foreign Representative objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 52:**

> All documents concerning the Invepar Share Transfer, including without limitation documents concerning the reason(s) for that asset transfer, the timing of that asset transfer, the goals and/or purpose of that asset transfer, the decision whether or when to publically disclose that asset transfer, and what if any financial or other consideration was given by OAS Infrastructure and to OAS Investimentos in exchange for the transferred Invepar shares.

**RESPONSE TO REQUEST 52**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and

06516.00001/6745921.1

claims not before this Court.  The Foreign Representative objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 53:**

> All documents concerning the value, whether monetary or otherwise, of the Invepar shares and other assets and liabilities transferred by OAS Investimentos to OAS Infrastructure on December 26, 2014, including without limitations documents sufficient to show the value of any such shares and other assets and liabilities on that date.

**RESPONSE TO REQUEST 53**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.  The Foreign Representative objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 54:**

> Documents sufficient to show all assets and liabilities of OAS Investimentos at the time of the Invepar Share Transfer.

**RESPONSE TO REQUEST 54**:  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

06516.00001/6745921.1

**REQUEST NO. 55:**

> All documents related to any and all board of directors' meetings of any member of the OAS Group taking place on December 1, 2014, including any notes prepared prior to, at, or after such board meetings.

**RESPONSE TO REQUEST 55:**  <u>See</u> General Objections.   The Foreign Representative objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not parties to this proceeding.   This Request is also overly broad and unduly burdensome to the extent it calls for "[a]ll documents related to" the board of directors' meetings and "any notes prepared to, at, or after such board meetings."   Subject to the General Objections and the Specific Objections, the Foreign Representative will produce the requested board minutes of the Debtors.

**REQUEST NO. 56:**

> All documents related to any and all board of directors' meetings of any member of the OAS Group taking place on December 26, 2014, including any notes prepared prior to, at, or after such board meetings.

**RESPONSE TO REQUEST 56:**  <u>See</u> General Objections.  The Foreign Representative objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not parties to this proceeding.   This Request is also overly broad and unduly burdensome to the extent it calls for "[a]ll documents related to" the board of directors' meetings and "any notes prepared to, at, or after such board meetings."   Subject to the General Objections and the Specific Objections, the Foreign Representative will produce the requested board minutes of the Debtors.

**REQUEST NO. 57:**

> Documents sufficient to show all assets and liabilities of OAS Infrastructure at the time of the Invepar Share Transfer.

06516.00001/6745921.1

**RESPONSE TO REQUEST 57:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.  The Foreign Representative also objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 58:**

> Documents sufficient to show all assets and liabilities of OAS Investimentos after the Invepar Share Transfer.

**RESPONSE TO REQUEST 58:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 59:**

> All documents discussing the actual or anticipated effect of the Invepar Share Transfer on the creditors of the Debtors or their subsidiaries, including without limitation on the holders of the Notes.

**RESPONSE TO REQUEST 59:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15

proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 60:**

> All documents concerning the Merger, including without limitation documents concerning the reason(s) for the Merger, the timing of the Merger, the goals and/or purpose of the Merger, the decision whether or when to publically disclose the Merger, and what if any financial or other consideration was given by OAS S.A. to OAS Investimentos in exchange for the property and assets transferred as part of the Merger.

**RESPONSE TO REQUEST 60:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 61:**

> All documents concerning any valuation report prepared in connection with the Merger, including all draft and final copies of any such report.

**RESPONSE TO REQUEST 61:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 62:**

> All documents concerning the value, whether monetary or otherwise, of any property or assets of OAS Investimentos transferred to OAS S.A. as part of the Merger on December 26, 2014, including without limitations documents sufficient to show the value of any such property or assets on that date.

**RESPONSE TO REQUEST 62:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 63:**

Documents sufficient to show all assets and liabilities of OAS Investimentos at the time of the Merger.

**RESPONSE TO REQUEST 63:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 64:**

Documents sufficient to show all assets and liabilities of OAS S.A. at the time of the Merger.

