DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Allan S. Brilliant
Robert J. Jossen
Gary J. Mennitt
Craig P. Druehl
Stephen M. Wolpert

*Attorneys for Aurelius Capital Management, LP
on behalf of entities it manages, and Alden
Global Capital LLC on behalf of entities it
manages*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- | X | |
| | : | |
| In re: | : | Chapter 15 |
| | : | |
| OAS S.A., *et al.*,[1] | : | Case No. 15-10937 (SMB) |
| | : | |
| Alleged Debtors in Foreign Proceedings. | : | Jointly Administered |
| | : | |
| ------------------------------------------------------- | X | |

**ALDEN AND AURELIUS'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW ON CHAPTER 15 PETITIONS**

---

[1]    The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification or corporate registry number, are: OAS S.A. (01-05), Construtora OAS S.A. (01-08), OAS Investments GmbH (4557), and OAS Finance Limited (6299).

21084118

# TABLE OF CONTENTS

Page

FINDINGS OF FACT ............................................................................................................. 2

    A.    The OAS Group ....................................................................................... 2

    B.    The 2021 Notes, 2019 Notes and Perpetual Notes ................................. 3

    C.    Brazilian Bankruptcy Proceedings .......................................................... 4

    D.    Chapter 15 Procedural History ................................................................ 6

    E.    The "Foreign Representative" in the Brazilian Bankruptcy Proceeding .............. 7

    F.    The Role of the Debtor In Brazilian Bankruptcy Proceedings ............................. 8

    G.    The Purported Foreign Representative ................................................... 9

    H.    The Judicial Administrator ................................................................... 12

    I.    The Debtor's Purported Brazilian Law Expert ..................................... 15

    J.    COMI of Investments GmbH ................................................................. 16

    K.    The Debtors' Conduct Leading To Bankruptcy ..................................... 24

    L.    Tavares's Involvement in the Christmas Transactions ......................... 27

    M.    Lack of Ability to Avoid Fraudulent Transfers under Brazilian Law ................. 28

    N.    Debtors Purport to Have the Ability to Obtain Substantive Consolidation under Brazilian Law Without Appropriate Standards or Procedures ................. 29

    O.    Lack of Due Process under Brazilian Law ........................................... 30

CONCLUSIONS OF LAW ................................................................................................. 30

I.    MR. TAVARES IS NOT THE FOREIGN REPRESENTATIVE OF THE DEBTORS ....................................................................................................... 30

    A.    The Debtors Have Not Shown That Mr. Tavares is Authorized to Act as Foreign Representative, As Required Under the Plain Language of the U.S. Bankruptcy Code ......................................................................... 30

II.    UNDER THE PARTICULAR CIRCUMSTANCES OF THESE PROCEEDINGS, RECOGNIZING THE BRAZILIAN BANKRUPTCY PROCEEDINGS WOULD BE MANIFESTLY CONTRARY TO PUBLIC POLICY UNDER SECTION 1506 OF THE BANKRUPTCY CODE .......................... 44

    A.    Recognition Will Likely Assure That U.S. Stakeholders are Treated Unjustly, Protect Fraudulent Transfers, and Ensure Distributions of the Debtors' Property which are Inconsistent with the Bankruptcy Code ................. 47

III.    RECOGNITION OF THE BRAZILIAN BANKRUPTCY PROCEEDINGS REGARDING INVESTMENTS GMBH IS INAPPROPRIATE BECAUSE THE DEBTORS HAVE NOT DEMONSTRATED THE EXISTENCE OF EITHER A FOREIGN MAIN OR NONMAIN PROCEEDING ...................................... 51

Table of Contents
(continued)

Page

A.    The Burden of Establishing COMI Lies With the Debtors.................................. 51

B.    The Debtors Have Not Demonstrated the Existence of a Foreign Main
Proceeding With Respect to Investments GmbH................................................... 53

C.    The Debtors Have Not Demonstrated the Existence of a Foreign Nonmain
Proceeding With Respect to Investments GmbH................................................... 60

## <u>TABLE OF AUTHORITIES</u>

<span style="font-variant: small-caps;">CASES</span>

*1633 Broadway Mars Rest. Corp. v. Paramount Grp., Inc. (In re 1633 Broadway Mars Rest. Corp.)*,
  388 B.R. 490 (Bankr. S.D.N.Y. 2008) ....................................................................51

*Awal Bank, BSC v. HSBC Bank USA (In re Awal Bank, BSC)*,
  455 B.R. 73 (Bankr. S.D.N.Y. 2011) ......................................................................43

*Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*,
  Case No. 01 Civ. 1226 (DAB), 2003 U.S. Dist. LEXIS 10221 (S.D.N.Y. June 17, 2003) ........................................................................................................................40

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985)..................................................................................................36

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*,
  737 F.3d 238 (2d Cir. 2013)......................................................................................34

*Fogerty v. Petroquest Res. Inc. (In re Condor Ins. Ltd.)*,
  601 F.3d 319 (5th Cir. 2010) ....................................................................................43

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)..................................................................................................48

*Gorski v. Kirschenbaum (In re Gorski)*,
  766 F.2d 723 (2nd Cir. 1985)....................................................................................36

*In re Atlas Shipping A/S*,
  404 B.R. 726 (Bankr. S.D.N.Y. 2009) ......................................................................47

*In re Basis Yield Alpha Fund (Master)*,
  381 B.R. 37 (Bankr. S.D.N.Y. 2008)............................................................52, 53, 56

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007) ....................................................51, 53, 56

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  389 B.R. 325 (S.D.N.Y. 2008)............................................................................42, 58

*In re Blackstone Partners, L.P.*,
  No. 04 Civ. 7757(NRB), 2005 WL 1560505 (S.D.N.Y. July 1, 2005)....................52

*In re Board of Directors of Telecom Argentina, S.A.*,
  528 F.3d 162 (2d Cir. 2008)......................................................................................48

*In re Centrais Eletricas Do Para S.A.*,
No. 12-14568 (SCC) (Bankr. S.D.N.Y. Dec. 12, 2012) ..................................................33, 40

*In re Coastal Cable T.V., Inc.*,
709 F.2d 762 (1st Cir. 1983) ...................................................................................................51

*In re Gold & Honey, Ltd.*,
410 B.R. 357 (Bankr. E.D.N.Y. 2009) ....................................................................................46

*In re Hourani*,
180 B.R. 58 (Bankr. S.D.N.Y. 1995) .......................................................................................48

*In re Kemsley*,
489 B.R. 346 (Bankr. S.D.N.Y. 2013) .....................................................................................61

*In re Lee*,
472 B.R. 156 (Bankr. D. Mass. 2012) .....................................................................................47

*In re Millennium Global Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011) .......................................................................................60

*In re Natural Land Corp.*,
825 F.2d 296 (11th Cir. 1987) .................................................................................................51

*In re Ohio Corrugating Co.*,
59 B.R. 11 (Bankr. N.D. Ohio 1985) .......................................................................................34

*In re Oversight and Control Comm'n of Avanzit, S.A.*,
385 B.R. 525 (Bankr. S.D.N.Y. 2008) .....................................................................................43

*In re Qimonda AG*,
462 B.R. 165 (Bankr. E.D. Va. 2011) ......................................................................................46

*In re Raymond Prof'l Grp., Inc.*,
414 B.R. 433 (Bankr. N.D. Ill. 2009) ......................................................................................37

*In re Rede Energia S.A.*,
No. 14-10078 (SCC) (Bankr. S.D.N.Y. Feb. 25, 2014).............................................................40

*In re Rede Energia S.A.*,
No. 14-10078 (SCC) (Bankr. S.D.N.Y. Mar. 6, 2014) ............................................................40

*In re Remington Rand Corp. v. Bus. Sys. Inc.*,
830 F.2d 1260 (3d Cir. 1987), *aff'd, sub nom., Kilbarr Corp. v. Bus. Sys. Inc., B.V.*,
869 F.2d 589 (3d Cir. 1989).....................................................................................................48

*In re SIFCO S.A.*,
No. 14-11179 (REG) (Bankr. S.D.N.Y. Oct. 15, 2014)............................................................40

*In re SIFCO S.A.*,
    No. 14-11179 (REG) (Bankr. S.D.N.Y. Oct. 23, 2014)..........................................................40

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ...................................................................................47

*In re Starbrite Props. Corp.*,
    Case No. 11-40758 (CEC), 2012 Bankr. LEXIS 2599 (Bankr. E.D.N.Y. June 5, 2012) ........51

*In re Suntech Power Holdings Co., Ltd.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ......................................................................52, 53, 54

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) ...................................................................................46

*In re Tradex Swiss AG*,
    384 B.R. 34 (Bankr. D. Mass. 2008) ...............................................................................58, 59

*In re Treco*,
    240 F.3d 148 (2d Cir. 2001)..................................................................................................46

*In re Tri-Continental Exch., Ltd.*,
    349 B.R. 627 (Bankr. E.D. Cal. 2006) ....................................................................51, 53, 56

*In re Vitro S.A.B. de CV*,
    701 F.3d 1031 (5th Cir. 2012) ...................................................................................39, 40, 49

*International Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*,
    347 F.3d 589 (5th Cir. 2003) .................................................................................................48

*Kirschner v. Zoning Bd. Of App.*,
    924 F. Supp. 385 (E.D.N.Y. 1996) .........................................................................................37

*Kohler v. Leslie Hindman, Inc.*,
    80 F.3d 1181 (7th Cir. 1996) .................................................................................................37

*Laime v. U.S. Trustee*,
    540 U.S. 526 (2004)..............................................................................................................34

*Lavie v. Ran (In re Ran)*,
    607 F.3d 1017 (5th Cir. 2010) .........................................................................................30, 61

*Lavie v. Ran*,
    406 B.R. 277 (Bankr. S.D. Tex. 2009) ..................................................................................59

*Little Creek Dev. Co. v. Commonwealth Mort. Co. (In re Little Creek Dev. Co.)*,
    779 F.2d 1068 (5th Cir. 1986) ...............................................................................................51

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013)................................................................. passim

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..........................................................................48

*NLRB v. Steinerfilm, Inc.*,
    702 F.2d 14 (1st Cir. 1983)................................................................40

*Pepper v. Litton*,
    308 U.S. 295 (1939)..........................................................................50

*Pereira v. Foong (In re Ngan Gung Rest.)*,
    254 B.R. 566 (Bankr. S.D.N.Y. 2000)...............................................36

*Phoenix Elec. Contracting, Inc. v. Lovece*,
    No. 93 CIV. 4340 (LMM), 1993 WL 512917 (S.D.N.Y. Dec. 9, 1993) ...............................59

*Phoenix Four Inc. v. Strategic Res. Corp.*,
    446 F. Supp. 2d 205 (S.D.N.Y. 2006)................................................58

*SNP Boat Serv. S.A. v. Hotel Le St. James*,
    483 B.R. 776 (S.D. Fla. 2012) ..........................................................47

*Spanski Enter., Inc. v. Telewizja Polska, S.A.*,
    No. 10 Civ. 4933(ALC)(GWG), 2013 WL 81263 (S.D.N.Y. Jan. 8, 2013)..........................52

*United States v. Knote*,
    818 F. Supp. 1280 (E.D. Mo. 1993), *aff'd*, 29 F.3d 1297 (8th Cir. 1994)..............................40

*United States v. Ron Pair Enters., Inc.*,
    489 U.S. 235 (1989)..........................................................................34

**STATUTES**

11 U.S.C. § 101(23) ...........................................................................31

11 U.S.C. § 101(24) ...........................................................16, 31, 32, 33, 41

11 U.S.C. § 330...............................................................................34

11 U.S.C. § 521(a)(1)........................................................................35

11 U.S.C. § 547...............................................................................36

11 U.S.C. § 548...............................................................................36

11 U.S.C. § 1106(a) ..........................................................................35

11 U.S.C. § 1107(a) ................................................................................................35

11 U.S.C. § 1108 ....................................................................................................35

11 U.S.C. § 1502(2) ..........................................................................................60, 61

11 U.S.C. § 1505 ....................................................................................................42

11 U.S.C. § 1506 ..............................................................................................44, 46

11 U.S.C. § 1507(b) .........................................................................................46, 47

11 U.S.C. § 1515(a) ................................................................................................31

11 U.S.C. § 1515(b) .........................................................................................32, 33

11 U.S.C. § 1516(c) ................................................................................................52

11 U.S.C. § 1517(a) ................................................................................................46

11 U.S.C. § 1517(b)(1) .................................................................................53, 59, 60

11 U.S.C. § 1517(b)(2) ............................................................................................61

11 U.S.C § 1521(a)(7) .............................................................................................43

11 U.S.C. § 1523(a) ................................................................................................43

28 U.S.C. § 1334(a) ................................................................................................59

28 U.S.C. § 1746 ......................................................................................................2

## OTHER AUTHORITIES

8 COLLIER ON BANKRUPTCY ¶ 1505.01 (16th ed. 2014) ..............................................42

Fed. R. Civ. P. 30(b)(6) ..........................................................................................52

Fed. R. Civ. P. 44.1 ................................................................................................36

H.R. Rep. No. 109-31 (2005) ..............................................................................42, 46

Pursuant to the Court's directive at the close of the evidentiary hearing in these Chapter 15 cases on May 19, 2015, (the "Recognition Hearing"), Aurelius Capital Management, LP on behalf of entities it manages (collectively, "Aurelius") and Alden Global Capital LLC on behalf of entities it manages (collectively, "Alden"),[2] respectfully submit the following proposed findings of fact ("FOF") and conclusions of law ("COL").  These proposed FOFs and COLs address the Forms of Petition [Docket No. 1] (the "Forms of Petition") and the Verified Petition [Docket No. 3] (the "Verified Petition," and together with the Forms of Petition, the "Recognition Petitions") filed by Renato Fermiano Tavares as purported foreign representative (the "Purported Foreign Representative") for the above-captioned debtors (the "Debtors").  The Recognition Petitions seek recognition of the Debtors' foreign proceeding pending in Brazil as a foreign main proceeding, and, in the alternative, as a foreign non-main proceeding, under section 1517 of the Bankruptcy Code.

---

[2]   Alden and Aurelius appear herein as holders or managers of entities that hold beneficial interests in certain 8.00% Senior Notes due 2021 issued by OAS Finance Limited and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A. (the "2021 Notes") and/or certain 8.875% Perpetual Notes issued by OAS Finance Limited and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A. (the "Perpetual Notes"), and/or certain 8.25% Senior Notes due 2019 issued by OAS Investments GmbH and guaranteed by OAS S.A., OAS Investimentos S.A. and Construtora OAS S.A. (the "GmbH Notes," and together with the 2021 Notes and the Perpetual Notes, the "Notes," and the holders of Notes, the "Noteholders").  Alden and Aurelius hold, in the aggregate, $353,523,000.00 in principal amount of Notes.  Other than the holdings of Notes listed in the immediately preceding sentence, and certain asserted and unasserted causes of action related thereto, Alden and Aurelius hold no other claims or interests in OAS S.A. ("OAS," and together with all of its direct and indirect subsidiaries, the "OAS Group") or any of its subsidiaries, including subsidiaries that have not filed Chapter 15 petitions with this Court.

## FINDINGS OF FACT

**A.    The OAS Group**

1.    The OAS Group consists of OAS S.A. ("OAS") and all of its direct and indirect subsidiaries, whether wholly-owned or otherwise. *See* Exh. AA26.[3] The Debtors in these Chapter 15 cases—OAS, Construtora OAS S.A. ("Construtora OAS"), OAS Investments GmbH ("Investments GmbH"), and OAS Finance Limited ("Finance BVI")[4]—are members of the OAS Group. *See* Exh. AA26.

2.    OAS is the ultimate parent of the OAS Group. Tavares Dec. ¶ 12; Exh. AA26. OAS is privately held by (i) CMP Participações Ltda., which owns 90% of OAS and is controlled by Cesar de Araújo Mata Pires, and (ii) LP Participações e Engenharia Ltda., which owns 10% of OAS and is controlled by José Adelmário Pinheiro Filho ("Pinheiro"). Tavares Dec. ¶ 12.

3.    OAS is a holding company and operates through its two principal subsidiaries: Construtora OAS and OAS Investimentos S.A. ("Investimentos") (collectively with OAS and Construtora OAS, the "Guarantors"). Tavares Dec. ¶ 9.