**RESPONSE TO REQUEST 64:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 65:**

Documents sufficient to show all assets and liabilities of OAS Investimentos after the Merger.

**RESPONSE TO REQUEST 65:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 66:**

> All documents discussing the actual or anticipated effect of the Merger on the creditors of the Debtors or their subsidiaries, including without limitation on the holders of the Notes.

**RESPONSE TO REQUEST 66:**  <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.

**REQUEST NO. 67:**

> All minutes of meetings of the boards of directors of any of the Debtors, OAS Investimentos, OAS Infrastructure and OAS Engineering and Construction from the specified time period.

**RESPONSE TO REQUEST 67:**  <u>See</u> General Objections.  The Foreign Representative objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not parties to this proceeding, including OAS Engineering and Construction.  This Request is also overly broad and unduly burdensome to the extent it calls for "[a]ll documents related to" the board of directors' meetings and "any notes prepared to, at, or after such board meetings."  Subject to the General Objections and Specific Objections, the

Foreign Representative will produce the board minutes of the each of the Debtors to the extent they are relevant to the matters at issue in the chapter 15 proceeding.

**REQUEST NO. 68:**

All documents concerning the decision to change the newspaper(s) in which the Debtors, OAS Investimentos, OAS Infrastructure and OAS Engineering and Construction's corporate decisions are announced and board minutes are published.

**RESPONSE TO REQUEST 68:** <u>See</u> General Objections. The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding. The Foreign Representative also objects to this Request to the extent that it calls for the production of documents from and concerning non-Debtor companies, who are not parties to this proceeding.

**REQUEST NO. 69:**

All financial statements published by the Debtors, OAS Investimentos, OAS Infrastructure and OAS Engineering and Construction during the specified time period.

**RESPONSE TO REQUEST 69:** <u>See</u> General Objections. The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding. This Request is also overly broad and unduly burdensome to the extent it calls for the production of all relevant documents created or modified since the beginning of time. The Foreign Representative also objects to this Request to the extent that it calls for the production of documents from OAS Investimentos, OAS Infrastructure, and OAS Engineering and Construction, who are not parties to this proceeding.

06516.00001/6745921.1

33

**REQUEST NO. 70:**

Documents sufficient to show the document and email retention policies of each of the Debtors, OAS Investimentos, OAS Infrastructure and OAS Engineering and Construction.

**RESPONSE TO REQUEST 70:** <u>See</u> General Objections.  The Foreign Representative objects to this Request to the extent that it calls for the production of documents from and concerning OAS Investimentos, OAS Infrastructure, and OAS Engineering and Construction, which are not parties to this proceeding.  Subject to the General Objections and the Specific Objections, the Foreign Representative will produce documents sufficient to show the document and email retention policies of each of the Debtors, to the extent that such documents can be located after a reasonable search.

**REQUEST NO. 71:**

All documents sufficient to show the amount and nature of intercompany claims between and among the members of the OAS Group as of (i) the date hereof and (ii) April 24, 2014.

**RESPONSE TO REQUEST 71:** <u>See</u> General Objections.  The Foreign Representative further objects to this Request on the grounds that it seeks the production of documents not reasonably calculated to lead to discovery of documents relevant to the matters at issue in the chapter 15 proceeding.  This Request is an attempt to obtain discovery related to litigation elsewhere and claims not before this Court.  The Foreign Representative also objects to the extent this Request calls for the production of documents from non-Debtor members of the OAS Group, who are not party to this proceeding.

**REQUEST NO. 72:**

All documents referenced or relied upon in drafting your pleadings in this matter.

06516.00001/6745921.1

**RESPONSE TO REQUEST 72:** <u>See</u> General Objections.  Subject to the General Objections,

the Foreign Representative agrees to produce documents referenced or relied upon in drafting the

pleadings in this matter.

Dated: New York, New York
May 5, 2015

QUINN EMANUEL URQUHART & SULLIVAN LLP
By:  /s/ Susheel Kirpalani
       Susheel Kirpalani

51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Co-Counsel for Foreign Representative*