---

[3]    References to exhibits introduced in evidence at the Recognition Hearing by Alden and Aurelius are cited as "Exh. AA __". Reference to exhibits introduced in evidence at the Recognition Hearing by the Debtors are cited as "Exh. OAS __". References to the *Declaration of Renato Fermiano Tavares Pursuant to 28 U.S.C. § 1746 in Support of Verified Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521* [Docket No. 4], dated April 15, 2015 are cited as "Tavares Dec. ¶ __". References to the *Declaration of Eduardo Secchi Munhoz Pursuant to 28 U.S.C. § 1746 in Support of Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521* [Docket No. 5], dated April 15, 2015 are cited as "Munhoz Dec. ¶ __". References to the transcript of the Recognition Hearing are cited as "Recognition Hrg. Tr. at ___". References to Alden and Aurelius's designations of the transcript of the May 14, 2015 deposition of Mr. Tavares are cited as "AA Tavares Desig. at ___". References to Alden and Aurelius's designations of the transcript of the May 14, 2015 deposition of Mr. Munhoz are cited as "AA Munhoz Desig. at ___".

[4]    For the reasons discussed below at paragraph 77, these FOFs and COLs do not address recognition of the Brazilian Bankruptcy Proceedings for Finance BVI.

4.     OAS directly owns 99.9999997% of the share capital of Construtora OAS, which is a holding company at the top of OAS Group's engineering division.  Tavares Dec. ¶ 13.

5.     Construtora OAS operates the heavy engineering division, and Investimentos is a holding company that owns investments in various real estate and infrastructure assets including arenas, toll roads, ports, airports and sanitation assets.  Tavares Dec. ¶¶ 9, 11.

6.     Investments GmbH is a financing vehicle for OAS Group, with its registered office in Vienna, Austria.  Investments GmbH is wholly owned by OAS.  Tavares Dec. ¶ 15.

7.     Finance BVI is also a financing vehicle for OAS Group, with its registered office in the British Virgin Islands.  It is wholly owned by OAS.  Tavares Dec. ¶ 16.

**B.     The 2021 Notes, 2019 Notes and Perpetual Notes**

8.     The 2021 and Perpetual Notes were issued under and are governed by indentures among Finance BVI, as issuer, OAS, Investimentos and Construtora OAS, as guarantors, Deutsche Bank Trust Company Americas, as trustee, registrar, transfer agent and paying agent, and Deutsche Bank Luxembourg S.A., as the Irish paying agent, Irish listing agent and Irish transfer agent.  *See* Exh. AA2 at 120; Exh. AA3 at 118.

9.     The 2019 Notes were issued under and are governed by indentures among Investments GmbH, as issuer, OAS, Investimentos and Construtora OAS, as guarantors, Deutsche Bank Trust Company Americas, as trustee, registrar, transfer agent and paying agent, and Deutsche Bank Luxembourg S.A., as the Irish paying agent, Irish listing agent and Irish transfer agent.  *See* Exh. AA5 at 123.

10.     Principal is payable, and the Notes are transferable and exchangeable, at the office or agency maintained for such purposes in New York, New York at the Corporate Trust Office of the Trustee.  *See* Exh. AA2 at 120; Exh. AA3 at 118; Exh. AA5 at 123.

3

11.    The Notes and their indentures provide that they will be governed by, and construed in accordance with, the laws of the State of New York.  *See* Exh. AA2 at 148; Exh. AA3 at 137*;* Exh. AA5 at 151.

12.    The issuers and each of the guarantors have consented to the non-exclusive jurisdiction of the courts of the State of New York and the United States courts located in the Borough of Manhattan, New York City, New York with respect to any action that may be brought in connection with the Notes or their indentures.  *See* Exh. AA2 at 148; Exh. AA3 at 137; Exh. AA5 at 151.

13.    The Notes were issued using United States underwriters.  Exh. AA2 at 174; Exh. AA3 at 160; Exh. AA5 at 179.  The underwriters of the 2021 Notes include HSBC Securities (USA) Inc., and Santander Investment Securities Inc.  Exh. AA2 at 174.  The underwriters of the 2019 Notes include Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., and Itau BBA USA Securities, Inc.  Exh. AA5 at 179.

14.    The underwriters of the Perpetual Notes include Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., Itau BBA USA Securities, Inc., and Santander Investment Securities Inc.  Exh. AA3 at 160.  The Notes were heavily marketed to investors in the U.S.

## C.    Brazilian Bankruptcy Proceedings

15.    On March 31, 2015, in the wake of a wide-ranging corruption scandal resulting in the incarceration of five of the Debtors' top-level executives and the severe downgrade in their credit, *see* FOF, ¶¶ 119-20, 126 *infra*, the Debtors commenced *recuperação judicial* proceedings for judicial reorganization (the "Brazilian Bankruptcy Proceedings" or "RJ" proceedings) pursuant to Federal Law No. 11.101 of February 9, 2005 of the laws of the Federative Republic of Brazil (the "Brazilian Bankruptcy Law").  Tavares Dec. ¶¶ 3, 5.  The Debtors filed voluntary

4

bankruptcy petitions in the First Specialized Bankruptcy Court of São Paulo (the "Brazilian

Bankruptcy Court").  Exh. AA27.

16.     After an *ex parte* meeting with the representatives of the OAS Group for which

there is no record, *see* AA Tavares Desig. 111:1-14, Recognition Hearing Tr. at 103:16-105:7, on

April 1, 2015, the Brazilian Bankruptcy Court issued a decision and order (the "April 1 Order")

approving the continuation of the Brazilian Bankruptcy Proceedings and indicating that it would

treat the ten OAS Group entities in the Brazilian Bankruptcy Proceedings as effectively

substantively consolidated.  *See* Exh. AA28 at 3329.  In the April 1 Order, the Brazilian

Bankruptcy Court states:

> The claimant joinder of parties is also well justified where all the
> companies operate in a systematic manner and are part of the same
> economic group. In this regards, the preservation of social and economic
> benefits resulting from healthy business activity (which is the objective of
> this process) will be better served if the crisis is faced as a whole, taking
> the companies part of the economic group into consideration as a whole,
> and not individually.
>
> The question related to the incorporation of OAS Investimentos by OAS
> S/A (which is the object of judicial discussion underway) is irrelevant for
> the purposes of this procedure, given that the assets and the liabilities of
> both are subject to the process of judicial recovery. Regardless of the
> confirmation of the incorporation, or not, the fact is that the creditors of
> both will be subject to the judicial recovery of the economic group and the
> assets of both will be fully subject to fulfilling the objectives of this
> endeavor.

Exh. AA28 at 3329.  Further, in denying Aurelius' motion for reconsideration of the April 1

Order, the Brazilian Bankruptcy Court stated:

> the joinder of parties in this request for judicial recovery was already
> granted pursuant to the decision that was already announced. The judicial
> recovery process exists so that the social and economic benefits resulting
> from upholding a healthy business activity can be maintained, such as the
> generation of employment, the circulation of goods and services, the
> generation of revenue, tax collection, among others. In this regards,
> private creditor interests must yield to the public and social interest
> represented by achieving the objectives of this type of process.  Therefore,

5

as decided, the global solution of the business crisis is a possibility to guarantee the success of the recovery process.

Exh. AA29.

17.    On April 27, 2015, Pentágono S.A. Distribuidora De Títulos E Valores Mobiliários, a trustee representing a group of debenture holders, filed a motion with the Brazilian Bankruptcy Court asking the court to appoint a special co-manager to take an active role in the day-to-day supervision and management of the OAS Group and have veto power over management decisions, citing the companies' various corrupt activities and fraudulent transfers. Exh. AA14.  That motion remains pending and no co-manager has been appointed.

**D.    Chapter 15 Procedural History**

18.    On April 15, 2015, the Purported Foreign Representative filed the Recognition Petitions in the United States Bankruptcy Court for the Southern District of New York, seeking relief under Chapter 15 of the Bankruptcy Code and recognition of OAS's Brazilian Bankruptcy Proceedings as a foreign main proceeding.  *See* Forms of Petition; Verified Petition.  The Purported Foreign Representative also filed the Tavares Declaration and a declaration of a purported expert on Brazilian insolvency law, Eduardo Secchi Munhoz, in support of the Recognition Petitions.  *See* Tavares Dec.; Munhoz Dec.

19.    On April 24, 2015, Alden and Aurelius served their First Set of Document *Requests Directed to the Foreign Representative in Connection with the (I) Verified Petition for Recognition of Brazilian Bankruptcy Proceedings and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code.  See Letter to Judge Bernstein Re: Discovery Conference* [Docket No. 39], Exh. A.  The Debtors subsequently made general objections, as well as specific objections and responses, to the discovery requests.  *See Letter to Judge Bernstein Re: May 7, 2015 Discovery Conference* [Docket No. 43], Exh. B.  At a discovery

6

conference held on May 7, 2015, the Court quashed certain of the Document Requests relating to the OAS Group's December 2014 Christmas Transactions (defined below), and overruled the Debtors' general and specific objections to certain other of the Document Requests. *See Letter to Judge Bernstein Re: May 7, 2015 Discovery Conference* [Docket No. 44] at 1. The Court directed the Debtors to produce non-privileged documents on certain topics related to the Recognition Petitions. *See Letter to Judge Bernstein Re: May 7, 2015 Discovery Conference* [Docket No. 44] at 1.

20.    At the May 7, 2015 discovery conference, the Debtors also indicated that the temporary restraining order then in place pursuant to the Court's order (*see Order Granting Provisional Relief* [Docket No. 33]) would expire on May 19, 2015, and that they would not seek a preliminary injunction at the recognition hearing. *See Letter to Judge Bernstein Re: May 7, 2015 Discovery Conference* [Docket No. 44] at 5. In addition, the Debtors stated that at the May 19, 2015 hearing they would proceed solely on recognition and would not seek any other relief, including the discretionary post-recognition relief under section 1521 of the Bankruptcy Code sought in the Recognition Petitions. *Letter to Judge Bernstein Re: May 7, 2015 Discovery Conference* [Docket No. 44] at 5.

21.    At the May 19, 2015 Recognition Hearing, the Court received evidence on the Recognition Petitions. The Court reserved judgment on the Recognition Petitions, and directed the parties to submit proposed findings of fact and conclusions of law regarding recognition, with oral argument to take place later. *See* Recognition Hrg. Tr. at 181:12-25, 182:1-7.

**E.    The "Foreign Representative" in the Brazilian Bankruptcy Proceeding**

22.    It is undisputed that the Debtors' purported foreign representative, Renato Fermiano Tavares, was not appointed or authorized to be a foreign representative by the Brazilian Bankruptcy Court. Recognition Hrg. Tr. at 111:20-22.

7

23.     The Debtors did not request and have not requested that the Brazilian Bankruptcy Court appoint a foreign representative.  Recognition Hrg. Tr. at 111:1-6.

24.     The term "foreign representative" is not used in the Brazilian Bankruptcy Law. Recognition Hrg. Tr. at 110:19-21.

25.     The Brazilian Bankruptcy Law does not address the issue whether a Brazilian debtor is authorized to appoint a foreign representative.  Recognition Hrg. Tr. 129:21-24. Nothing in the Brazilian Bankruptcy law purports to allow a debtor to do so.  Recognition Hrg. Tr. 129:21-24.

26.     Nothing in the Brazilian Bankruptcy Law prohibits the Brazilian Bankruptcy Court from appointing a foreign representative.  Recognition Hrg. Tr. 147:3-8.

27.     In the Brazilian Bankruptcy Law, there is no provision similar to Chapter 15 that empowers the Brazilian Bankruptcy Court to give judicial assistance to a debtor in a foreign bankruptcy proceeding.  Recognition Hrg. Tr. at 146:7-14.

**F.**     **The Role of the Debtor In Brazilian Bankruptcy Proceedings**

28.     Under Article 64 of the Brazilian Bankruptcy Law, a debtor and its officers remain in control of the management of the debtor's business unless removed in accordance with that article. Exh. AA20.  The debtor is subject to the oversight and supervision of a judicial administrator appointed under the Brazilian Bankruptcy Law.  *See* FOF, ¶ 53 *infra*.

29.     The Brazilian Bankruptcy Law restricts the debtor's operations outside the ordinary course.  For example, pursuant to Article 66 of the Brazilian Bankruptcy Law, the debtor is prevented from selling or encumbering its permanent assets without the prior consent of the Brazilian Bankruptcy Court in consultation with a creditors' committee (if one has been appointed).  Exh. AA20.

30.    Other than the duty to submit a restructuring plan under Article 53, the Brazilian Bankruptcy Law contains no provisions that provide the debtor with any of the duties, rights, or powers afforded a trustee or liquidator under insolvency laws generally, much less the U.S. Bankruptcy Code.  Exh. AA20.

31.    The debtor is not empowered to bring avoidance actions on behalf of creditors in Brazilian bankruptcy proceedings.  Recognition Hrg. Tr. at 133:7-12.

**G.    The Purported Foreign Representative**

(i)    Employment with OAS Group

32.    Mr. Tavares is an in-house attorney in the OAS Group, and has been since 2009. AA Tavares Desig. at 23:14-15; Tavares Dec. ¶ 2; Recognition Hrg. Tr. at 33:22-24.

33.    Mr. Tavares began his employment at the OAS Group with OAS.  AA Tavares Desig. at 23:20-22.

34.    While employed at OAS, Mr. Tavares also has acted as counsel to the "family office," which is an informal name used for the companies and holdings of the ultimate shareholders of OAS, including Pinheiro.  Recognition Hrg. Tr. at 40:21-41:13.

35.    Mr. Tavares is now chief legal officer (*i.e.* general counsel) of OAS Infraestrutura S.A. ("OAS Infraestrutura") and Investimentos, neither of which are debtors in these Chapter 15 cases.  AA Tavares Desig. at 24:12-15; Recognition Hrg. Tr. at 33:22-35:3.

36.    Investimentos is a guarantor of the Notes.  Exh. AA2 at 120, Exh. AA3 at 118, Exh. AA5 at 123.  OAS Infraestrutura is not a guarantor.  Recognition Hrg. Tr. at 56:13-15.

37.    In his current capacity, Mr. Tavares reports to Fabio Yonamine, CEO of Investimentos and OAS Infraestrutura.  AA Tavares Desig. at 80:20-25, 81:1-6, 87:2-5, 95:10-21; Recognition Hrg. Tr. at 36:2-4.  Yonamine is CEO of Investimentos.  AA Tavares Desig. at 87:7.

       (ii)    <u>Purported Appointment by the Debtor of Tavares As Foreign
Representative</u>

38.     On April 1, 2015, the Brazilian Bankruptcy Court entered the April 1 Order that, among other things, accepted the voluntary reorganization petitions, allowed the voluntary proceeding to continue, and appointed Alvarez & Marsal Consultoria Empresarial do Brasil ("<u>A&M</u>") as judicial administrator.  Exh. AA28.

39.     The day after entry of the April 1 Order, on April 2, 2015, the boards of the Debtors purported to appoint Mr. Tavares as "legal representative" via board resolutions and powers of attorney.  Exh. OAS4.

40.     According to those powers of attorney, the boards purportedly authorized Mr. Tavares to represent each Debtor "with respect to its judicial reorganization proceeding before the civil court of jurisdiction … under the laws of the Federative Republic of Brazil (the "<u>Judicial Reorganization Proceeding in Brazil</u>"), including for purposes of seeking any relief available to a 'foreign representative' … according to US Code title 11, chapter 15."  Exh. OAS4.

41.     The powers of attorney also purported to appoint Mr. Tavares as the Debtors' "agent in administering the reorganization of the [Debtor's] assets and affairs in the Judicial Reorganization Proceeding in Brazil."  Exh. OAS4.

       (iii)    <u>Role in Brazilian Bankruptcy Proceedings</u>

42.     Mr. Yonamine, not Mr. Tavares, is principally responsible for the OAS Group's strategy in the Brazilian Bankruptcy Proceedings.  AA Tavares Desig. at 87:6-16; Recognition Hrg. Tr. at 36:7-12.

43.     To the extent Mr. Tavares has had any role in the Brazilian Bankruptcy Proceedings, it has been as counsel to OAS, rather than as an administrator of the Debtors' estate

for the benefit of stakeholders.  AA Tavares Desig. at 53:23-54:3, 101:12-17; 101:18-25, 102:2-16.

44.    Mr. Tavares attended one meeting with the judge of the Brazilian Bankruptcy Court on the day that the voluntary reorganization petition was filed.  AA Tavares Desig. at 110:22-25, 111:2-6.  He has had no other interactions with the Brazilian Bankruptcy Court.  AA Tavares Desig. at 111:20-25.

45.    Mr. Tavares has filed no reports with the Brazilian court.  AA Tavares Desig. at 117:9-14.

46.    Mr. Tavares's interactions with A&M have been in his capacity as a lawyer for OAS.  Recognition Hrg. Tr. at 53:20-22.

47.    His discussions with OAS's financial adviser, G5/Evercore, regarding the Brazilian Bankruptcy Proceeding have been in his capacity as counsel for OAS.  AA Tavares Desig. at 101:12-17.

48.    His involvement with preparation of the restructuring plan has been as counsel to OAS.  AA Tavares Desig. at 101:18-25, 102:2-16.

(iv)    Role as Purported Foreign Representative

49.    Mr. Tavares had no understanding of the role of a foreign representative prior to discussions he held with OAS's United States counsel, White & Case LLP, at or around the time of the commencement of the Brazilian Bankruptcy Proceedings.  Recognition Hrg. Tr. at 50:20-51:2.

50.    Mr. Tavares understands his duty as foreign representative to be representing the interests of the companies appointing him.  Recognition Hrg. Tr. at 51:3-15.  He does not purport to represent the interests of creditors, or to act as a representative of the Brazilian Bankruptcy Proceeding.  Recognition Hrg. Tr. at 51:3-15, 53:23-54:3.

(v)    Conflicts of Interest

51.    Investments GmbH is one of the largest creditors of OAS Investments Limited

("Investments BVI").  *See* Recognition Hrg. Tr. at 76:17-77:25; Exh. AA4 at 7518.

Accordingly, Mr. Tavares purports to act in the interests of adverse parties.

52.    This, along with Mr. Tavares's role as counsel to the OAS Group, *see* FOF, ¶¶ 43,

47-48, and his involvement in questionable transactions, *see* FOF, ¶¶ 133-36 *infra*, conflict with

his role as a purported foreign representative.

**H.    The Judicial Administrator**

(i)    Role of Judicial Administrator Under Brazilian Bankruptcy Law

53.    The role of the judicial administrator in the Brazilian Bankruptcy Proceedings is

"control and overseeing the judicial restructuring process."  AA Munhoz Desig. at 56:21-23.

54.    The Brazilian Bankruptcy Court's April 1 Order outlined A&M's rights and

responsibilities as judicial administrator.  Exh. AA28.  Those rights and responsibilities include:

- Informing the judge of the company's situation within 10 days.  Exh. AA28 at ¶ 1.1.

- Submitting fee proposals and monthly reports.  Exh. AA28 at ¶¶ 1.4, 1.5.

- "Supervising the process and the companies under judicial recovery's fulfillment of the terms."  Exh. AA28 at ¶ 1.3.

55.    Further, the Brazilian Bankruptcy Law, on its face, requires the judicial

administrator to perform the administrative functions in "in-court restructurings," including,

among others:

- Controlling information flow by providing information requested by creditors, *see* Exh. AA20 at Art. 22 I (b), demanding information from creditors, the debtor or their officers, *see* Exh. AA20 at Art. 22 I (d), publishing notice of the creditor list, *see* Exh. AA20 at Art. 7 § 2, Art. 18, and sending notices to creditors.  *See* Exh. AA20 at Art. 22 I (a).

- Applying to the judge to convene creditors' meetings (where the plan is discussed, modified, and either approved or rejected), *see* Exh. AA20 at Art. 22 I (g), and chairing those meetings. *See* Exh. AA20 at Art. 37.

- Performing the claims reconciliation, or "credit verification," process, including requesting "exclusion, classification otherwise, or rectification of any credit, in the event any falsehood, willful misconduct, sham, fraud, or essential error is uncovered or, further, any documents were overlooked at the time the credit was judged or included in the creditors' [list]." *See* Exh. AA20 at Art. 7-20.

- Overseeing the debtor's activities. *See* Exh. AA20 at Art. 22 II (a).

- Overseeing the debtor's compliance with the restructuring plan. *See* Exh. AA20 at Art. 22 II (a).

- Hiring professionals. *See* Exh. AA20 at Art. 22 I (h).

- Filing for "bankruptcy" (i.e. liquidation) if the debtor breaches the obligations under the plan. *See* Exh. AA20 at Art. 22 II (b).

- Submission of monthly reports on the debtor's activities. *See* Exh. AA20 at Art. 22 II (c).

56.     In a liquidation, the judicial administrator has additional duties and powers, including:

- Undertaking the judicial representation of the bankruptcy case. *See* Exh. AA20 at Art. 22 III (c).

- Seizing the debtor's property and documents. *See* Exh. AA20 at Art. 22 III (f).

- Performing any acts necessary for asset realization and payment of creditors. *See* Exh. AA20 at Art. 22 III (i).

- Performing all acts for the preservation of rights and actions, to arrange for the collection of debts, and to grant release therefor. *See* Exh. AA20 at Art. 22 III (l).

- Redeeming, on behalf of the estate and pursuant to judicial authorization, any mortgaged, attached, or legally retained assets. *See* Exh. AA20 at Art. 22 III (m).

- Representing the bankruptcy estate in court and retaining lawyers. *See* Exh. AA20 at Art. 22 III (n).

13

57.     The judicial administrator is paid a fee for his administrative role in Brazilian

proceedings.  Recognition Hrg. Tr. at 120:2-4.  The fee is set by the Brazilian Bankruptcy Court.

Recognition Hrg. Tr. at 120:11-12.  It could be up to five percent of the amount owed to

creditors.  Recognition Hrg. Tr. at 120:6-8.

58.     The judicial administrator is subject to personal liability for failure to comply with

the administrative duties under the Brazilian Bankruptcy Law.  Recognition Hrg. Tr. at 120:13-

15.

(ii)     Alleged Admissions of Alden and Aurelius Brazilian Counsel

59.     Marcelo Carpenter is counsel to Alden and Aurelius in connection with the

Brazilian Bankruptcy Proceedings.

60.     Mr. Carpenter did not testify or submit an affidavit in connection with these

Chapter 15 cases.

61.     Mr. Carpenter, however, did submit an affidavit (the "Carpenter Affidavit") in

connection with proceedings in the British Virgin Islands (the "BVI").  The Carpenter Affidavit

stated that the judicial administrator "has very limited powers and acts more as an inspector than

an administrator" and that "management of the company remains in the hands of its duly

appointed directors."  Exh. OAS11 at ¶ 12.

62.     In a different BVI filing (the "Written Submission"), Alden and Aurelius attribute

to Mr. Carpenter a statement that the role of the judicial administrator is "largely administrative."

Exh. OAS9 at ¶ 16.

63.     The relevant passage of the Carpenter Affidavit discusses the judicial

administrator's limited power with respect to management of the Debtors, including an inability

to sell debtor assets, enter into contracts on behalf of the debtor, or replace debtor directors.  Exh.

OAS11 at ¶ 12.

14

64.     The relevant passage of the Written Submission discusses director control over the business.  Exh. OAS9 at ¶ 16.

65.     Neither passage relates to the various substantial administrative duties and powers vested in the judicial administrator in Brazilian judicial restructurings as set forth in Article 22 of the Brazilian Bankruptcy Law.  *See* Exh. AA20 at Art. 22.  The Brazilian Bankruptcy Law speaks for itself with respect to the judicial administrator's duties and powers.

66.     The Debtor's purported Brazilian law expert acknowledged that the judicial administrator controls and oversees the judicial restructuring process.  AA Munhoz Desig. at 56:21-23.

## I.    The Debtor's Purported Brazilian Law Expert

67.     The Debtors have offered the testimony of Eduardo Secchi Munhoz as a purported expert on Brazilian law.

68.     Mr. Munhoz is part of a team of lawyers that represents the OAS Group in its bankruptcy efforts in both the U.S. and Brazil.  Recognition Hrg. Tr. at 102:15-18.

69.     Mr. Munhoz personally signed the Brazilian reorganization petitions of the OAS Group members that are debtors in the Brazilian Bankruptcy Proceedings as their attorney. Recognition Hrg. Tr. at 103:3-9.

70.     Mr. Munhoz's declaration submitted in these cases was the product of a team effort with, among others, White & Case.  Recognition Hrg. Tr. at 107:17-24.

71.     Mr. Munhoz's declaration was part of his overall work for the OAS Group, and, although his compensation arrangement with the OAS Group has not yet been finalized, he expects to be compensated for serving as an expert witness in the Chapter 15 Cases as part of his overall representation of the OAS Group.  Recognition Hearing Tr. at 105:25-107:9.

72.     Mr. Munhoz has worked closely with Mr. Tavares in connection with the
bankruptcy proceedings.  Recognition Hrg. Tr. at 107:10-13.

73.     Mr. Munhoz had not read section 101(24) of the U.S. Bankruptcy Code until just
prior to his deposition.  Recognition Hrg. Tr. at 109:16-110:5.

74.     Mr. Munhoz's understanding of the term "foreign representative" came from
White & Case.  AA Munhoz Desig. at 50:25, 51:2-5.

75.     Mr. Munhoz has worked closely with White & Case on other matters.
Recognition Hrg. Tr. at 110:9-12.

76.     Mr. Munhoz has no expertise with respect to the U.S. Bankruptcy Code.  AA
Munhoz Desig. at 70:21-25.

**J.      COMI of Investments GmbH**

77.     Alden and Aurelius do not contest that the COMI of OAS and Construtora is
Brazil.  The COMI of Finance BVI is no longer at issue here, as the joint provisional liquidators
of Finance BVI filed their own Chapter 15 proceeding, and the Debtors no longer seek
recognition with respect to this entity.  Accordingly, only the COMI of Investments GmbH
remains in dispute.

(i)     Investments GmbH's Headquarters Are in Austria

78.     Investments GmbH was incorporated under the laws of Austria.  Tavares Dec. ¶¶
18, 48; Recognition Hrg. Tr. 69:10-12; Exh. AA42.

79.     Investments GmbH is required to maintain its headquarters in Austria, pursuant to
Austrian law.  Exh. AA18.

80.     Investments GmbH maintains, and has always maintained, its only registered
office in Austria.  Tavares Dec. ¶¶ 15, 18, 49(a); AA Tavares Desig. at 152:11-14, 169:11-20;
Recognition Hrg. Tr. 71:8-11; Exh. AA42 at 2.

16

81.    Investments GmbH has never had an office in Brazil.  AA Tavares Desig. 152:11-13, 169:11-20.

82.    Investments GmbH is a special purpose entity, a "financing vehicle," the only function of which is to act as a vehicle for the issuance and payment of the Notes.  Tavares Dec. ¶¶ 15, 49(a); AA Tavares Desig. 152:5-10; Recognition Hrg. Tr. 69:15-17; Exh. AA42 at 2.

83.    Investments GmbH has no local operational presence in Brazil.  Tavares Dec. ¶¶ 18, 50; AA Tavares Desig. 151:14-16, 151:25-152:4, 152:11-14, 169:11-20; Recognition Hrg. Tr. at 69:18-70:18.

84.    Investments GmbH has no employees at all, and thus no employees in Brazil.  AA Tavares Desig. at 152:21-23; Recognition Hrg. Tr. at 69:13-14, 70:8-13; Exh. AA22.

85.    Investments GmbH files tax returns in Austria, not Brazil.  Exh. AA23.

86.    Investments GmbH's noteholders were never sent any documents that reflected Investments GmbH having any office other than an Austrian office.  AA Tavares Desig. 169:11-20.

(ii)    Investments GmbH Conducts no Business in Brazil

87.    Investments GmbH conducts no business in Brazil.  Tavares Dec. ¶ 49(a); AA Tavares Desig. 151:6-152:14, 152:21-23, 161:22-162:11; Recognition Hrg. Tr. 69:18-70:18.

88.    The Debtors adduced no evidence that Investments GmbH is registered to do business in Brazil.  Exh. AA42 at 2; see generally Tavares Dec.; AA Tavares Desig.; OAS Tavares Desig.; Recognition Hrg. Tr.; Exhs. AA1-44; OAS1-43 (collectively, the "Record").

89.    Investments GmbH has no economic impact on the local marketplace in Brazil.  Tavares Dec. ¶ 49(a); AA Tavares Desig. 151:6-152:14, 152:21-23, 161:22-162:11; Recognition Hrg. Tr. 69:18-70:18.

90.     Investments GmbH has never purchased goods or services from any person or entity in Brazil.  AA Tavares Desig. 151:25-152:4.

91.     The only vendors or service providers of Investments GmbH are TAXCOACH Wirtschaftsprufung und Steuerberatung GmbH, Schindler Rechtsanwalte GmbH, Wiener Zeitung GmbH and Bieber Brix & Partners, all located in Austria.  Accordingly, Investments GmbH only has vendors in Austria, not in Brazil.  Tavares Dec. ¶¶ 18, 50; Exh. AA4 at 7451, Exh. AA43.

92.     Investments GmbH is merely a creditor entity with no other business in Brazil or elsewhere, and is not an integrated part of OAS Group, operationally or functionally.  Tavares Dec. ¶¶ 15, 49(a); AA Tavares Desig. 151:6-152:14, 152:21-23, 161:22-162:11; Recognition Hrg. Tr. 69:15-70:18; Exh. AA42 at 2.

93.     There are no indicia to creditors of any ties between Investments GmbH and Brazil, other than the fact that certain directors of Investments GmbH recently have resided there.  Tavares Dec. ¶ 49(d); *see generally* Record.  All documents otherwise indicate that Investments GmbH is an Austrian entity, headquartered in Austria, operating under Austrian law, filing taxes in that jurisdiction, and having no employees, activities, or service providers outside of Austria.  Tavares Dec. ¶¶ 15, 18, 48, 49(a), 50; AA Tavares Desig. 151:6-152:14, 152:21-23, 161:22-162:11, 169:11-20; Recognition Hrg. Tr. 69:10-14, 69:18-70:18, 71:8-11; Exhs. AA18, AA23, AA42.

(iii)    Investments GmbH is Not Managed in Brazil

94.     Under Austrian law, Investments GmbH is required to maintain at least one director who resides in Austria.  Exh. AA18.  If no director resides in Austria, parties in interest are entitled to demand appointment of a temporary director from the Austrian courts.  Exh. AA18.

95.    Until at least February 28, 2015, Investments GmbH had an Austrian director. AA Tavares Desig. 157:21-158:5; Recognition Hrg. Tr. 72:11-17.  This director resigned shortly before the Debtors filed for bankruptcy.  AA Tavares Desig. 158:18-25; Recognition Hrg. Tr. 75:3-9; Exh. AA21.

96.    Although Investments GmbH's current directors have offices in Brazil, *see* Tavares Dec. ¶ 49(d); Recognition Hrg. Tr. 86:6-14, there is no indication that they conduct any work on behalf of Investments GmbH, as opposed to work they perform for the other OAS Group entities which they manage and/or for which they work.  Recognition Hrg. Tr. 86:15-88:11; *see generally* Record.

97.    There is no evidence that Investments GmbH has held any board meetings.  AA Tavares Desig. 161:22-162:2; Recognition Hrg. Tr. 69:18-70:18.  There is no evidence that Investments GmbH has made any decisions whatsoever, other than to appoint Mr. Tavares as the purported foreign representative.  AA Tavares Desig. 162:8-11; Recognition Hrg. Tr. 71:16-72:4; Exhs. AA38-39; *see generally* Record.  There is no evidence that any operational decisions were made anywhere at all, much less in Brazil.  *See* AA Tavares Desig. 162:8-11; Recognition Hrg. Tr. 71:16-72:4; *see generally* Record.

98.    To the extent that Mr. Tavares attempted to modify his testimony at the hearing to indicate that he might have seen other minutes of additional board meetings, he could not recall which minutes he had seen.  This testimony conflicts with his earlier deposition testimony that he was unaware of any board meetings.  Recognition Hrg. Tr. 71:16-72:4.  Moreover, the Debtors produced no Investments GmbH board materials other than the resolution and power of attorney purporting to appoint Mr. Tavares foreign representative.  *See* AA Tavares Desig. 162:8-11; Exhs. AA38-39; *see generally* Record.

19

99.     The only decision contained in the Record ever made by Investments GmbH's directors was the appointment of Mr. Tavares as the purported foreign representative.  AA Tavares Desig. 162:8-11; Recognition Hrg. Tr. 71:16-72:4; *see generally* Record.

(iv)    The Location of Investments GmbH's Assets is Outside Brazil

100.    Other than some cash in the United States, *see* Tavares Dec. ¶ 43, Investments GmbH maintains only a single known asset:  the US$909,448,958.33 intercompany receivable from Investments BVI (a BVI company not located in Brazil), and Investments GmbH has no assets in Brazil.  AA Tavares Desig. 151:14-16; Recognition Hrg. Tr. 76:17-77:25; Exh. AA4 at 7518.

(v)     All of Investments GmbH's Creditors Are Located Outside Brazil

101.    There is no evidence that any creditor of Investments GmbH is located in Brazil.  Exh. AA4 at 7451; *see generally* Record.

102.    Investments GmbH is owed no money by, nor does it owe any money to, any Brazilian entities.  AA Tavares Desig. 151:6-13; Recognition Hrg. Tr. 75:10-76:16; Exh. AA4 p. 7451.  The Debtors submitted no evidence sufficient to show that any holders of GmbH Notes are in Brazil.  AA Tavares Desig. 151:10-12 (Investments GmbH has not ever owed anything to anyone or any entity in Brazil); Recognition Hrg. Tr. 95:14-16 (Mr. Tavares stating that he met with "bondholders" in Brazil, but not specifying that any of the bondholders held GmbH Notes); *see generally* Record.

103.    Investments GmbH's principal creditors are holders of Notes issued pursuant to New York law, by United States underwriters, to creditors around the world, other than in Brazil.  AA Tavares Desig. 151:6-13; Exh. AA4 p. 7451; *see also* FOF, ¶¶ 102, 105.

104.    Deutsche Bank Trust Company Americas, located at 60 Wall Street, New York, New York, is the indenture trustee on the Notes.  Exh. AA5 at second-to-last page.

105.    Such Notes were not offered or sold in Brazil.  *See* FOF, ¶ 110 *infra*.

106.    The only other creditors of Investments GmbH are TAXCOACH

Wirtschaftsprufung und Steuerberatung GmbH, BMF – Bundesministerium Fur Finanzen,

Wiener Zeitung GmbH and Bieber Brix & Partners, all located in Austria as indicated in the

Debtors' creditor list filed in the Brazilian proceedings.  Exh. AA4 at 7451.

107.    There is no indication that any bondholder meetings held in Brazil related to

Investments GmbH's noteholders.  *See generally* Record.  Although Mr. Tavares testified that he

had spoken to people representing unidentified bondholders in Sao Paulo, Brazil, Mr. Tavares

did not indicate whether any of these representatives were Investments GmbH's creditors, rather

than Finance BVI or other OAS Group creditors.  Recognition Hrg. Tr. 84:21-85:5, 95:14-16.

The only other meetings with creditors mentioned in the Record took place in New York.

Recognition Hrg. Tr. at 96:9-11; 99:22-100:1.

> (vi)    Offering Memorandum of the 8.25% Senior Notes due 2019 issued by
> <u>Investments GmbH</u>

108.    The notes offering memorandum for the 2019 Notes (the "<u>Offering</u>

<u>Memorandum</u>") makes clear that Investments GmbH, the issuer, is organized under the laws of

Austria.  Exh. AA5 at v.

109.    The Offering Memorandum includes a section entitled "Enforcement of Civil

Liabilities."  Exh. AA5 at v.  This section contains disclaimers relating to disputes with

Investments GmbH, explaining that Austrian courts may apply Austrian law, and that Austrian

courts may not enforce U.S. judgments.  Exh. AA5 at v.  There is no mention of Brazilian law

potentially applying to disputes with Investments GmbH.  *See* Exh. AA5 at v.  If not New York

law, then Austrian law applies to Investments GmbH.  *See* Exh. AA5 at v.

110.    The Offering Memorandum indicates in the notice section that the 2019 Notes have not and will not be registered with the Comissão de Valores Mobiliários (the Brazilian securities commission), and the notes may not be sold or offered in Brazil.  Exh. AA5 at iv.

111.    The Offering Memorandum states with regard to OAS that "[w]e are organized under the laws of Brazil and a majority of our assets are located in Brazil.  In addition, all of our executive officers and senior managers and certain advisors named herein reside in Brazil."  Exh. AA5 at 42.  This statement does not refer to Investments GmbH.  "We," "us," and "our" are specifically defined to refer to OAS S.A. and its subsidiaries and not the issuer, Investments GmbH.  Exh. AA5 at ii, 42; Recognition Hrg. Tr. at 79:18-80:15.

> (vii)    Brazilian Law Would Not Apply to Most of Investments GmbH's Disputes

112.    In most disputes, Investments GmbH is subject to New York law, not Brazil law, because the Notes are governed by New York law.  Exh. AA5 at v.

113.    Otherwise, the offering memoranda indicate that Austrian law, not Brazilian law, applies.  Exh. AA5 at v-vi.

> (viii)   Mr. Tavares's Testimony Regarding COMI Lacks Credibility

114.    In his declaration, Mr. Tavares claimed that there were 110,000 direct and indirect employees of the OAS Group.  Tavares Dec. ¶ 10.  When asked about the number of direct employees, Mr. Tavares equivocated and, because he did not have the exact numbers, refused to give provide a range of numbers of employees.  Recognition Hrg. Tr. 68:5-69:6.

115.    Mr. Tavares was asked about the functions of Investments GmbH, specifically in regard to the functions purported to be managed from Brazil.  He replied that there were no employees, and he did not know about any marketing, R&D, or human resource management.  Recognition Hrg. Tr. 69:13-70:18.  This conflicts directly with the Debtors' and Mr. Tavares'

22

statements that these, and additional, functions existed and were managed from Brazil.  *See*
Tavares Dec. ¶ 47; Debtors' Reply ¶ 53.

116.    When faced with Exh. AA4 and a question regarding whether all creditors listed
for Investments GmbH were in Vienna, Mr. Tavares equivocated and refused to answer: he
claimed that he did not know that "Wien" is equivalent to Vienna, the city in Austria.
Recognition Hrg. Tr. 76:12-14.  It is common knowledge that Wien is the German word for
Vienna, and as "foreign representative" of Investments GmbH, Mr. Tavares presumably would
have known this fact.[5]

117.    When asked about board meetings of Investments GmbH, Mr. Tavares initially
professed he didn't know of any, but then changed his testimony, insisting that he had seen some
other unidentified board minutes, despite the absence of any such documents in the Record.
Recognition Hrg. Tr. 71:16-72:4.  This conflicted with Mr. Tavares' earlier testimony, as well as
his deposition statements in which he stated he knew of no other meetings.  AA Tavares Desig.
161:22-162:2; Recognition Hrg. Tr. 71:16-72:4.

118.    Mr. Tavares declares that Investments GmbH: is "operationally and functionally
centered in Sao Paulo, Brazil," Tavares Dec. at ¶ 17; is required to maintain its registered office
in Austria under Austrian law and, thus, is a "mere 'letterbox' compan[y]," Tavares Dec. at ¶ 18;
or is otherwise a "classical 'letterbox' compan[y]."  Tavares Dec. at ¶ 50.  These declarations are

---

[5]    Despite Mr. Tavares' refusal to admit that these entities are all located in Vienna, Austria, citing his
inability to speak German,  Recognition Hrg. Tr. at 76:12-14, page 7451 of Exh. AA4 indicates that
each of these entities is located at addresses in "Wien."  As noted, Wien is the German word for the
city of Vienna, Austria.  Noteholders respectfully request the Court take judicial notice of this fact
which, if not already known to the Court, may be easily confirmed via numerous reliable sources.
Indeed, if one Googles "wien," the first result is the City of Vienna's official website, located at
https://www.wiengv.at/english/.

conclusory statements not entitled to any weight, as the Court observed at the Recognition

Hearing.  Recognition Hrg. Tr. at ¶¶ 18:3-13, 20:3-22:3, 27:4-12.

**K.**      **The Debtors' Conduct Leading To Bankruptcy**.

119.    On November 14, 2014, Pinheiro, president and 10% shareholder of OAS and

chief executive of Construtora OAS and Investimentos, was arrested in connection with the

Petrobras corruption scandal.  *See* Exh. AA7.

120.    Other OAS executives were also arrested, including Agenor Franklin Magalhães

Medeiros, José Ricardo Nogueira Breghirolli, and Mateus Coutinho de Sá Oliveira.   *See* Exh.

AA7.

121.    Prosecutors have formally charged these executives with corruption, money

laundering, and the formation of a criminal organization.  *See* Exh. AA7.

122.    On February 20, 2015, the Federal Public Prosecutor in Brazil filed a complaint

against OAS and Construtora OAS alleging improper conduct in connection with the Petrobras

scandal.  Exh. AA10 at 85.  The Federal Public Prosecutor's complaint sought sanctions against

the defendants, including money penalties and a ban on government contracting.  Exh. AA10 at

85.

123.    According to the employee list filed with the Brazilian Bankruptcy Court, Agenor

Franklin Magalhães Medeiros, José Ricardo Nogueira Breghirolli, and Mateus Coutinho de Sá

Oliveira, are still employees of the OAS Group.  Exh. AA8 at 2196, 2203, 2241, 2255.

124.    According to news reports, after Pinheiro's incarceration, the OAS Group

advanced him a year's salary in the amount of R$7.2 million, or approximately $2.4 million.

Exh. AA14 at ¶ 27.

125.    Counsel for the Debtors has described the scandal as widespread across the Brazilian construction industry, with allegations rising to the level of the federal government, and possible implication of the Brazilian President.  *See* Exh. AA1 at 13:7-12.

126.    In November, 2014, Standard & Poor's downgraded the credit ratings of OAS and Finance BVI.  Tavares Dec. ¶ 24.  As a consequence, OAS and Construtora OAS defaulted on the resulting obligation to pay the accelerated amount on January 5, 2015.  *See* Exh. AA10 at 86; Exh. AA13 at OAS-00008768.

127.    In the short period between the acceleration of the Convertible Debentures and January 2, 2015, when Finance BVI's bonds went into payment default, and a month and a half after the arrests, the OAS Group engaged in a series of secret transfers (the "Christmas Transactions").

(1)    On December 1, 2014—a week before the Convertible Debentures were accelerated—Construtora OAS (a guarantor of the Notes) transferred assets valued at R$301 million to OAS Engenharia e Construção S.A ("Engenharia"), another subsidiary of OAS.  *See* Exh. AA11.  Construtora OAS did not receive any value in return.  *See* Exh. AA11.  Unlike Construtora OAS, Engenharia is not an obligor or guarantor of the Notes.  *See* FOF, ¶¶ 8-9.  OAS did not reveal this transfer for nearly two months until it published board of director meeting minutes in the Brazil official gazette on January 20, 2015.  *See* Exh. AA32.

(2)    On December 26, 2014—seven days before the default on the first interest payment due on the 2021 Notes—Investimentos was merged into OAS.  Exh. AA12 at OAS-00001984-1997.  Investimentos' guaranty of the Notes was a critical element of credit support for the Notes and made them structurally senior to almost all other creditors of the OAS Group as respects the very substantial assets of Investimentos.  *See* Exh. AA2 at 16, 122-23; Exh. AA3 at 16, 120-21; Exh. AA5 at 16, 125-26.  The merger of Investimentos into OAS eliminated the Notes' structural seniority on the eve of their default.

(3)    OAS did not disclose the merger until January 29, 2015 with a notice in the Official Gazette publishing the minutes of OAS's extraordinary board meeting.  Exh. AA35.  When it finally disclosed the merger, OAS also revealed that OAS changed the newspaper in which it publishes notices.

25

This change was made on the same day that the merger was approved. Exh. AA35; Exh. AA12 at OAS-00001984-1997.

(4)    On December 26, 2014, Investimentos transferred its ownership stake in Investimentos e Participações em Infraestrutura S.A. − INVEPAR ("Invepar") to its subsidiary OAS Infraestrutura.  Exh. AA19; Exh. AA13 at OAS-8773.  Investimentos' 24.44% stake in Invepar had a significant book value.  Exh. AA10 at 18.  Investimentos did not receive any value in return.  Exh. AA19.  Unlike Investimentos, OAS Infraestrutura is not an obligor or guarantor of the Notes.  *See* FOF, ¶¶ 8-9.  Invepar (and not Investimentos) published a notice regarding the share transfer on January 7, 2015.  Exh. AA19.

128.    Based on the foregoing, the Debtors' leadership engaged in conduct that damaged Noteholder interests in the months leading to the commencement of the Brazilian Bankruptcy Proceedings.

129.    The Debtors' filings in these Chapter 15 Cases omit important details of the Christmas Transactions, and contain no credible explanation for the transactions.  The sole explanation given is "streamlining corporate structure."  *See* Verified Petition at ¶ 14 n. 6.

130.    The applicable Debtors who are Defendants in the fraudulent transfer action brought by Huxley Capital Corporation in the United States District Court for the Southern District of New York (the "Huxley Action") have attempted to stay any discovery in the Huxley Action.  *See generally* Exh. AA1.  Their argument against producing discovery in the Huxley Action has been that recognition of the Brazilian Bankruptcy Proceedings is forthcoming from this Court, and therefore discovery should not proceed because the action will be stayed.[6]  Exh. AA1 at 17:16-18, 22:6-8.

131.    In the BVI liquidation proceedings, the joint provisional liquidators (the "JPLs")—who are independent BVI court-appointed officers—have filed at least two reports that

---

[6]    The S.D.N.Y. District Court declined to stay discovery in the Huxley action, finding that anticipated motions to dismiss were not a basis for a finding of good cause.  *See* Exh. AA1 at 28:11-22.

indicate that the OAS Group has not cooperated with their requests for relevant information.[7]
*See* Exh. AA16 at ¶¶ 11-12, 20, 26, 31, 34; Exh. AA17 at 2-4.

132.     Further, the JPLs have stated that "OAS SA predicts virtually no recovery for
[Finance BVI] and [Investments BVI] while offering no explanation for why value to the tune of
approximately US$2 billion has been dissipated." Exh. AA16 at ¶ 36.

**L.     Tavares's Involvement in the Christmas Transactions**

133.     Mr. Tavares was significantly involved in the Christmas Transactions. *See* FOF,
¶ 127.

134.     First, as general counsel to both Investimentos and OAS Infraestrutura, Mr.
Tavares acted as counsel for both companies in the December 26, 2014 transaction through
which Investimentos transferred its ownership stake in Investimentos e Participações em
Infraestrutura S.A. − INVEPAR ("Invepar") to its subsidiary OAS Infraestrutura. *See* Exh.
AA19; Recognition Hrg. Tr. at 34:21-35:3. The stock transfer appears to have been for little or
no consideration. *See* Exh. AA19 (press release failing to mention any consideration for the
transaction).

135.     Unlike Investimentos, OAS Infraestrutura is not an obligor or guarantor of the
Notes. Recognition Hrg. Tr. at 56:13-15; FOF, ¶¶ 8-9.

136.     Second, Mr. Tavares was general counsel to Investimentos when, on December
26, 2014, Investimentos was purportedly merged into OAS, *see* Exhs. AA12, AA35, which
eliminated the Noteholders' guarantee from Investimentos, as well as their structural seniority to

---

[7]     In fact, the JPLs allege that White & Case, counsel to Mr. Tavares as Purported Foreign
Representative, has "stonewalled" the JPLs on their requests for information even after the JPLs filed
their own Chapter 15 petitions. *See Motion for Leave to Conduct Discovery Pursuant to 11 U.S.C. §§
105(a), 1519(a)(3), 1521(a)(4) and 1521(a)(7) and Rule 2004 of the Federal Rules of Bankruptcy
Procedure* [Case No. 15-11304, Docket No. 21].

Investimentos's assets.  He also acted as secretary of the board of OAS in connection with the

merger.  Exh. AA12.

**M.    Lack of Ability to Avoid Fraudulent Transfers under Brazilian Law**

137.    Under the Brazilian Bankruptcy Law, the debtor has no authority to bring

fraudulent transfer actions in reorganization proceedings.[8]  *See* Recognition Hrg. Tr. at 133:1-12;

AA Munhoz Desig. at 62:18-25, 63:1-16.

138.    Under Brazilian law, avoidance actions cannot be brought in reorganization

proceedings.  Recognition Hrg. Tr. at 133:1-12, 134:5-135:14; AA Munhoz Desig. at 62:18-25,

63:1-20.  Creditors can only bring them by civil "actions for cancellation" in separate

proceedings.  *See generally* Exh. AA20; Exh. AA20 Chapter V at Section IX (allowing for *ação*

*revocatória*, or "actions for cancellation" in liquidation proceedings, but not reorganization

proceedings).

139.    It takes longer than 180 days to prosecute an avoidance action to judgment.

Recognition Hrg. Tr. at 133:13-137:8.

140.    With respect to avoidance actions, Brazilian law does not provide for evidentiary

hearings or formal discovery.  *See generally* Exh. AA20.

141.    Because debtors are required to complete their reorganization proceeding within

180 days of the publication of notice that the Brazilian court has accepted the bankruptcy

petition, AA20 at Art. 53, actions to avoid transfers between debtors are rarely prosecuted in

Brazil prior to plan confirmation and are often disposed of under a plan.  AA Munhoz Desig. at

---

[8]    Although certain types of avoidance actions can be brought in the Brazilian Bankruptcy Court in
parallel proceedings where the debtor is in liquidation, *see* Exh. AA20 at Art. 129, there is no similar
provision that applies to the in-court reorganizations like the Brazilian Bankruptcy Proceedings.

62:18-25; 63:1-20; Recognition Hrg. Tr. at 133:13-137:8. Thus, parties have no meaningful

recourse in the Brazilian Bankruptcy Court for the avoidance of fraudulent transactions.

**N.    Debtors Purport to Have the Ability to Obtain Substantive Consolidation under Brazilian Law Without Appropriate Standards or Procedures**

142.    According to the Debtors, under Brazilian law, the Debtors have the ability to

disregard the corporate form and consolidate separate legal entities.  Recognition Hrg. Tr. at

124:1-15.

143.    The Debtors take the position that such consolidation is possible for debtors

belonging to the same corporate group, and without regard to the factors required under United

States law for substantive consolidation.  Recognition Hrg. Tr. at 124:12-15.

144.    The Debtors filed a joint RJ petition on behalf of the ten debtors in the Brazilian

Bankruptcy Proceeding.  Exh. AA27 at 512.

145.    The Brazilian Bankruptcy Court accepted the joint RJ petition on behalf of all ten

debtors.  Exh. AA28 at 3329.

146.    There is a single judicial administrator for all ten debtors.  Recognition Hrg. Tr. at

126:1-5.

147.    Alden and Aurelius have argued that the Brazilian Court has disregarded the

corporate form of the Debtors and is already treating their assets and liabilities as pooled, without

allowing for objections or holding a hearing.  *See* Exhs. AA28, AA29, AA30, AA31.

148.    The Debtors have argued that any such consolidation was only procedural, and in

any event, that Alden and Aurelius have appealed from such order.  Recognition Hrg. Tr. at

122:19-128:5; Debtors' Reply at ¶¶ 35-37.

**O.**     **Lack of Due Process under Brazilian Law**

149.     Insolvency proceedings in Brazil ordinarily involve no scheduled public hearings, and it is common practice for parties to speak with the judge without other parties present.  AA Tavares Desig. at 111:1-14; AA Munhoz Desig. at 32:12-25, 33:1-24; Recognition Hrg. Tr. at 139:7-21.

150.     There are no records or transcripts made of such meetings.  AA Tavares Desig. at 111:12-14.

151.     After filing the petition for reorganization in Brazil, lawyers for the Debtors met with the judge in Brazil overseeing the bankruptcy proceedings.  No other parties were present.  AA Tavares Desig. at 111:1-11, Recognition Hearing Tr. at 103:16-105:7.  There is no record of that meeting.  AA Tavares Desig. at 111:12-14.

## CONCLUSIONS OF LAW

**I.     MR. TAVARES IS NOT THE FOREIGN REPRESENTATIVE OF THE DEBTORS**

152.     "The ultimate burden of proof on the requirements of recognition is on the foreign representative."  *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1021 (5th Cir. 2010).  For the reasons discussed below, the Purported Foreign Representative in these Chapter 15 cases has not met the burden of proving he is an authorized "foreign representative" as that term is defined in section 101(24) of the U.S. Bankruptcy Code, and as used in sections 1515 and 1517 of the U.S. Bankruptcy Code.

**A.     The Debtors Have Not Shown That Mr. Tavares is Authorized to Act as Foreign Representative, As Required Under the Plain Language of the U.S. Bankruptcy Code**

153.     Section 101(24) of the U.S. Bankruptcy Code defines the term "foreign representative" as "a person or body, including a person or body appointed on an interim basis,

authorized in a foreign proceeding to administer the reorganization or the liquidation of the

debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. §

101(24). Under section 101(23), the term "foreign proceeding" means "a collective judicial or

administrative proceeding in a foreign country … under a law relating to insolvency or

adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control

or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. §

101(23).

154.    Further, pursuant to section 1517 of the U.S. Bankruptcy Code, an order

recognizing a foreign proceeding may only be entered only if the petition meets the requirements

of section 1515. Section 1515(a) provides that a "foreign representative applies to the court for

recognition of *a foreign proceeding in which the foreign representative has been appointed* by

filing a petition for recognition." 11 U.S.C. § 1515(a) (emphasis added). Accordingly, for an

application for recognition to be valid, the person or body requesting it must meet the definition

of "foreign representative."

155.    Read together, sections 101(23) and 101(24) require that a foreign representative

be "authorized *in*" a foreign "judicial or administrative proceeding" either to (i) administer the

reorganization or liquidation of the debtor's assets or affairs, or (ii) act as a representative of the

foreign proceeding.

156.    The Brazilian Bankruptcy Law, however, does not include the concept of a

"foreign representative," the Debtors have not requested that the Brazilian Bankruptcy Court

appoint a foreign representative, and the foreign court has not, in fact, appointed a foreign

representative to represent the foreign proceedings. *See* FOF, ¶¶ 22-24. Further, Mr. Tavares

does not purport to "act as a representative of the foreign proceeding." *See* FOF, ¶¶ 43, 50. In

31

his testimony, Mr. Tavares acknowledges that he represents only the interests of the Debtors, and

no other parties.  *See* FOF, ¶¶ 43, 50.  Moreover, it would be nonsensical to permit a debtor to

choose the representative of the proceeding, which could only be done by a court or by statute.

157.    The Debtors rely solely on their authority to operate their businesses in

bankruptcy, and their alleged consequent ability to appoint a foreign representative by board

resolution and power of attorney.  *See* Debtors' Reply at ¶¶ 68-70.  Accordingly, for Mr. Tavares

to meet the definition of "foreign representative," he must have been authorized in the foreign

proceeding to "administer the reorganization or liquidation of the debtor's assets or affairs."

158.    Section 1515(b) sets forth the evidence that must be submitted with the petition

for recognition for the Court to ascertain whether a proposed foreign representative meets the

requirements of section 101(24).  The petition must be accompanied by:

> (1)    a certified copy of the decision commencing such foreign
> proceeding and appointing the foreign representative;
>
> (2)    a certificate from the foreign court affirming the existence
> of such foreign proceeding and of the appointment of the
> foreign representative; or
>
> (3)    in the absence of evidence referred to in paragraphs (1) and
> (2), any other evidence acceptable to the court of the
> existence of such foreign proceeding and of the
> appointment of the foreign representative.

11 U.S.C. § 1515(b).

159.    Thus, the U.S. Bankruptcy Code clearly requires either (i) an express written

appointment of a foreign representative from a foreign tribunal (pursuant to section 1515(b)(1) or

(2)) or (ii) sufficient evidence of foreign statutory authorization of the purported foreign

representative "to administer the reorganization or the liquidation of the debtor's assets or affairs

or to act as a representative of [the] foreign proceeding," within the meaning of Section

101(24)'s definition of "foreign representative" (pursuant to section 1515(b)(3)).[9]

160.    The Debtors do not dispute that the Brazilian Bankruptcy Court did not issue any

decision or certificate authorizing Mr. Tavares to act as foreign representative.  *See* FOF, ¶¶ 22-

23.  Further, the Debtors admit that they do not meet the requirements of section 1515(b)(1) or

(2).  *See* Debtors' Reply at ¶ 76 n.28.  Accordingly, the relevant issue is whether the Debtors

have met their burden of submitting sufficient evidence showing that Mr. Tavares was statutorily

authorized in the foreign proceeding to administer the reorganization or liquidation of the

debtor's assets or affairs.

(i)    <u>The Debtors Are Not Authorized to Administer the Reorganization</u>

161.    The Debtors argue that they are empowered under Brazilian Bankruptcy Law to

administer their own reorganization, and thus have the authority to appoint anyone they choose

as foreign representative "to act on the corporation's behalf in the Brazilian judicial

reorganization as foreign representative of the corporation in ancillary foreign insolvency

proceedings."  *See* Debtors' Reply at ¶ 69.  In support of this argument, they rely on the

following:

(1)    Article 64 of the Brazilian Bankruptcy Law, which provides that "[d]uring
        the process of court-supervised reorganization, the debtor or its officers

---

[9]    The Debtors have suggested that the Court should weigh in their favor the fact that Alden and
Aurelius did not seek a ruling from the Brazilian Bankruptcy Court on the propriety of the Debtors'
purported appointment of Mr. Tavares as foreign representative.  *See* Debtors' Reply at ¶ 73.
Whether an applicant to a United States Court for relief under Chapter 15 is a proper foreign
representative, however, is undoubtedly a question of United States law.  Moreover, the burden here
is on the Debtors to show that Tavares is a foreign representative, a burden which they have failed to
meet. Alden and Aurelius were under no obligation to seek a ruling from the Brazilian Bankruptcy
Court in that regard.  The Debtors just as easily could have sought an order from the Brazilian
Bankruptcy Court authorizing their appointee to be foreign representative.  Nothing in the Brazilian
Bankruptcy Law prohibits such authorization, *see* FOF, ¶ 26, and such authorization has been granted
by Brazilian courts in other cases.  *See In re Centrais Electricas Do Para S.A.*, No. 12-14568 (SCC)
[Docket No. 19] (Bankr. S.D.N.Y. December 12, 2012).

shall continue to run the business, supervised by the Committee, if any, and the judicial administrator…" *See* Debtors' Reply at ¶ 68.

(2)    The testimony of Mr. Munhoz that "[a]s a general rule, the debtor, through its board of directors or agents, retains the right to administer its assets and affairs and to operate its business during the reorganization proceeding," and comparing the Debtors to debtors in possession under the U.S. Bankruptcy Code.  Munhoz Dec. ¶ 12.

(3)    The Debtors' board resolutions and powers of attorney purporting to appoint Mr. Tavares foreign representative.  Exh. OAS3.

162.    That evidence, however, is plainly insufficient for the Debtors to meet their burden of showing that their appointee, Mr. Tavares, satisfies the express and unambiguous requirement of the U.S. Bankruptcy Code that a foreign representative be "authorized in a foreign proceeding to administer the reorganization."  *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (where the "statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'") (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)); *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 249-51 (2d Cir. 2013) (vacating recognition order and holding that section 109(a) applies in chapter 15 cases under a "plain meaning" analysis, under which statutes are interpreted such that "no part will be inoperative or superfluous"); *Laime v. U.S. Trustee*, 540 U.S. 526, 534-35 (2004) (applying the plain meaning rule when interpreting 11 U.S.C. § 330).

163.    The Debtors conflate their authority under Brazilian Bankruptcy Law to continue managing their day to day business in the ordinary course with the authority to "administer" the reorganization of their assets or affairs.  *See* Debtors' Reply at ¶¶ 68-69.  The former authority is hardly the equivalent of, nor does it entail, the latter.  Under the U.S. Bankruptcy Code, the party granted the powers and entrusted with the duties to "administer" a debtor's assets and affairs is the trustee. *See, e.g., In re Ohio Corrugating Co.*, 59 B.R. 11, 12 (Bankr. N.D. Ohio 1985) ("The trustee (and the debtor-in-possession acting as trustee) is invested with administrative

34

powers formerly the province of referees in bankruptcy"). In a Chapter 11 case, the powers, rights and duties of a trustee are conferred on a debtor in possession pursuant to section 1107. 11 U.S.C. § 1107(a). The debtor in possession is also authorized to operate the debtor's business, but that authorization is found in an entirely separate section of the U.S. Bankruptcy Code—section 1108—which makes no mention of any administrative powers, rights, or duties. Thus, Congress clearly distinguished between the debtor in possession's business management authority and the authority to administer the reorganization or liquidation of its assets and affairs for the benefit of creditors and other stakeholders.

164.    Under section 1107 of the U.S. Bankruptcy Code, the debtor in possession is required to perform various functions, including (1) being accountable for property received, (2) examining proofs of claim, (3) objecting to claims as appropriate, (4) furnishing information about the estate and its administration upon the request of a party in interest, (5) filing various required reports, (6) providing notices to a domestic support claim holder and the State child support enforcement agency, (7) continuing to serve as an ERISA plan administrator, and (8) using reasonable care to transfer patients of a health care business that is being closed to an appropriate healthcare business. *See* 11 U.S.C. §§ 1107, 1106(a). The debtor in possession is also required to file lists of creditors, schedules of assets, and statements of financial affairs. *See* 11 U.S.C. § 521(a)(1).[10]

165.    In addition to the duties of a trustee, the debtor in possession is given various important powers under the U.S. Bankruptcy Code, including the trustee's power to avoid preferential and fraudulent transfers under Chapter 5 of the U.S. Bankruptcy Code. *See* 11

---

[10]    Although section 1106(a)(2) specifically imposes on a Chapter 11 trustee the duty to file creditor lists, schedules of assets, and statements of financial affairs, the debtor is already required to do so under section 521(a)(1). Thus, that duty is carved out of the duties of a trustee conferred on a debtor in possession under section 1107(a).

U.S.C. §§ 547, 548.  Further, United States law imposes fiduciary duties on the debtor in

possession to exercise those powers in the best interests of the bankruptcy estate and to

maximize distributions to creditors and other stakeholders.  *See Commodity Futures Trading*

*Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he fiduciary duty of the trustee runs to

shareholders as well as to creditors."); *Gorski v. Kirschenbaum (In re Gorski)*, 766 F.2d 723,

725-726 (2nd Cir. 1985); *Pereira v. Foong (In re Ngan Gung Rest.)*, 254 B.R. 566, 570 (Bankr.

S.D.N.Y. 2000) ("A trustee also owes a fiduciary duty to each creditor of the estate.").

166.    The Brazilian Bankruptcy Law[11] does not provide the Debtors with any of the

administrative duties or powers conferred on a trustee or debtor in possession under United

States law other than the ability to propose a plan.  *See* FOF, ¶¶ 29-31.  The Brazilian

Bankruptcy Law does not create an estate to which the Debtors owe fiduciary duties, or provide

the Debtors with any special powers exercisable in furtherance of fiduciary duties, such as the

ability to avoid transactions.  *See* FOF, ¶¶ 29-31, 137.  In fact, Mr. Tavares specifically testified

that he understands that his duty as ostensible foreign representative is to represent the interests

of the companies appointing him, and no one else.  *See* FOF, ¶ 50.  Further, Mr. Munhoz

testified that debtors are never empowered to bring fraudulent transfer actions on behalf of

creditors.  *See* FOF, ¶ 137.

167.    Under Brazilian law, the judicial administrator performs various administrative

functions, including the filing of creditor lists, examining and objecting to claims, furnishing

---

[11]    Rule 44.1 of the Federal Rules of Civil Procedure provides, "[i]n determining foreign law, the court
may consider any relevant material or source, including testimony, whether or not submitted by a
party or admissible under the Federal Rules of Evidence.  The court's determination must be treated
as a ruling on a question of law."

information upon request, publishing notices, and filing various required reports.[12]  *See* FOF, ¶¶

53-56.  Further, the judicial administrator has certain special, trustee-like powers under Brazilian

Bankruptcy Law, including overseeing the debtor's conduct of its day-to-day activities, the

ability to apply to the judge to convene creditors' meetings where the plan is discussed,

modified, and either approved or rejected, and to preside over those meetings.  *See* FOF, ¶¶ 55-

56.  As Mr. Munhoz put it, the judicial administrator "control[s] and oversee[s] the judicial

restructuring process."  *See* FOF, ¶ 53.  Thus, the judicial administrator shoulders many of the

burdens reserved for trustees under United States law.  This clearly distinguishes the Brazilian

debtor from the United States debtor in possession, as no similar insolvency representative is

appointed in United States proceedings, and the United States debtor in possession is vested with

all administrative powers and is obligated to adhere to its fiduciary duties.

168.    Due to the substantial powers and duties granted to the judicial administrator, the

Debtors not only fail to qualify as a debtor in possession under United States law, but fail to meet

the definition of debtor in possession under the UNCITRAL Model Law on Cross-Border

Insolvency (the "Model Law").  The UNCITRAL Practice Guide on Cross–Border Insolvency

---

[12]    In support of their argument that the Debtors have the powers and duties of a debtor in possession in
Brazil, the Debtors ignore the admission of their expert that the judicial administrator "control[s] and
oversee[s] the judicial restructuring process," and attempt to rely on statements from Mr. Carpenter in
certain filings in the BVI proceedings regarding the role of the judicial administrator in the Brazilian
Bankruptcy Proceedings.  See Debtors' Reply at ¶¶ 43-44, 74.  The statements appear to refer to the
judicial administrator's role in management of the day-to-day business, and not to its role as an
administrator of the reorganization process, FOF, ¶¶ 59-66, and thus are not admissions at all.  In any
event, if one read such statements out of context, such statements are ambiguous at best, and thus are
not binding.  *See Kirschner v. Zoning Bd. Of App.*, 924 F. Supp. 385, 394 (E.D.N.Y. 1996).  Further,
even if the statements could be considered admissions, they are not binding because they were made
in a different proceeding.  *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("a
statement made in one lawsuit cannot be a judicial admission in another"); *In re Raymond Prof'l
Grp., Inc.*, 414 B.R. 433, 440-41 (Bankr. N.D. Ill. 2009) (same).  At most, such statements could be
considered evidence, but where, as here, the admission in question states a legal conclusion, it does
not constitute competent evidence that could be dispositive of any issue currently before the court.
*See Kohler*, 80 F.3d at 1185; *In re Raymond Prof'l Grp., Inc.*, 414 B.R. at 441 (even if an admission,
statement "must be a statement of fact, not a legal conclusion").

Cooperation (July 1, 2009) (the "Practice Guide") provides a glossary of terms, and states that the definitions therein "explain the meaning and use of certain expressions that appear frequently in the Practice Guide. Many of these terms are common to the [UNCITRAL Legislative Guide on Insolvency Law] and the UNCITRAL Model Law and their use in the Practice Guide is consistent with their use in those texts." Practice Guide at Introduction ¶ 13. The Practice Guide's definition of debtor in possession—and thus, the meaning of that term in the Model Law—is "a debtor in reorganization proceedings, which retains full control over the business, *with the consequence that the court does not appoint an insolvency representative*." Practice Guide at Introduction ¶ 13(j) (emphasis added). Here, it is clear that the Brazilian Bankruptcy Court appointed an insolvency representative, the judicial administrator, to oversee the Debtors and, at a minimum, share administrative duties and powers. Thus, the Debtors cannot meet the Model Law's definition of debtor in possession.

169. The Debtors' reliance on the testimony of Mr. Munhoz comparing the Brazilian debtor to a Chapter 11 debtor in possession is not convincing. Mr. Munhoz is unfamiliar with the specifics of the U.S. Bankruptcy Code, *see* FOF, ¶ 76, and therefore has no frame of reference with which to compare United States and Brazilian law. Further, Mr. Munhoz's ability to give impartial testimony is highly questionable given that he is outside counsel to the OAS Group, *see* FOF, ¶¶ 32, 35, and for that reason alone has a vested interest in the Debtors' success both in the Brazilian Bankruptcy Proceedings and these Chapter 15 Cases. In fact, it appears that, in his testimony at the Recognition Hearing, Mr. Munhoz backtracked on his earlier statements at deposition, adding the debtor as a party that may apply to the Brazilian Bankruptcy Court to convene creditor meetings, even while admitting that there is no such authorization in the Brazilian Bankruptcy Law. Recognition Hrg. Tr. at 120:16-21, 121:3-4, 121:20-23.

Accordingly, his testimony is, at best, entitled to little weight. It certainly is insufficient to satisfy the Debtors' burden on the foreign representative issue.

170.    Despite the Debtors' attempt to rely on Mr. Munhoz's comparison of Brazilian debtors to United States debtors in possession, they argue that the debtor in possession provisions of the U.S. Bankruptcy Code are not the appropriate point of comparison. *See* Debtors' Reply at ¶ 74. In doing so, the Debtors rely on a block quote from the Fifth Circuit's opinion in *In re Vitro S.A.B. de CV*, 701 F.3d 1031 (5th Cir. 2012), but omit from the quote the Fifth Circuit's discussion of the Practice Guide's definition of debtor in possession. As discussed above, the Practice Guide clearly explains that its definitions are consistent with the Model Law, and the Debtors do not meet that definition.

171.    The Fifth Circuit also considered excerpts from reports of the UNCITRAL Working Group on Insolvency Law, which considered debtors in possession to be debtors that "remained in control of its assets *and* could technically be regarded as exercising administrative type of functions, although under the supervision of a judicial or administrative authority." *See Vitro,* 701 F.3d at 1050 (emphasis added). Although reliance on the Working Group reports is not compelling given the authoritative definition in the Practice Guide, the Debtors do not even meet the Working Group's criteria, which clearly require something more than remaining in control of assets and managing day-to-day operations in the ordinary course. To determine whether that something more is present here, the Court may consider whether the Debtors have any of the traditional administrative duties, rights, or powers granted to a trustee or liquidator under insolvency laws generally, and under United States law specifically. Although the Debtors may propose a plan in Brazil, the lack of evidence of any other administrative functions or of any duties to maximize value for creditors and other stakeholders leads the Court to conclude that the

Debtors' are not debtors in possession under either the UNCITRAL Working Group's

understanding or the U.S. Bankruptcy Code's definition of that term.[13]

172.    The *Vitro* case is also distinguishable in that the Fifth Circuit relied heavily on the

fact that the noteholders had sought a determination from the Mexican court that the board

appointees were not the proper foreign representatives, but the Mexican court declined to do so.

The Fifth Circuit interpreted the Mexican court's refusal as "tacit approval" of the foreign

representative.  *Vitro,* 701 F.3d at 1048.  Here, the Debtors cannot claim even tacit approval from

the Brazilian Bankruptcy Court.  Further, there is no evidence upon which to compare Brazilian

law to Mexican law.  Finally, the Fifth Circuit analysis has not been considered by the Second

Circuit, and it is not binding on this Court.

173.    Congress plainly intended that determining whether a putative foreign

representative is authorized in a foreign proceeding would be an objective and simple task.  The

Court should not have to strain to find grounds for approving a foreign representative when a

foreign statute does not provide for express authorization and no writing from a foreign tribunal

---

[13]    The Debtors' reliance on *In re SIFCO S.A.*, No. 14-11179 (REG) [Docket No. 38] (Bankr. S.D.N.Y.
Oct. 23, 2014); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [Docket No. 18] (Bankr. S.D.N.Y. Mar.
6, 2014); *In re Centrais Eletricas Do Para S.A.*, No. 12-14568 (SCC) [Docket No. 19] (Bankr.
S.D.N.Y. Dec. 12, 2012) is also misplaced.  *See* Verified Petition at ¶ 67.  In *SIFCO* and *Rede
Energia*, creditors who objected to the petition for recognition did not raise the issue whether the
foreign representative had been duly appointed in a foreign proceeding, and the question was not
litigated before the court.  *See In re SIFCO S.A.*, No. 14-11179 (REG) [Docket No. 32] (Bankr.
S.D.N.Y. Oct. 15, 2014); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [Docket No. 16] (Bankr.
S.D.N.Y. Feb. 25, 2014).  In *Centrais Eletricas Do Para*, no objection to the recognition petition was
filed by any party at all and, in fact, the debtor submitted evidence of the appointment of the foreign
representative by the Brazilian court.  Thus, these orders, entered in uncontested circumstances and
without an opinion, are and should not be considered precedential by, and are certainly not binding
on, this Court.  *See NLRB v. Steinerfilm, Inc.*, 702 F.2d 14, 17 (1st Cir. 1983) (unpublished orders
without opinion may lack precedential value); *United States v. Knote*, 818 F. Supp. 1280, 1283 (E.D.
Mo. 1993), *aff'd*, 29 F.3d 1297 (8th Cir. 1994) (noting that an unpublished order issued by consent
has "little precedential value."); *Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, Case
No. 01 Civ. 1226 (DAB), 2003 U.S. Dist. LEXIS 10221, at *51 n. 20 (S.D.N.Y. June 17, 2003)
("Unreported or unpublished decisions … have 'little (or no) precedential value.'") (quoting *Dubai
Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 669 (S.D.N.Y. 2000)).

expressly appoints or authorizes the foreign representative.  Rather, it is the Debtors' burden to submit clear evidence that the proposed foreign representative (i) is provided trustee-like duties and powers to administer the reorganization of the debtor's assets or affairs, or (ii) is statutorily authorized to represent the foreign proceeding.  Here, it is undisputed that (ii) is not present.  As to (i), there is no evidence that the Debtors exercise the administrative powers or adhere to the administrative duties of a trustee or debtor in possession beyond continuing to manage the business in the ordinary course, and proposing a plan.  Further, there is evidence that an appointed judicial administrator performs substantial trustee-like functions.  In these circumstances, where there is a lack of clarity under a foreign bankruptcy law, the Debtors must obtain written authorization from the foreign court.  Thus, the Debtors have not met their burden of showing that their appointee, Mr. Tavares is the "foreign representative."[14]

174.    Finally, even if the Debtors were true debtors in possession authorized to administer the reorganization of their assets or affairs and appoint their own foreign representative under Brazilian law, the language of section 101(24) makes clear that the authorized *foreign representative* must be the party who administers the assets and affairs in the foreign proceeding.  Mr. Tavares, however, has had, and from his testimony will have, a minimal role in the Brazilian proceedings.  *See* FOF, ¶¶ 42, 44, 45.  All of his involvement with those proceedings has been as counsel to OAS.  *See* FOF, ¶¶ 43, 46-48, 50. Thus, even if the Debtors validly appointed Mr. Tavares to the role of administrator, he has not assumed that function and has no intention to do so.

---

[14]    From the evidence adduced at the hearing on recognition, it is unclear whether the judicial administrator meets the standards for authority to serve as foreign representative under the U.S. Bankruptcy Code.  But the Court is not asked to determine whether parties other than Mr. Tavares have that authority.  Given that the Debtor does not meet the definition of debtor in possession under either the U.S. Bankruptcy Code or the Model Law, Mr. Tavares, as the Debtors' appointee, cannot have the requisite authority.

175.    Although intended to be relatively easy to meet, the prerequisites to a finding that a particular person or body is a foreign representative serve the important function of ensuring the foreign representative's accountability to the foreign tribunal, which is presumed to be neutral.  Further, they are consistent with the requirement in section 1505 of the U.S. Bankruptcy Code that the United States bankruptcy court authorize the trustee or another entity (including an examiner) to act in a foreign country on behalf of the U.S. bankruptcy estate.  *See* 11 U.S.C. § 1505.  *See* 8 Collier on Bankruptcy ¶ 1505.01 (16th ed. 2014) ("The *requirement* that the court authorize the action… provides foreign courts with assurance that the United States debtor or representative is acting under judicial supervision." (emphasis added)).  The legislative history of section 1505 makes clear that although the "main purpose [of the requirement] is to ensure that the court has knowledge and control of possibly expensive activities," it also will "have the *collateral benefit of providing further assurance to foreign courts that the United States debtor or representative is under judicial authority and supervision*."  House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 108-109 (2005) (emphasis added).  The assurance that Congress contemplates under section 1505 where a foreign court is asked to recognize a United States bankruptcy case is the same type of assurance section 1515 requires where a United States court is asked to recognize a foreign proceeding, *i.e.* that the foreign representative is under judicial authority and supervision.

176.    The foreign representative's neutrality and accountability to the foreign tribunal that appoints him are also critical considerations because recognition of a foreign proceeding in Chapter 15 is a threshold requirement that must be satisfied before any efforts to enforce a foreign bankruptcy proceeding may be pursued.[15]  Once recognition is granted, Chapter 15 vests

---

[15]    *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) ("Requiring recognition as a condition to nearly all court access and

the foreign representative with substantial powers and discretionary responsibilities.  In addition

to the authority to seek various forms of bankruptcy relief, such as extension of the automatic

stay, injunctive relief, and the commencement of a case under Chapter 11 or Chapter 7, the

foreign representative is authorized to initiate fraudulent transfer actions under foreign law in a

Chapter 15, or under United States law in a case under Chapter 7 or 11 (if one is commenced),

for the benefit of creditors.  *See In re Oversight and Control Comm'n of Avanzit, S.A.*, 385 B.R.

525, 540 (Bankr. S.D.N.Y. 2008) (recognizing oversight committee as foreign representative

because it was "created under the Convenio approved by the Spanish Insolvency Court for the

stated purpose of protecting the interests of creditors" and was authorized to pursue causes of

action for the benefit of creditors); *see also Fogerty v. Petroquest Res. Inc., (In re Condor Ins.

Ltd.)*, 601 F.3d 319, 323-24 (5th Cir. 2010) (holding that foreign representative was authorized to

bring avoidance actions under foreign law in context of Chapter 15 proceeding); *Awal Bank,

BSC v. HSBC Bank USA (In re Awal Bank, BSC)*, 455 B.R. 73, 90-91 (Bankr. S.D.N.Y. 2011)

("By affording standing to the foreign representative [in the event a Chapter 11 or Chapter 7 case

is commenced], § 1523(a) gives the foreign representative the power and authority of

a trustee under § 553 as well as the other avoidance provisions of the U.S. Bankruptcy Code.

… one of the limited but important purposes of § 1523(a) is to place the foreign representative in

the shoes of a chapter 7 or chapter 11 trustee for the purpose of pursuing the enumerated

avoidance claims."); 11 U.S.C § 1521(a)(7); 11 U.S.C. § 1523(a).

177.    Moreover, section 1509(b)(3) provides that, upon recognition of the foreign

representative, a United States court "shall grant comity" to the "foreign representative"

---

consequently as a condition to granting comity distinguishes Chapter 15 from its predecessor section
304."); H.R. 109-31(I) at 110 ("Subsections (b)(2), (b)(3), and (c) [of section 1509] make it clear that
chapter 15 is intended to be the exclusive door to ancillary assistance to foreign proceedings.").

consistent with the requirements and limitations of Chapter 15.   United States courts grant

comity to *foreign courts or administrative agencies*, not foreign persons.   Thus, for this Court to

grant comity to Mr. Tavares, it must be assured that he is a representative of the Brazilian

Bankruptcy Court.   It makes no sense to say that this Court should grant comity to the Debtors;

but that is just what the Debtors request.   After all, Mr. Tavares unabashedly represents the

Debtors, not the foreign court or proceeding.

178.    The Court can have no assurance that the Purported Foreign Representative has

any accountability to the foreign court, nor that he represents the interests of any party other than

the Debtor.   His past involvement in questionable transactions (including acting as counsel to

the parties on both sides of the Invepar stock transfer), *see* FOF, ¶¶ 133-36, his allegiance to the

OAS Group's shareholders, including his work for the "family office," *see* FOF, ¶ 34, his acting

as counsel to the OAS Group in connection with the Brazilian Bankruptcy Proceedings, *see* FOF,

¶¶ 43, 47-48, and the conflict inherent in his purported representation of Investments GmbH, *see*

FOF, ¶¶ 51-52, all create grave doubt as to Mr. Tavares's ability to act in the interests of

creditors and other stakeholders.   In particular, given his involvement in the Christmas

Transactions, it strains credulity to suppose that Mr. Tavares would exercise whatever powers

available to a foreign representative to bring avoidance actions.

## II.    UNDER THE PARTICULAR CIRCUMSTANCES OF THESE PROCEEDINGS, RECOGNIZING THE BRAZILIAN BANKRUPTCY PROCEEDINGS WOULD BE MANIFESTLY CONTRARY TO PUBLIC POLICY UNDER SECTION 1506 OF THE BANKRUPTCY CODE.

179.    Even if Mr. Tavares were a properly authorized foreign representative, this case

presents an extraordinary set of circumstances that the Court is compelled to consider.

180.    The Debtors have been involved in a publicly documented corruption scandal

which, according to the Debtors' counsel, "does not involve just my client's companies.   It

44

involves, effectively, the entire construction industry.  It involves Petrobras, the state-controlled oil company, and the allegations rises to the level of the federal government.  Some people are even questioning whether the current president has been implicated." Exh. AA1 at 13:6-12.

181.    Prior to the filing of the petitions here and the commencement of Brazilian Bankruptcy Proceeding, and after the incarceration and removal of five top executives, the Debtors engaged in secret, highly questionable transactions which appear to be intentional fraudulent conveyances.  *See* FOF, ¶¶ 120-28.  As a practical matter, moreover, under Brazilian law, these transactions are not capable of being set aside in the Brazilian Bankruptcy Proceeding. *See* FOF, ¶¶ 137-41.

182.    The purported foreign representative is a lawyer whose allegiance lies with the Debtors and who was involved in facilitating the questionable transactions described above.  *See* FOF, ¶¶ 51-52, 133-36.  He has stated under oath that his obligations are only to the Debtors, and not to the creditors or to the Brazilian Bankruptcy court.  *See* FOF, ¶¶ 50.  Consequently, there is no reason to believe that he will act in good faith or with any sense of fiduciary obligations to the Brazilian Bankurptcy Court or this Court.

183.    Brazilian Bankruptcy Law does not contain essential rights necessary to protect the interests of creditors under these circumstances.  For example, its *ex parte* and off-the-record procedures, *see* FOF, ¶¶ 149-51, conflict with fundamental protections of Due Process under United States law.  Although that is troubling enough, it is even more so troubling where, as here, powerful parties have incentives to attempt to influence the proceedings.

184.    The Debtors vigorously resisted in this proceeding attempts to permit discovery of the underlying circumstances regarding their conduct.  *See* FOF, ¶ 19.  Although the Court has limited parties to discovery with respect to issues regarding COMI and the foreign representative

only, *see* FOF, ¶ 19, the Record nonetheless contains sufficient evidence upon which the Court,

as set forth below, should exercise its discretion to deny recognition.

185.    "Consistent with the traditional limits of comity, all relief under chapter 15

is subject to the caveat in § 1506." *In re Toft*, 453 B.R. 186, 191 (Bankr. S.D.N.Y. 2011); *see*

*also*, 11 U.S.C. § 1517(a) (subjecting the entry of an order granting recognition to section 1506).

Section 1506 of the Bankruptcy Code provides, "[n]othing in this chapter prevents the court from

refusing to take an action governed by this chapter if the action would be manifestly contrary to

the public policy of the United States." 11 U.S.C. § 1506.  As the Second Circuit has recognized,

"[t]he principle of comity has never meant categorical deference to foreign proceedings.  It is

implicit in the concept that deference should be withheld where appropriate to avoid the violation

of the laws, public policies, or rights of the citizens of the United States." *In re Treco*, 240 F.3d

148, 157 (2d Cir. 2001).[16]

186.    Since the section 1506 exception is "consistent with the traditional limits of

comity," it is appropriate for the Court to consider whether the relief requested meets the factors

set forth in section 1507(b), which Congress has described as "essentially elements of the

grounds of granting comity."  H.R. Rep. No. 109-31, at 109 (2005), *reprinted in* 2005

U.S.C.C.A.N. 88; *see also Treco*, 240 F.3d at 158 (holding that former §304(c) (now §1507(b))

"supplants the federal common law comity analysis conducted pursuant to *Hilton* [*v. Guyot*, 159

---

[16]    Bankruptcy courts have applied section 1506 to deny recognition where deferring to foreign
proceedings would result in serious violations of the rights of United States parties.  *See, e.g.*, *In re
Toft*, 453 B.R. at 201 (refusing to recognize and enforce foreign orders which would have permitted
the foreign representative to access the debtor's email accounts stored on servers within the United
States; recognition would violate "fundamental principles"); *In re Qimonda AG*, 462 B.R. 165, 185
(Bankr. E.D. Va. 2011) (deferring to German law, to the extent that it would allow for the
cancellation of U.S. patent licenses, would be manifestly contrary to U.S. public policy);  *In re Gold
& Honey, Ltd.*, 410 B.R. 357, 372-73 (Bankr. E.D.N.Y. 2009) (denying recognition of Israeli
proceeding where recognition would "severely impinge the value and import of the automatic stay,"
and doing so would "ensue in derogation of fundamental United States policies.").

U.S. 113, 163-64 (1895)]").[17]  These "elements" of comity are concerned with the procedural

and substantive fairness of the foreign proceedings to United States stakeholders, which are

fundamental United States public policies.

      **A.**    **Recognition Will Likely Assure That U.S. Stakeholders are Treated Unjustly, Protect Fraudulent Transfers, and Ensure Distributions of the Debtors' Property which are Inconsistent with the Bankruptcy Code.**

187.    The Debtors attempt to use this Court to obtain a stay of United States actions to

redress their bad faith conduct while they proceed in Brazil with the expectation that they will be

permanently shielded from scrutiny.  Granting their request for recognition, however, will be in

derogation of several of the elements of the principles for granting comity, including that

recognition will likely assure just treatment of all holders of claims against, or interests in, the

debtor's property, the prevention of fraudulent transfers, and the distribution of the proceeds of

the debtor's property in accordance with the order prescribed by the Bankruptcy Code.  *See* 11

U.S.C. § 1507(b).

188.    If not avoided, the Christmas Transactions would have the effect of stripping from

Noteholders certain guarantees and depriving them of their structural seniority to certain of the

Debtors' most valuable assets.  Thus, one of the key issues with regard to the fundamental

fairness of the proceedings in Brazil, and therefore whether recognition of the Brazilian

Proceeding comports with United States public policy, is whether Noteholders have a

meaningful opportunity to challenge the Christmas Transactions in Brazil.  The evidence shows

that they do not.

---

[17]    Section 1507(b) contains the protections of its predecessor, former §304.  *See* H. R. REP. NO. 109-31, at 109 (2005); *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009).  Courts have thus held that §304 case law is relevant to requests for relief under §1507.  *See, e.g., SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784-85 (S.D. Fla. 2012); *In re Lee*, 472 B.R. 156, 179 (Bankr. D. Mass. 2012); *In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006).

189.    First, the substantive consolidation of the Debtors in the April 1 Order with no

notice or a hearing or application of any substantive standard,[18] *see* FOF, ¶ 16, the *ex parte*

interactions with the Brazilian court with no records of such meetings, and the absence of a

systematic framework to obtain discovery and present evidence (which are fundamental to the

U.S. bankruptcy regime) in the Brazilian bankruptcy process, *see* FOF, ¶¶ 140, 142-51, are all

inconsistent with procedural and substantive fairness for United States Noteholders.[19]

Accordingly, in this instance, the Brazilian Bankruptcy proceeding will not reasonably assure

---

[18]    Mr. Munhoz contends that the Debtors have the ability under Brazilian law to disregard the corporate
form and consolidate separate legal entities. Recognition Hrg. Tr. at 124:12-15. He takes the
position that such consolidation is possible for debtors belonging to the same corporate group without
regard to the factors required under United States law for substantive consolidation, such as creditor
reliance on the separate identities of the debtors and entanglement of the affairs of the debtors. *See*
Recognition Hrg. Tr. at 124:12-15. Although Alden and Aurelius disagree and have appealed from
the Brazilian Bankruptcy Court's ruling in that regard, *see* Exh. AA30, given the disregard for the
structural rights of the Noteholders in the Brazilian proceedings, just treatment of creditors is hardly
assured.

[19]    Due process is a fundamental constitutional norm and a centerpiece of the rule of law in the United
States. Where a foreign proceeding offends fundamental United States notions of due process,
extending comity to the product of such a proceeding violates public policy. *See International
Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV,* 347 F.3d 589, 594-96 (5th Cir.
2003) (refusing to enforce Mexican judgment because relief was afforded on an *ex parte* basis); *In re
Remington Rand Corp. v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987) (refusing to extend
comity to Dutch court's sale order because the U.S. company did not have notice or an opportunity to
be heard), *aff'd, sub nom., Kilbarr Corp. v. Bus. Sys. Inc., B.V.,* 869 F.2d 589 (3d Cir. 1989). "'The
fundamental requisite of due process of law is the *opportunity to be heard*.'" *Mullane v. Cent.
Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (emphasis added) (quoting *Grannis v. Ordean*,
234 U.S. 385, 394 (1914)); *see also In re Board of Directors of Telecom Argentina, S.A.*, 528 F.3d
162, 170 (2d Cir. 2008) (quoting the holding of *In re Hourani*, 180 B.R. 58, 67 (Bankr. S.D.N.Y.
1995) that "access to information and an opportunity to be heard in a meaningful manner," are
"fundamental requisites of due process."). The "hearing must be at a meaningful time and in a
meaningful manner…" *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotations omitted) In
circumstances where important rights may be terminated due process requires "an effective
opportunity to defend by confronting any adverse witnesses and by presenting… arguments and
evidence orally." *Id*. at 268. Granting recognition under the particular circumstances herein would
be manifestly contrary to United States public policy. *See In re Hourani,* 180 B.R. at 66, 70 (denying
section 304 petition where Jordanian law lacked fundamental procedural and substantive safeguards
for creditors); *see also Int'l Transactions,* 347 F.3d at 594-96; *In re Remington Rand Corp. v. Bus.
Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987).

just treatment of all holders of claims against the debtor's property, and thus cannot meet the elements of comity.

190.    Second, the evidence shows that the Brazilian system is unlikely to provide creditors with a forum to seek redress for the Christmas Transactions.  The Debtors do not have the authority to seek to avoid fraudulent transfers or the other powers of a trustee.  *See* FOF, ¶¶ 28-31, 137.  Mr. Munhoz acknowledged that under Brazilian law and procedure fraudulent transfers cannot be avoided by creditors within the 180-day-period for judicial reorganization. *See* FOF, ¶¶ 138-39.  Moreover, the Brazilian plan will likely be based on substantive consolidation, which would wipe out any creditor ability to avoid inter-debtor fraudulent transfers.  *See* FOF, ¶ 142-48.  Even if, however, separate plans are confirmed, the evidence shows that any pending fraudulent transfer actions will be superseded by the Brazilian plan.  *See* FOF, ¶ 141.  Accordingly, far from assuring the prevention of fraudulent dispositions, the structure of the Brazilian process actually would insulate fraudulent transfers

191.    Third, given that there likely will be no redress for the Christmas Transactions and no benefit to holders of claims against guarantors in Brazil, any distribution to Noteholders under a plan confirmed in the Brazilian Bankruptcy Proceedings will necessarily deviate materially from distributions that would occur under a United States plan.  In *Vitro*, the Fifth Circuit declined to enforce a foreign plan that sought to deny noteholders the benefit of their guarantees through non-consensual, non-debtor releases approved by insider votes.  *See Vitro*, 701 F.3d at 1069.  Here, the Debtors seek to eliminate guarantees under a foreign plan through different, but no less indefensible, means—namely by transferring to non-guarantor entities all of the assets of the guarantors for no consideration immediately before the filing and through unwarranted substantive consolidation.  *See* FOF, ¶¶ 127, 142-48.  The substantial deviation

49

from distributions that would be available under the U.S. Bankruptcy Code is grounds for

denying recognition.

192.    Based on the record before the Court, it is clear that the Brazilian Bankruptcy

Proceedings are not procedurally and substantively fair.  Accordingly, under the circumstances

of these Chapter 15 cases, the Brazilian Bankruptcy Proceedings manifestly violate United States

Public Policy, and cannot be recognized.

193.    As summarized in paragraphs 119-127 above, the Debtors' leadership engaged in

bad faith conduct in the months leading to the commencement of the Brazilian Bankruptcy

Proceeding.  Moreover, the Debtors have fought discovery both in this court and in the Huxley

fraudulent transfer action pending before the S.D.N.Y. District Court to ensure the details of the

Christmas Transactions never come to light.  In the Huxley Action, the Debtors have repeatedly

argued that the District Court should stay discovery because recognition in this proceeding is

imminent.  Mr. Tavares has refused to cooperate with legitimate requests from the JPLs for

Finance BVI, despite the JPLs assessment stated in its reports that $2 billion in value has been

dissipated.  *See* FOF, ¶ 131.  This demonstrates Mr. Tavares's disregard for United States

process, and indicates that the Debtors intend to withhold relevant information from the JPLs

until substantive consolidation is definitively granted in Brazil, wiping out the major asset of

Finance BVI.  Accordingly, request for recognition is an improper attempt to use this Court as a

means to shield the details of their fraudulent scheme from public exposure.  It is manifestly

contrary to United States public policy to use recognition of a Chapter 15 case to shelter such

bad faith conduct.[20]

---

[20]    The requirement of good faith is a necessary condition for any relief that a bankruptcy court, as a
court of equity, may grant under the Bankruptcy Code.  *See Pepper v. Litton*, 308 U.S. 295, 311-13
(1939) (striking down a scheme in which an insider sought to use his strategic position with the
debtor "so that the rights of another creditor were impaired" and explaining if the scheme was upheld

194.    Courts have used the 1506 public policy exception sparingly.  But the Record here

demonstrates an extraordinary and striking combination of facts that warrant application of that

exception.   Recognition of the Brazilian Bankruptcy Proceedings is beyond the limits of comity

and thus is denied.

### III.    RECOGNITION OF THE BRAZILIAN BANKRUPTCY PROCEEDINGS REGARDING INVESTMENTS GMBH IS INAPPROPRIATE BECAUSE THE DEBTORS HAVE NOT DEMONSTRATED THE EXISTENCE OF EITHER A FOREIGN MAIN OR NONMAIN PROCEEDING

### A.    The Burden of Establishing COMI Lies With the Debtors

195.    The burden is on the Debtors to prove which jurisdiction maintains Debtors'

COMI.  *See In re Tri-Continental Exch., Ltd.*, 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006); *see

also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R.

122, 126 (Bankr. S.D.N.Y. 2007) (court "must make an independent determination as to whether

the foreign proceeding meets the definitional requirements of section 1502 and 1517 of the

---

"exploitation would become a substitute for justice; and equity would be perverted as an instrument
for approving what it was designed to thwart").  The good faith standard reflects the general principle
that "a litigant seeking relief must have 'acted fairly and without fraud or deceit as to the controversy
in issue.'"  *1633 Broadway Mars Rest. Corp. v. Paramount Grp., Inc. (In re 1633 Broadway Mars
Rest. Corp.)*, 388 B.R. 490, 500 (Bankr. S.D.N.Y. 2008).  Every bankruptcy statute "has incorporated,
literally or by judicial interpretation, a standard of good faith for the commencement, prosecution, and
confirmation of bankruptcy proceedings."  *Little Creek Dev. Co. v. Commonwealth Mort. Co. (In re
Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986).  The Court is "entitled to demand utmost
good faith and honesty" from all participants in the bankruptcy process.  *In re Starbrite Props. Corp.*,
Case No. 11-40758 (CEC), 2012 Bankr. LEXIS 2599, at *23 (Bankr. E.D.N.Y. June 5, 2012)
(quoting *In re Condon*, 358 B.R. 317, 328 (6th Cir. B.A.P. 2007)).  *See also In re Coastal Cable T.V.,
Inc.*, 709 F.2d 762, 764 (1st Cir. 1983) ("[a basic bankruptcy] principle prohibits the use of the
bankruptcy court, a court of equity, to further a fraudulent purpose."); *In re Natural Land Corp.*, 825
F.2d 296, 298 (11th Cir. 1987) (affirming dismissal of reorganization petition and noting that in
finding lack of good faith, "courts have emphasized an intent to abuse the judicial process and the
purposes of the reorganization provisions.").  Thus, prevention of abuse of the bankruptcy court
system, and United States courts in general, reflects a fundamental United States public policy.

Bankruptcy Code"); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 51 (Bankr. S.D.N.Y. 2008) (same).[21]

196.    Section 1516(c) of the Bankruptcy Code provides that in the "absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."  *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014). Accordingly, the presumptive COMI of Investments GmbH is Austria, where it maintains its registered office.  *See* FOF, ¶ 6, 80.

197.    Although Debtors may rebut this presumption of Investments GmbH's Austrian COMI by submitting evidence to the contrary, they have failed to do so.  *See* FOF, ¶¶ 78-118.

198.    The only evidence proffered in favor of finding COMI in Brazil is that the current directors reside and have offices in Sao Paulo, but conduct no business there other than perhaps the decision to appoint Mr. Tavares.  *See* FOF, ¶¶ 96-97.  The Debtors thus have failed to establish that Brazil, not Austria, is Investments GmbH's COMI.  This is particularly so where each and every other factor indicates Investments GmbH's COMI is not Brazil.  *See* FOF, ¶¶ 78-113.

199.    The Noteholders have made no COMI admissions regarding Investments GmbH, contrary to the Debtors' Reply.  *See* Debtors' Reply at ¶¶ 38-42.  In any event, the overwhelming evidence listed above, *see* FOF*, ¶¶ 78-118, plainly indicates that Investments GmbH's COMI is not Brazil.  Moreover, COMI must be determined as to each relevant debtor at or around the time

---

[21]    Mr. Tavares was the Rule 30(b)(6), Federal Rules of Civil Procedure ("30(b)(6)") witness for the purported foreign representative, authorized to speak for Debtors.  As the 30(b)(6) representative, Mr. Tavares' testimony binds the Debtors.  *See* Fed. R. Bank. P. 7030; Fed. R. Civ. P. 30(b)(6); *In re Blackstone Partners, L.P.*, No. 04 Civ. 7757(NRB), 2005 WL 1560505, at *1, 3 (S.D.N.Y. July 1, 2005) (Fed. R. Civ. P. 30 applies to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7030; Fed. R. Civ. P. 30(b)(6) deponents bound partnership in bankruptcy proceeding); *see also Spanski Enter., Inc. v. Telewizja Polska, S.A.*, No. 10 Civ. 4933(ALC)(GWG), 2013 WL 81263, at *6 (S.D.N.Y. Jan. 8, 2013) (30(b)(6) representative binding on party).

the petition is filed, and accordingly prior statements about an altogether different entity,

regardless of whether that entity shares similar functions with the debtor in question, has no

bearing on the Court's COMI determination.  *See Morning Mist Holdings Ltd. v. Krys (In re*

*Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013); *In re Suntech*, 520 B.R. at 416.

200.    Because the Debtors have failed to rebut the presumption that Austria is

Investments GmbH's COMI, the Debtors have failed to establish that the Brazilian proceedings

are either foreign main or nonmain proceedings with respect to Investments GmbH.  *See In re*

*Tri-Continental Exch., Ltd.*, 349 B.R. at 635; *In re Bear Stearns*, 374 B.R. at 126; *Basis Yield*,

381 B.R. at 51.  *See also* FOF, ¶¶ 4-30.

### B.    The Debtors Have Not Demonstrated the Existence of a Foreign Main Proceeding With Respect to Investments GmbH

201.    Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding

will be recognized "as a foreign main proceeding if it is pending in the country where the debtor

has the center of its main interests."  *See In re Suntech,* 520 B.R. 399 at 416.

202.    "COMI should be determined . . . at or around the time the Chapter 15 petition is

filed."  *See Fairfield Sentry*, 714 F.3d at 137; *In re Suntech*, 520 B.R. at 416.

203.    A debtor's COMI should be "ascertainable by third parties."  *See Fairfield Sentry*,

714 F.3d at 138.

204.    *Fairfield Sentry* sets forth the following factors to determine COMI:

    (a)    the location of the debtor's headquarters;

    (b)    the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company);

    (c)    the location of the debtor's primary assets;

    (d)    the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or

(e)     the jurisdiction whose law would apply to most disputes.

*See id.* at 137.

205.    The Second Circuit has expressly rejected the idea that the Debtor's "nerve

center," i.e. "where a corporation's officers direct, control, and coordinate the corporation's

activities," is controlling.  Instead, the "nerve center"  is just another factor to be considered in

the COMI analysis.  *Id.* at 138 n.10.

206.    Even if the guarantor requires notice in Brazil, Exh. AA5 iv-vi, the guarantor and

issuer are necessarily different entities, and the COMI of the guarantor has no bearing on that of

the issuer, Investments GmbH.

207.    Investments GmbH is a special purpose entity, a "financing vehicle," the only

function of which is to act as a vehicle for the issuance and payment of the Notes.  Investments

GmbH maintains no other business activity, including any in Brazil, and it held itself out to

investors as remote from OAS Group Brazilian entities.  *See* FOF, ¶¶ 6, 82.

208.    Investments GmbH's only material asset is its receivable from Investments BVI, a

BVI entity, that is in receivership in the BVI as well as a debtor in the joint Brazilian bankruptcy

proceedings.  *See* FOF, ¶ 100.

209.    As Investments GmbH is merely a creditor entity with no other business in Brazil

or elsewhere, FOF, ¶ 92, it is not an integrated part of the OAS Group business enterprise.  The

Debtors claim in their reply that Investments GmbH is "[o]perationally and functionally . . .

integrated into a larger enterprise, the OAS family of companies, whose headquarters and head-

offices are located in Brazil," is not well taken.  Debtors' Reply ¶ 53.

210.    In any event, Investments GmbH has no "nerve center" to speak of, as its officers

do not direct, control or coordinate anything.  Investments GmbH conducts no business other

than collecting its debts that needs such management.  *See* FOF, ¶¶ 82, 92.  The Debtors'

54

assertions in their reply that Investments GmbH has "always been managed from Brazil," where decisions relating to accounting, finance, marketing, research and development, legal services, human resource management and the like, are demonstrably without any basis. They appear to have been made for the purpose of engineering Brazilian COMI. Indeed, Mr. Tavares testified— thereby binding the Debtors—that Investments GmbH *has no employees* at all, to the best of his knowledge *has no human resources management*, and he had *no idea* whether it conducts any of these other purported activities that were supposedly "managed from Brazil." Recognition Hrg. Tr. at 69:13-70:18.

211.   With respect to the most significant COMI factors, Investments GmbH:

(a)   was incorporated in Austria, its only office is in Austria, and it never had an address in Brazil, *see* FOF, ¶¶ 78, 80-81;

(b)   is required to maintain its headquarters in Austria, pursuant to Austrian law, *see* FOF, ¶ 79;

(c)   is required under Austrian law to maintain at least one director residing in Austria, and if that ceases to be the case, parties in interest are entitled to demand appointment of a temporary director from the Austrian courts, *see* FOF, ¶ 94;

(d)   had an Austrian director at the time of issuance of the bonds, who resigned in February 2015, just two months before the commencement of the Brazilian Bankruptcy Proceeding, *see* FOF, ¶ 95;

(e)   files tax returns in Austria, not Brazil, *see* FOF, ¶ 85;

(f)   has vendors in Austria, not in Brazil, *see* FOF, ¶¶ 90-91;

(g)   only has other creditors in Austria, *see* FOF, ¶ 106;

(h)   conducts no business in Brazil, *see* FOF, ¶¶ 87, 89-93, and has proffered no evidence indicating that it is registered to do business in Brazil, *see* FOF, ¶ 88;

(i)   has no employees at all, and thus no employees in Brazil, *see* FOF, ¶ 84;

(j)   has no known creditors located in Brazil, *see* FOF, ¶¶ 101-02;

(k)   has no assets located in Brazil, *see* FOF, ¶ 100;

(l)     has no ascertainable local operational presence in Brazil, *see* FOF, ¶ 83;

(m)    has no economic impact on the marketplace in Brazil, *see* FOF, ¶ 89;

(n)     has offered no evidence that any Investments GmbH bondholder meetings or discussions occurred in Brazil, *see* FOF, ¶ 107;

(o)     is not integrated into OAS Group's business, *see* FOF, ¶ 92;

(p)     other than some cash in the United States, only maintains a single known asset, the US$909,448,958.33 intercompany receivable from Investments BVI, a BVI company not located in Brazil, and it has no assets in Brazil, *see* FOF, ¶ 100;

(q)     has principal creditors consisting of holders of Notes issued pursuant to New York law in part by U.S. underwriters to creditors around the world other than in Brazil, *see* FOF, ¶ 103;

(r)     is subject New York law, not Brazilian law, in most disputes because the Notes are governed by New York law and most of its creditors are Noteholders, *see* FOF,  ¶ 112;

(s)     otherwise, Austrian law is applicable, *see* FOF, ¶ 113;

(t)     holds no board meetings, and no evidence was presented as to any activities or transactions since the issuance of the GmbH Notes other than the appointment of the Purported Foreign Representative.  Thus, there is no indication in the Record that Investments GmbH made any decisions at all, much less in Brazil, *see* FOF, ¶¶ 97-99; and

(u)     has produced no evidence that it made any decisions at all, much less any board decisions, other than naming Mr. Tavares "foreign representative," *see* FOF, ¶ 99.

212.    Based on the foregoing, all significant factors weigh in favor of Investments GmbH's COMI being outside Brazil, and the Debtors have failed to meet their burden of proof that Investments GmbH's COMI is in Brazil.  *See Fairfield Sentry*, 714 F.3d at 138; *In re Tri-Continental Exch., Ltd.*, 349 B.R. at 635; *In re Bear Stearns*, 374 B.R. at 126; *Basis Yield*, 381 B.R. at 51.

213.    There is no ascertainable indication to creditors of any ties between Investments GmbH and Brazil.  All documents indicate otherwise; that Investments GmbH is an Austrian

entity, headquartered in Austria, operating under Austrian law, filing taxes in that jurisdiction,

having no employees at all and no service providers outside of Austria, and noteholders were not

otherwise notified that Investments GmbH was anything other than an Austrian entity. *See* FOF,

¶¶ 78, 80, 84, 85, 86, 90, 91, 93.   Accordingly, the COMI "ascertainable by third parties" is

Austria and/or not Brazil. *See Fairfield Sentry*, 714 F.3d at 138. *See* FOF, ¶¶ 78-81, 83-93, 95-

97, 100-13.[22]

214.    The offering memorandum for the applicable notes contains sections entitled

"Enforcement of Civil Liabilities" which contain disclaimers relating to disputes with

Investments GmbH, explaining that Austrian courts may apply Austrian law, and that Austrian

courts may not enforce U.S. judgments. *See* FOF, ¶ 109.   There is no mention of Brazilian law

potentially applying to disputes with Investments GmbH. *See* FOF, ¶ 109.   If not New York,

then Austrian law applies to Investments GmbH, but certainly not Brazilian law.

215.    That Investments GmbH's current directors may reside or have offices in Brazil,

*see* FOF, ¶ 96, and the only apparent decision regarding Investments GmbH (i.e. appointment of

Mr. Tavares as the purported foreign representative) may have been done in Brazil, *see* FOF, ¶

---

[22]    At the recognition hearing, the Noteholders offered exhibit AA6, an Austrian corporate record indicating that this Austrian director remains on the Investments GmbH board. The Court sustained the Debtors' objection and excluded exhibit AA6 from evidence. Recognition Hrg. Tr. at 164:14-166:9. The Court, in discussion regarding the Debtors' objection, was correct that the document is not hearsay; it was not being offered for the truth of its contents, but instead, to address creditor expectations. Recognition Hrg. Tr. at 165:3-4. Indeed, Noteholders do not dispute that the document is inaccurate, as Investments GmbH's former Austrian director resigned on February 28, 2015. AA Tavares Desig. 158:18-25; Recognition Hrg. Tr. 75:3-9; Exh. AA21. Nevertheless, the document is relevant to the COMI analysis as this record indicates that a creditor would readily ascertain, through official Austrian public records maintained on the Austrian Ministry of Justice's (*Bundesministeriem fur Justiz*"Justiz" website, *see* Exh. AA5 at v, that Investments GmbH maintains an Austrian director. The Court found there was no foundation to determine who published the information and, if there was a failure to update information that misled creditors, it was not Investments' problem. Recognition Hrg. Tr. 165:7-166:9. Respectfully, the Noteholders submit that whether this ascertainable information was accurate or not, or whether Investments is responsible for the publication, is not controlling. The COMI analysis focuses on what a creditor would ascertain, with no consideration of attribution. *See Fairfield Sentry*, 714 F.3d at 138.

99, does not outweigh the other overwhelming COMI factors, with all ascertainable indications of COMI in Austria and/or not Brazil, even should Investments GmbH be found to have a Brazilian "nerve center." *See Fairfield Sentry*, 714 F.3d at 138 n.10.

216.    The Debtors' reliance on *In re Bear Stearns* is misplaced.  Those debtors were master funds registered in the Cayman Islands as "exempted" LLCs which meant they conducted all business outside that jurisdiction.  Thus, they conducted *all* business and held *all* assets in New York.  *See In re Bear Stearns*, 389 B.R. 325, 328 (S.D.N.Y. 2008).  The facts of that case are nothing like Investments GmbH, which maintains significant connections and ties to Austria, the place of its registered office, and its only connection to Brazil is the board's decision to appoint Mr. Tavares foreign representative in Brazil.  In *In re Bear Stearns*, every creditor and investor had every indication that New York was the entity's focus, unlike here, where every indication points to Austria.

217.    The Debtors' reliance on *Phoenix Four Inc. v. Strategic Res. Corp.*, 446 F. Supp. 2d 205 (S.D.N.Y. 2006) and *In re Tradex Swiss AG*, 384 B.R. 34 (Bankr. D. Mass. 2008) is equally misplaced.  Debtors' Reply at ¶ 50.  The Debtors seek to conflate the nerve center "principal place of business" with COMI.  The two concepts are distinct, and these authorities bear no weight on the COMI issue.  *Phoenix* dealt with place of business to establish jurisdiction, not COMI.  Moreover, the test was only applied when the operations spanned numerous jurisdictions to determine which had the strongest claim.  *Phoenix Four*, 446 F. Supp. 2d at 215-16.  That is simply inapposite here, where all signs point to Austria, and perhaps New York, but none show any strong position in Brazil.  Similarly, *Tradex Swiss* is unavailing because there the Court recognized the standard rebuttable presumption of COMI at the registered office.  But creditors in *Tradex Swiss* were able to show that certain debtor activities occurred in Boston,

thereby overcoming the presumption of COMI in the country of the debtor's registered office.
*Tradex Swiss*, 384 B.R. at 43-44.  Again, this has no bearing on the distinguishable facts
presented here.

218.    The Brazilian Bankruptcy Court's purported determination of COMI in Brazil is
entitled to no weight by this Court.  *See Lavie v. Ran*, 406 B.R. 277, 283-84 (Bankr. S.D. Tex.
2009) ("A foreign court's determination that its jurisdiction is the debtor's COMI is not binding
on a U.S. court.  Instead, Chapter 15 requires the U.S. court to make an independent finding . . .
.") (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006) (foreign court's
decision not binding).  COMI is a question of United States law under Title 11.  *See* 11 U.S.C. §
1517(b)(1).  A foreign court's opinion concerning this legal determination is entirely irrelevant to
this issue, which is only properly determined by the United States federal courts.  *See id.*; *see
also* 28 U.S.C. § 1334(a); *Phoenix Elec. Contracting, Inc. v. Lovece*, No. 93 CIV. 4340 (LMM),
1993 WL 512917, at *3 (S.D.N.Y. Dec. 9, 1993) (properly removed action on the ground of
jurisdiction pursuant to 28 U.S.C. § 1334(a) could not be remanded "given the exclusive nature
of this jurisdiction").

219.    The Debtors' reliance on language in the Offering Memoranda to indicate that the
note issuers, including Investments GmbH, were principally located in and headquartered in
Brazil, and that creditors would have ascertained COMI as Brazil, *see* Debtors' Reply ¶¶ 54-55,
is simply incorrect.  These statements all include references to the terms "we," "us," and "our,"
which are *specifically defined to refer to OAS S.A. and its subsidiaries and not the issuer,
Investments GmbH.  See* FOF, ¶ 111; Recognition Hrg. Tr. at 79:18-80:15.

220.    Because Investments GmbH's COMI is not Brazil, the Brazilian Bankruptcy Proceedings of Investments GmbH fails to meet the definition of a foreign main proceeding.  *See* 11 U.S.C. § 1517(b)(1).

C.    **The Debtors Have Not Demonstrated the Existence of a Foreign Nonmain Proceeding With Respect to Investments GmbH**

221.    Investments GmbH does not have "establishments" in Brazil within the meaning of section 1502, which defines that term as "any place of operations where the debtor carries out a nontransitory economic activity."  *See* 11 U.S.C. § 1502(2).

222.    Courts considering whether a debtor has an "establishment" should consider "the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence."  *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D.N.Y. 2011) (quoting Miguel Virgos & Etienne Schmit, *Report on the Convention on Insolvency Proceedings* ¶ 71).

223.    Relevant to the "establishment" analysis, Investments GmbH has:

(a)    headquarters in Austria, *see* FOF, ¶ 80;

(b)    no local place of business in Brazil, *see* FOF, ¶¶ 81, 83;

(c)    no economic impact on the marketplace in Brazil, *see* FOF, ¶ 89;

(d)    no ascertainable local operational presence in Brazil, *see* FOF, ¶ 83;

(e)    no offices in Brazil, *see* FOF, ¶ 81;

(f)    no employees in Brazil, *see* FOF, ¶ 84;

(g)    no vendors in Brazil, *see* FOF, ¶¶ 90-91;

(h)    no debt obligations with any Brazilian entity, *see* FOF, ¶¶ 101-02;

(i)    never purchased goods or services from any entity in Brazil, *see* FOF, ¶ 90-91;

(j)     not offered any evidence that it is registered to conduct business in Brazil, *see* FOF, ¶ 88;

(k)     not offered any evidence that it files tax returns anywhere other than Austria, including in Brazil, *see* FOF, ¶ 85; and

(l)     given no indication to creditors of any ties to Brazil other than having certain directors reside there, *see* FOF, ¶¶ 93.

224.     The fact that directors are now located in Brazil, *see* FOF, ¶ 93, however, does not warrant a finding of a Brazilian "establishment."  *Cf. In re Kemsley*, 489 B.R. 346, 362 (Bankr. S.D.N.Y. 2013) (debtor's employment arrangement in the United Kingdom did not give him an establishment there); *In re Ran*, 607 F.3d 1017, 1028 (5th Cir. 2010) (debtor's bankruptcy proceeding and corresponding debts in Israel could not be equated with nontransitory economic activity in the country).

225.     As there is no indication of any business activity whatsoever conducted in Brazil by Investments GmbH, *see* FOF, ¶¶ 87-93, 96-98, there is no indication of any "nontransitory economic activity" in Brazil.  *See* 11 U.S.C. § 1502(2).

226.     As Investments GmbH does not have "establishments" in Brazil within the meaning of section 1502, the Brazilian Bankruptcy Proceedings of Investments GmbH cannot be recognized as a foreign nonmain proceeding.  *See* 11 U.S.C. § 1517(b)(2).

Dated: June 4, 2015
      New York, New York

Respectfully submitted,

        /s/ Allan S. Brilliant

Allan S. Brilliant
Robert J. Jossen
Gary J. Mennitt
Craig P. Druehl
Stephen M. Wolpert
DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Aurelius Capital Management,
LP on behalf of entities it manages and
Alden Global Capital LLC on behalf of
entities it manages*